# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **BARBARA A. WILHELM,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | **NO. 1:CV-01-1057** |
| | : | |
| **COMMONWEALTH OF PA.;** | : | **(JUDGE RAMBO)** |
| **PENNSYLVANIA STATE POLICE;** | : | |
| **COLONEL PAUL J. EVANKO,** | : | |
| **COMMISSIONER; LIEUTENANT** | : | |
| **COLONEL THOMAS K. COURY; and** | : | |
| **CAPTAIN MICHAEL. D. SIMMERS,** | : | |
| | : | |
| **Defendants** | : | |

## ANSWER

Defendants the Commonwealth of Pennsylvania, Pennsylvania State Police, Colonel Paul J. Evanko, Commissioner, Lieutenant Colonel Thomas K. Coury and Captain Michael D. Simmers answer the complaint as follows:

## FIRST DEFENSE

1. **ADMITTED and DENIED.** The first sentence of paragraph 1 is **ADMITTED** only insofar as it purports to describe the nature of the claims asserted. Otherwise it states conclusions of law to which no response is required. To the extent it is deemed factual, however, it is **DENIED.** The remaining allegations also state

conclusions of law to which no response is required.  To the extent they are deemed factual, however, they are **DENIED.**

2.    Paragraph 2 states conclusions of law to which no response is required. To the extent they are deemed factual, however, they are **DENIED.**

3-7.  **ADMITTED.**

8.    Defendants incorporate by reference their responses to paragraphs 1 through 7 of the Complaint.

9.    **ADMITTED.**

10.   **ADMITTED and DENIED.** Defendants **ADMIT** that plaintiff worked for the Office of Inspector General as a Special Investigator beginning in July, 1989. Defendants are without knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations.  Therefore, they are **DENIED** and strict proof thereof is demanded at trial.

11.   **DENIED.** Defendants are without knowledge or information sufficient to form a belief about the truth or falsity of the allegations in paragraph 11. Therefore, they are **DENIED**  and strict proof thereof is demanded at trial.

12.   **ADMITTED and DENIED.** Defendants **ADMIT** that in November, 1989 plaintiff was appointed as the Acting Director of the Capitol Police.  Defendants are without knowledge or information sufficient to form a belief about the truth or

-2-

falsity of the remaining allegations of paragraph 12. Therefore, they are **DENIED** and strict proof thereof is demanded at trial.

13.    **ADMITTED and DENIED.** Defendants **ADMIT** that effective July 27, 1992, plaintiff was promoted from a Special Investigator 2 to a Regional Investigator-in-Charge with the Office of Inspector General. Defendants are without knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations of paragraph 13. Therefore, they are **DENIED** and strict proof thereof is demanded at trial.

14-15.    **ADMITTED.**

16.    **ADMITTED and DENIED.** Defendants **ADMIT** that at the time the plaintiff assumed the position of legislative specialist, Captain Simmers was the Assistant Legislative Liaison. Defendants further **ADMIT** that he was designated as plaintiff's immediate supervisor. The remaining allegations are **DENIED.**

17.    **ADMITTED and DENIED.** Defendants **ADMIT** that Major Morris was the immediate supervisor of Captain Simmers and that he was the Director of the Legislative Affairs Office. The remaining allegations are **DENIED.**

18.    **ADMITTED and DENIED.** Defendants **ADMIT** that upon assuming her position, plaintiff began to perform duties that had been performed by other members of the Legislative Affairs Office. By way of further answer defendants

point out that because the plaintiff's position did not previously exist some of the duties she performed were previously handled by other members of the Office, including Major Morris and Captain Simmers.  Defendants **DENY** any suggestion that plaintiff regularly performed duties that were beyond her job description or position classification.

19.    **ADMITTED and DENIED.**    Defendants **ADMIT** that plaintiff provided Captain Simmers with assistance regarding the use of the computer, various software and peripherals, as well as, other office functions.  Defendants **DENY** that providing this assistance was in any way inconsistent with their respective duties and responsibilities.

20.    **ADMITTED and DENIED.** Defendants **ADMIT** that when he was plaintiff's supervisor Captain Simmers regularly delegated work to her.  By way of further answer, defendants allege it was within Captain Simmers' responsibilities as a supervisor to determine who would perform particular assignments.  Defendants **DENY** that Captain Simmers delegated all of his work to plaintiff.  Defendants further **DENY** that he improperly delegated work to plaintiff.

21.    **DENIED.**

22.    **ADMITTED and DENIED.** Defendants **ADMIT** that the duties listed are included among the types of work performed by persons in the Legislative

Liaison 3 job classification.  Defendants further **ADMIT** that Exhibit A is a true and correct copy of the  class specifications.  Defendants **DENY** that the duties listed in paragraph 22 are all of the duties and responsibilities included within Exhibit A.

23.    **ADMITTED and DENIED.**  Defendants **ADMIT** that at various times during the period alleged Captain Simmers was designated Acting Director in the absence of Major Morris.  Defendants further **ADMIT** that when under Department policy Captain Simmers qualified for out-of-class pay, he received it.  Defendants further **ADMIT** that on at least one occasion Colonel Evanko ordered that Captain Simmers be designated the Acting Director.  Defendants **DENY** that Colonel Evanko issued such an order every time Captain Simmers was so designated.

24.    **ADMITTED and DENIED.**  Defendants **ADMIT** that when Captain Simmers was Acting Director he assigned work to plaintiff.  Defendants further **ADMIT** that some of the work he assigned to her was work he would normally have done himself in the absence of assuming the responsibilities of Acting Director. Defendants **DENY** that Captain Simmers delegated all of his work as Assistant Legislative Liaison or as Acting Director, to the plaintiff.

25.    **ADMITTED and DENIED.**  Defendants **ADMIT** that plaintiff did not receive out-of-class pay based on the assignments Captain Simmers gave her.

Defendants **DENY** that plaintiff was qualified for out-of-class pay based on those assignments.

26.   **ADMITTED and DENIED.**   Defendants **ADMIT** that plaintiff performed some duties included within the Legislative Liaison 3 job description. Defendants **DENY** that plaintiff performed all or even a substantial portion of the duties contained within that job description.

27.   **ADMITTED and DENIED.**   Defendants **ADMIT** that plaintiff performed some duties included within the Legislative Liaison 3 job description. Defendants further **ADMIT** that plaintiff did not receive out-of-class pay for performing those duties.  Defendants **DENY** that plaintiff performed all or even a substantial portion of the duties contained within that job description.  Defendants further **DENY** that plaintiff was qualified or entitled to out-of-class pay.

28.   **ADMITTED and DENIED.** Defendants **ADMIT** plaintiff's salary was lower than that received by Ronald E. Plesco, Jr., who was classified as an Executive Policy Specialist 2.  Defendants **DENY** that plaintiff and Mr. Plesco were similarly situated.  Defendants further deny that plaintiff regularly and routinely performed all or even a substantial portion of the duties of a Legislative Liaison 3.

29-33.    Paragraphs 29 through 33 state conclusions of law to which no response is required.  To the extent they are deemed factual, however, they are **DENIED.**

34.    Defendants incorporate by reference their responses to paragraphs 1 through 33 of the Complaint.

35-39.    Paragraphs 35 through 39 state conclusions of law to which no response is required.  To the extent they are deemed factual, however, they are **DENIED.**

40.    Defendants incorporate by reference their responses to paragraphs 1 through 39 of the Complaint.

41.    **ADMITTED and DENIED.**  Defendants **ADMIT** that the plaintiff did not have a state-owned automobile assigned to her for her exclusive use.  Defendants **DENY** that plaintiff could not obtain the use of a state-owned automobile as required for her work.

43.    **ADMITTED and DENIED.**  Defendants **ADMIT** that Mr. Plesco was assigned a state-owned automobile for his exclusive use in connection with his job.  Defendants **DENY** that the plaintiff and Mr. Plesco were similarly situated.  Defendants also **DENY** that male employees similarly situated to plaintiff were

assigned state-owned automobiles for their exclusive use in connection with their work.

44. **DENIED.**

45. **ADMITTED and DENIED.** Defendants **ADMIT** that at some times relevant to the complaint the plaintiff performed duties outside of her job classification. By way of further answer defendants allege that at various times all members of the Legislative Affairs Office performed duties outside their job classifications. Defendants **DENY** that plaintiff was required to regularly perform the duties and responsibilities of other persons within the Legislative Affairs Office.

46. **DENIED.**

47. **ADMITTED and DENIED.** Defendants **ADMIT** that Colonel Evanko did not consider attending his staff meetings to be a part of plaintiff's responsibilities. Defendants further **ADMIT** that plaintiff did not regularly attend Colonel Evanko's staff meetings. Defendants **DENY** that other employees at plaintiff's level within the Department regularly attended the staff meetings. The remaining allegations of paragraph 47 are **DENIED**.

48. **DENIED.**

49. **ADMITTED and DENIED.** Defendants **ADMIT** that at some point the Director of the Legislative Affairs Office was told that plaintiff should not be meeting

with legislators.  Defendants **DENY** that such meetings were a regular part of plaintiff's duties and responsibilities.  Defendants further **DENY** that the instructions given to the Legislative Affairs Office were motivated by plaintiff's sex.  The remaining allegations are **DENIED.**

50.    **DENIED.**

51.    **ADMITTED and DENIED.**  Defendants **ADMIT** that the attached exhibits are true and correct copies of what they purport to be.  Defendants further allege that these documents speak for themselves.  Therefore the remaining allegations of paragraph 51 are **ADMITTED** only insofar as they accurately and completely reflect the contents of those exhibits.  Otherwise, the are **DENIED.**

52.    **DENIED**.  Defendants are without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained in paragraph 52. Therefore, they are **DENIED** and strict proof thereof is demanded at trial.

53.    **ADMITTED and DENIED**.  Defendants **ADMIT** that at some point Captain Simmers learned that plaintiff had complained to Major Merryman.  The remaining allegations of paragraph 53 are **DENIED**.

54.    **DENIED.**  By way of further response, defendants **DENY** any breach of Department procedures as alleged in paragraph 53.

55.    **ADMITTED and DENIED.** Defendants **ADMIT** that in June, 1999 plaintiff met with Corporal Rains to discuss a complaint that had been made to the Bureau of Professional Responsibility on her behalf by Major Morris.  Defendants further **ADMIT** that plaintiff provided Corporal Rains with documents regarding her contention that her job should be reclassified and her contention that Captain Simmers was unable to carry out the duties and responsibilities of his job.  By way of further answer defendants allege that Corporal Rains advised plaintiff that the Bureau of Professional Responsibility does not conduct Classification Surveys and suggested that she direct her concerns to the Bureau of Personnel.  Defendants further allege that Corporal Rains explained that State Police Internal Investigations of the sort he was conducting focused on allegations of criminal or administrative misconduct.  Defendants further allege that when Corporal Rains invited plaintiff to discuss any such allegations of misconduct, she refused to do so.  Defendants **DENY** that plaintiff told Corporal Rains that she had been the victim of disparate treatment based on her sex.

56.    **ADMITTED and DENIED.** Defendants **ADMIT** that Captain Simmers learned that Corporal Rains was investigating a complaint made on plaintiff's behalf. The remaining allegations in paragraph 56 are **DENIED.**

-10-

57.    **DENIED.** By way of further explanation, defendants **DENY** that there was any breach of Department procedures as alleged in paragraph 56.

58.    **DENIED.**

59.    **DENIED.**

60.    **DENIED.** Defendants are without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained in paragraph 60 regarding what Major Morris told plaintiff. Therefore, those allegations are **DENIED** and strict proof thereof is demanded at trial. Defendants **DENY** any suggestion that the Systems and Process Review was an investigation of the plaintiff. Rather, defendants allege that the review was part of a routine review of operations which is regularly conducted on various bureaus and offices throughout the Department.

61.    **ADMITTED and DENIED.** Defendants **ADMIT** that the Director of the Bureau of Professional Responsibility, which Bureau included the Systems and Process Review Division, reported to Colonel Coury. Defendants **DENY** that either the Division itself or the officer in charge of the Division reported directly to Colonel Coury.

62.    **ADMITTED and DENIED.** Defendants **ADMIT** that during the review plaintiff stated that Captain Simmers had violated various rules. Defendants **DENY** that any serious violations of the rules occurred.

63.    **ADMITTED and DENIED.** Defendants **ADMIT** that Captain Simmers allowed plaintiff to read the report.  Defendants further allege that at the time Captain Simmers was the Acting Director of the Legislative Affairs Office and that he made the report available to all members of the Office, consistent with Department policy and practice.  Defendants further **ADMIT** that plaintiff was not allowed to copy the report.    Defendants **DENY** that Captain Simmers' actions contravened any Department policy or practice regarding Systems and Process Review Reports.  Defendants further **DENY** any suggestion that other members of the Office were allowed to copy the report.

64.    **ADMITTED and DENIED.** Defendants **ADMIT** that Captain Simmers told plaintiff that if she had any comments to be submitted to the division within the Department that prepared the report that she should submit them through him.  Defendants further allege that he gave the same instructions to other members of the Office.   Defendants **DENY** that these instructions were inappropriate in any way.

65.    **ADMITTED.**

66.    **ADMITTED.**

67.    **DENIED.**

68.    **ADMITTED and DENIED.** Defendants **ADMIT** that Exhibit I is a true and correct copy of what it purports to be.  Defendants further **ADMIT** the remaining

-12-

allegations of paragraph 68 only insofar as they completely and accurately reflect the contents of Exhibit I. Otherwise, they are **DENIED.**

69. **ADMITTED and DENIED.** Defendants **ADMIT** that Exhibit J is a true and correct copy of what it purports to be. Defendants further **ADMIT** the remaining allegations of paragraph 69 only insofar as they completely and accurately reflect the contents of Exhibit J. Otherwise, they are **DENIED.**

70. **DENIED**. Defendants are without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained in paragraph 70. Therefore, they are **DENIED** and strict proof thereof is demanded at trial.

71. **ADMITTED.**

72. **ADMITTED and DENIED.** Defendants **ADMIT** that plaintiff contacted Ms. Bonney and indicated an interest in the vacant position. Defendants **DENY** that was the stated purpose of her contact with Ms. Bonney. Rather defendants allege that plaintiff indicated to Ms. Bonney that she was seeking information on the procedure that would be used to fill the vacant position.

73. **ADMITTED and DENIED.** Defendants **ADMIT** that Ms. Bonney indicated that she was not sure if bids would be accepted for the position. Defendants **DENY** that she told plaintiff she had not heard anything about the position.

-13-

74.    **ADMITTED and DENIED.** Defendants **ADMIT** that plaintiff showed Captain Miller where the office files were and explained how the office had operated up to the time he assume the position as the Director of the Legislative Affairs Office. Defendants **DENY** that plaintiff instructed Captain Miller on his duties or told him what was expected of him in that position.

75.    **ADMITTED and DENIED.** Defendants **ADMIT** that Captain Miller was formally appointed as the Director of the Legislative Affairs Office on or about the date alleged. Defendants further **ADMIT** that Captain Miller was among the persons Colonel Evanko suggested for the job. Defendants **DENY** that Captain Miller was the only person considered for the position. Defendants further **DENY** that the Department or Colonel Evanko directed that Captain Miller be appointed.

76.    **ADMITTED.**

77.    **DENIED**. Defendants are without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained in paragraph 77. Therefore, they are **DENIED** and strict proof thereof is demanded at trial.

78.    **ADMITTED and DENIED.** Defendants **ADMIT** that at some point plaintiff contacted Barbara Christie, Chief Counsel of the State Police, in connection with the Assistant Legislative Liaison position. Defendants further **ADMIT** that plaintiff's stated purpose in speaking to Ms. Christie was to determine whether the

-14-

position was considered bargaining unit work under the collective bargaining agreement between the State Police and the union that represents the state troopers. Defendants **DENY** that Ms. Christie is responsible for either recommending candidates or making appointments to the position of Assistant Legislative Liaison.

79.   **ADMITTED and DENIED.** Defendants **ADMIT** that plaintiff was not invited to apply for the position of Assistant Legislative Liaison. Defendants **DENY** that plaintiff was prohibited from expressing an interest in and applying for the position, as she had done for at least one other position in the past.

80.   **ADMITTED.**

81.   **ADMITTED and DENIED.** Defendants **ADMIT** that plaintiff showed Sergeant McHale where the office files were and explained how the office had operated up to the time he assume the position as Assistant Legislative Liaison. Defendants **DENY** that plaintiff instructed Sergeant McHale on his duties or told him what was expected of him in that position.

82-86.   Paragraphs 82 through 86 state conclusions of law to which no response is required. To the extent they are deemed factual, however, they are **DENIED.**

87.   Defendants incorporate by reference their responses to paragraphs 1 through 86 of the Complaint.

88-92.    Paragraphs 88 through 92 state conclusions of law to which no response is required.    To the extent they are deemed factual, however, they are **DENIED.**

93.    Defendants incorporate by reference their responses to paragraphs 1 through 92 of the Complaint.

94.    **DENIED.**

95.    **DENIED.**

96.    **ADMITTED and DENIED.** Defendants **ADMIT** that Exhibits K and L are true and correct copies of what they purport to be.  Defendants **ADMIT** the remaining allegations of paragraph 96 only insofar as they completely and accurately reflect the contents of Exhibits K and L.  Otherwise, they are **DENIED.**

97.    **ADMITTED.**

98.    **ADMITTED and DENIED.** Defendants **ADMIT** that Exhibit M is a true and correct copy of what it purports to be.  Defendants **ADMIT** the remaining allegations of paragraph 98 only insofar as they completely and accurately reflect the contents of Exhibit M.  Otherwise, they are **DENIED.**

99.    **DENIED.**

100-102. Defendants are without knowledge or information sufficient to form a belief about the truth or falsity of the allegations in paragraphs 100 through 102. Therefore they are **DENIED** and strict proof thereof is demanded at trial.

103.  **DENIED.** By way of further answer defendants allege that on June 10, 2000 a clerical employee was transferred to the Legislative Affairs Office.

104.  **DENIED.**

105.  **ADMITTED.**

106.  **DENIED.**

107.  **DENIED.**

108.  Defendants are without knowledge or information sufficient to form a belief about the truth or falsity of the allegations in paragraph 108.  Therefore they are **DENIED** and strict proof thereof is demanded at trial.

109.  **ADMITTED and DENIED.**  Defendants are without knowledge or information sufficient to form a belief about the truth or falsity of the allegation regarding when plaintiff learned about the contents of Exhibit O.  Therefore that allegation is **DENIED** and strict proof thereof is demanded at trial.  Defendants **ADMIT** that Exhibit O is a true and correct copy of what it purports to be.

110.  **ADMITTED and DENIED.**  Defendants **ADMIT** that Exhibit O is an authorized communication of the Department.  Defendants **DENY** that Exhibit O was

-17-

specifically authorized or directed by Colonel Evanko.  By way of further answer, defendants allege that Exhibit O is an example of a memorandum that is regularly issued to the personnel indicated on it to inform them of separations from the Department.

111.  **ADMITTED and DENIED.**  Defendants **ADMIT** that Exhibit O was distributed to the personnel indicated on the document itself.   The remaining allegations of paragraph 111 are **DENIED.**

112.  **DENIED.**

113.  **DENIED.**

114.  **ADMITTED and DENIED.**  Defendants are without knowledge or information sufficient to form a belief about the truth or falsity of the allegation regarding when plaintiff obtained copies of Exhibits P and Q.   Therefore that allegation is **DENIED** and strict proof thereof is demanded at trial.  Defendants **ADMIT** that the Department entered the A "02200" into the Commonwealth's database for personnel actions to describe plaintiff's separation from the Department. Defendants further **ADMIT** that Exhibits P and Q are  true and correct copies of what they purport to be.

115.  **ADMITTED and DENIED.**  Defendants are without knowledge or information sufficient to form a belief as to what plaintiff means by "All

-18-

Commonwealth of Pennsylvania hiring managers." Defendants **ADMIT** that designated persons the personnel offices of all Commonwealth agencies have access to the database referred to in paragraph 114. Otherwise, the allegations of paragraph 115 are **DENIED.**

116. **DENIED**. Defendants are without knowledge or information sufficient to form a belief a bout the truth or falsity of what plaintiff learned or when she learned it. Therefore those allegations are **DENIED** and strict proof thereof is demanded at trial. The remaining allegations of paragraph 116 are also **DENIED.**

117. **DENIED**.

118. **DENIED.** By way of further explanation, defendants **DENY** that plaintiff was dismissed in an intentionally misleading manner.

119. **DENIED.**

120-125. Paragraphs 120 through 125 state conclusions of law to which no response is required. To the extent they are deemed factual, however, they are **DENIED.**

126. Defendants incorporate by reference their responses to paragraphs 1 through 126 of the Complaint.

127-131.    Paragraphs 127 through 131 state conclusions of law to which no response is required. To the extent they are deemed factual, however, they are **DENIED.**

132.    Defendants incorporate by reference their responses to paragraphs 1 through 132 of the Complaint.

133-137.    Paragraphs 133 through 137 state conclusions of law to which no response is required. To the extent they are deemed factual, however, they are **DENIED.**

### SECOND DEFENSE

Some or all of plaintiff's claims are barred by the Eleventh Amendment.

### THIRD DEFENSE

Some or all of plaintiff's claims are barred by the relevant statute of limitations.

### FOURTH DEFENSE

Some or all of plaintiff's claims are barred for failure to file timely charges with the Equal Employment Opportunities Commission and the Pennsylvania Human Relations Commission.

### FIFTH DEFENSE

The difference in pay between plaintiff and other persons employed in the Legislative Affairs Office was based on factors other than sex.

-20-

## SIXTH DEFENSE

Plaintiff fails to state a cause of action upon which relief can be granted.

## SEVENTH DEFENSE

The individual defendants are entitled to qualified immunity for some

or all of plaintiff's claims.

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

BY: _____

SUSAN J. FORNEY
Chief Deputy Attorney General
I.D. No. 27744

Office of Attorney General
Litigation Section
15th Floor, Strawberry Square
Harrisburg, PA  17120
(717) 787-9831

DATED:  August 31, 2001

## <u>CERTIFICATE OF SERVICE</u>

I, **SUSAN J. FORNEY**, Chief Deputy Attorney General for the Commonwealth of Pennsylvania, hereby certify that on August 31, 2001, I caused to be served a copy of the foregoing document entitled **Answer,** by depositing same in the United States Mail, first class, postage prepaid, in Harrisburg, Pennsylvania, upon the following:

**Nathan C. Pringle, Jr., Esquire**
**3601 North Progress Ave., Suite 200**
**Harrisburg, PA 17110**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**I.D. No. 27744**