ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BARBARA A. WILHELM,                    :

      Plaintiff                           :
                              :

      v.                                  :          NO. 1:CV-01-1057

COMMONWEALTH OF PA.;                   :          (JUDGE RAMBO)
PENNSYLVANIA STATE POLICE;             :
COLONEL PAUL J. EVANKO,                :
COMMISSIONER; LIEUTENANT               :
COLONEL THOMAS K. COURY; and           :
CAPTAIN MICHAEL. D. SIMMERS,           :

      Defendants                          :

FILED
HARRISBURG

APR 1 6 2002

MARY E. D'ANDREA, CLERK
Per ___ RB
           DEPUTY CLERK

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

BY:   SUSAN J. FORNEY
       Chief Deputy Attorney General
       I.D. No. 27744

Office of Attorney General
Litigation Section
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-9831

DATED: April 16, 2002

# TABLE OF CONTENTS

**PAGE**

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    DEFENDANTS ARE ENTITLED TO JUDGMENT ON
            PLAINTIFF'S PHRA CLAIMS BECAUSE THE
            ELEVENTH AMENDMENT BARS THE CLAIMS
            AGAINST THE COMMONWEALTH AND BECAUSE
            PLAINTIFF FAILED TO EXHAUST HER
            ADMINISTRATIVE REMEDIES AGAINST THE
            INDIVIDUAL DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

         A.    The Eleventh Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

         B.    Exhaustion of Administrative Remedies . . . . . . . . . . . . . . . . 6

    II.    PLAINTIFF'S WHISTLEBLOWER CLAIM IS BARRED
            BY THE STATUTE OF LIMITATIONS . . . . . . . . . . . . . . . . . . . . 8

    III.    TITLE VII DOES NOT PROVIDE A CAUSE OF
            ACTION AGAINST INDIVIDUALS . . . . . . . . . . . . . . . . . . . . . . . 9

    IV.    PLAINTIFF HAS NOT ESTABLISHED A CLAIM
            UNDER THE EQUAL PAY ACT . . . . . . . . . . . . . . . . . . . . . . . . 9

         A.    The Equal Pay Act Requires Substantially
              Equal Job Content . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

         B.    Plaintiff's Job Was Not Substantially Equal
              to Either Major Morris's Job or Captain
              Simmers' Job . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

         C.    Plaintiff's Job Was Not Substantially Equal
              to Ronald Plesco's Job . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF CITATIONS - Cont'd.

**PAGE**

V.   PLAINTIFF CANNOT ESTABLISH A CLAIM OF
SEX DISCRIMINATION WITH REGARD TO THE
FAILURE TO PROMOTE HER BECAUSE OTHER
PERSONS WERE SELECTED FOR LEGITIMATE
NONDISCRIMINATORY REASONS . . . . . . . . . . . . . . . . . . . . . . 20

VI.   PLAINTIFF WAS DISMISSED FOR LEGITIMATE
NONDISCRIMINATORY REASONS . . . . . . . . . . . . . . . . . . . . . . 23

VII.   PLAINTIFF'S RETALIATION CLAIMS FAIL
BECAUSE SHE CANNOT SHOW THAT HER
COMPLAINTS ABOUT DISCRIMINATION
CAUSED EITHER THE FAILURE TO PROMOTE
HER OR HER DISMISSAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF CITATIONS

**CASES:**                                                                    **PAGE:**

*Alabama v. Pugh,*
    438 U.S. 781 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bazargani v. Haverford State Hospital,*
    90 F.Supp.2d 643 (E.D.Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Best v. Janerich,*
    80 F.Supp.2d 234 (M.D.Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Brewer v. Quaker State Oil Refining Corp.,*
    72 F.3d 326 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Campanaro v. Pennsylvania Electric Company,*
    440 Pa. Super. 519, 656 A.2d 491 (1995) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Clay v. Advanced Computer Applications, Inc.,*
    522 Pa. 86, 559 A.2d 917 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dici v. Commonwealth,*
    91 F.3d 542 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

*Edelman v. Jordan,*
    415 U.S. 651 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Farrell v. Planters Lifesavers Co.,*
    206 F.3d 271 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Fitzpatrick v. Bitzer,*
    427 U.S. 445 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Fitzpatrick v. Commonwealth, Department of Transportation,*
    40 F.Supp.2d 631 (E.D.Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Fuentes v. Perskie,*
    32 F.3d 759 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF CITATIONS - Cont'd.

**CASES:**                                                          **PAGE:**

*Kimel v. Florida Bd. of Regents,*
    528 U.S. 62, 120 S.Ct. 631 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Laskaris v. Thornburgh,*
    661 F.2d 23 (3d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Seminole Tribe of Florida v. Florida,*
    517 U.S. 44, 116 S.Ct. 1114 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Stanziale v. Jargowsky,*
    200 F.3d 101 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Texas Department of Community Affairs v. Burdine,*
    450 U.S. 248 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Welde v. Tetley, Inc.,*
    864 F.Supp. 440 (M.D.Pa. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Weston v. Commonwealth,*
    251 F.3d 420 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Williams v. Pennsylvania State Police, Bureau of Liquor Control*
   *Enforcement,*
    108 F.Supp.2d 460 (E.D.Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Woodson v. Scott Paper Co.,*
    109 F.3d 913 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

## CONSTITUTIONAL PROVISIONS:

Eleventh Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 6

# TABLE OF CITATIONS - Cont'd.

**STATUTES:**                                                          **PAGE:**

18 Pa.C.S. §6111.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

29 U.S.C. §206(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

42 U.S.C. §2000e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 Pa.C.S. §8521(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Pa. Stat. Ann., tit. 43, §955 (Purdon's 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Pa. Stat. Ann., tit. 43, §955(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pa. Stat. Ann., tit. 43, §955(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pa. Stat. Ann., tit. 43, §959(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pa. Stat. Ann., tit. 43, §962(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pa. Stat. Ann., tit. 43, §1421, et seq. (Purdon's 1991) . . . . . . . . . . . . . . . . . . 2, 8

Pa. Stat. Ann., tit. 43, §1423 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pa. Stat. Ann., tit. 43, §1424(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pa. Stat. Ann., tit. 71, §§ 65, 250, 251, 252 (Purdon's 1990 and
    Purdon's Supp. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

# RULES AND REGULATIONS:

Fed.R.Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

29 C.F.R. §1620.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 C.F.R. §1620.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 C.F.R. §1620.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATEMENT OF THE CASE

This action alleges sex discrimination and retaliation in connection with plaintiff's employment with the Pennsylvania State Police.

Plaintiff is Barbara A. Wilhelm.  (Complaint ¶3, Answer ¶3).  She was employed as a legislative specialist with the Office of Legislative Affairs with the Pennsylvania State Police from January, 1998 until her dismissal on May 1, 2000. (Complaint ¶¶ 15, 97; Answer ¶¶15, 97).

Defendants are the Pennsylvania State Police, the Commissioner, Colonel Paul J. Evanko,  former Deputy Commissioner and former Lieutenant Colonel Thomas Coury and Captain Michael D. Simmers.  (Complaint ¶¶4-7; Answer ¶¶4-7; Coury Dep.).

Plaintiff alleges that during her employment she was subjected to various actions constituting sex discrimination.  She also asserts that she was subjected to retaliation for complaining about the discrimination and about "wrongdoing" by Captain Simmers.

With regard to sex discrimination, plaintiff claims that she received less pay than her male co-workers, even though she allegedly performed the same work as they did.  (Complaint ¶¶15-28).  She also claims that she was treated differently than her male co-workers in the conditions of her employment.  (Complaint ¶¶ 41-50).[1]  Plaintiff also contends the positions of Director of the Office of Legislative

-----

[1]Specifically, she claims that they were assigned state cars and she was not. (Complaint ¶¶41, 42), she was held accountable for leave usage and attendance and they were not.  (Complaint ¶¶43-44), she was required to perform duties outside her

-1-

Affairs and Assistant Director of the same Office were filled without giving her the opportunity to apply even though she was later required to train the persons placed in those positions. (Complaint ¶¶ 71-81). Finally, she claims she was dismissed for discriminatory reasons. (Complaint ¶¶107, 119).

Plaintiff also asserts that her dismissal was retaliation for her complaints about discriminatory treatment. (Complaint ¶¶ 94-120).

Based on these allegations, plaintiff asserts claims under the Equal Pay Act of 1963, 29 U.S.C. §206(d). (Complaint ¶¶29-33), the Civil Rights Act of 1964, *as amended,* 42 U.S.C. §2000e. (Complaint ¶¶82-86, 120-125); the Pennsylvania Human Relations Act, Pa. Stat. Ann., tit. 43, §955 (Purdon's 1991) ("PHRA") (Complaint ¶¶35-39,88-92, 127-131), and the state Whistleblower Law, Pa. Stat. Ann., tit. 43, §1421, *et seq.* (Purdon's 1991). (Complaint ¶¶133-137).

Defendants answered the complaint and raised various defenses including, (1) the Eleventh Amendment, (2) the statute of limitations, (3) the failure to file timely charges before the Pennsylvania Human Relations Commission ("PHRC"), and (4) the failure to state a cause of action. (Answer pp. 20-21).

Discovery closed on March 30. (Order of March 1, 2002). Defendants have since moved for partial summary judgment.

---

job description and they were not (Complaint ¶¶45-46), and they were permitted to attend various meetings and functions and she was not. (Complaint ¶¶47-50).

The plaintiff also claims that she complained about these alleged disparities, but the subject of her complaints was informed of her complaints contrary to State Police rules; and, no action was taken to correct the disparities. (Complaint ¶¶51-70).

-2-

Defendants seek judgment on all of the claims under the PHRA because the Eleventh Amendment bars those claims as to the State Police; and, because plaintiff failed to file a timely complaint before the PHRC regarding her claims against the individual defendants. Defendants seek judgment on plaintiff's claims under the Whistleblower Law because they were not brought within the statute of limitations. Defendants seek judgment on behalf of the individual defendants on plaintiff's Title VII claims because Title VII does not provide a cause of action against individuals. Defendants seek judgment on plaintiff's Equal Pay Act claims because her job was not substantially equal to the jobs performed by the males in her office. Defendants seek judgment on plaintiff's Title VII claims with regard to the failure to hire her as the Director or Assistant Director of the Office of Legislative Affairs and with regard to her dismissal because legitimate nondiscriminatory and non-retaliatory reasons motivated those decisions.

Defendants have filed a statement of material and undisputed facts, as well as, evidentiary material in support of their motion. In lieu of providing a statement of facts here, the facts pertinent to each argument are discussed in the body of each argument with appropriate citations to the record.

## ARGUMENT

I.    **DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFF'S PHRA CLAIMS BECAUSE THE ELEVENTH AMENDMENT BARS THE CLAIMS AGAINST THE COMMONWEALTH AND BECAUSE PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES AGAINST THE INDIVIDUAL DEFENDANTS.**

Defendants are entitled to summary judgment on all the claims brought under the PHRA. Plaintiff's claims against the Commonwealth, Pennsylvania State Police are barred by the Eleventh Amendment. And, plaintiff's claims against the individual defendants fail because she did not exhaust her administrative remedies as to those claims. Defendants will discuss each of these arguments in turn.

### A.    **The Eleventh Amendment**

The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court recently reiterated that it has long interpreted the amendment "'to stand not so much for what it says, but for the presupposition ...which it confirms.'" *Kimel v. Florida Bd. of Regents, 528* U.S. 62, 72-73, 120 S.Ct. 631, 640 (2000), *quoting, Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114 (1996). That presupposition is, "(the)Constitution does not provide for federal jurisdiction over nonconsenting States." *Id.* (parenthetical material added).

The Eleventh Amendment's jurisdictional bar is not dependent upon the nature of the relief requested. It is applicable to suits seeking money damages,

-4-

*Edelman v. Jordan,* 415 U.S. 651, 662-663 (1974), as well as suits seeking equitable relief, *Alabama v. Pugh*, 438 U.S. 781 (1978).

While a state may consent to suit against it in federal court, thereby waiving its immunity, Pennsylvania has not done so either generally or in this case. In *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981), the Court stated that pursuant to 42 Pa. C.S. §8521(b),[2] "Pennsylvania has specifically withheld consent."[3]

Moreover, several district courts have reached this conclusion specifically with regard to the Pennsylvania Human Relations Act. *Williams v. Pennsylvania State Police, Bureau of Liquor Control Enforcement,* 108 F.Supp.2d 460, 465 (E.D. Pa. 2000) (the Eleventh Amendment bars PHRA claims against the State Police);*Bazargani v. Haverford State Hospital,* 90 F.Supp.2d 643, 648-649 (E.D. Pa. 2000)(the same regarding claims against a state hospital); *Fitzpatrick v. Commonwealth, Department of Transportation,* 40 F.Supp.2d 631, 635 (E.D. Pa. 1999) (the same regarding claims against the Department of Transportation).

---

[2] 42 Pa. C.S. §8521(b) states as follows:

Federal Courts -- Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal Courts guaranteed by the Eleventh Amendment to the Constitution of the United States.

[3]Congress may also abrogate the state's Eleventh Amendment immunity from suits by legislating to enforce constitutional provisions, *see Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) (Title VII abrogates the Eleventh Amendment).  Because defendant's Eleventh Amendment argument is directed to plaintiff's state law claims, there is no need for further discussion on this point.

Plaintiff here asserts PHRA claims against the Pennsylvania State Police, which plaintiff concedes is an agency of the Commonwealth government. *See* Complaint ¶4; Pa. Stat. Ann., tit. 71, §§65, 250, 251, 252 (Purdon's 1990 and Purdon's Supp. 2001). This is precisely the sort of action the Eleventh Amendment bars.

Accordingly, plaintiff's claim against the State Police under the Pennsylvania Human Relations Act should dismissed as barred by the Eleventh Amendment.

### B.    <u>Exhaustion of Administrative Remedies</u>.

The Pennsylvania Human Relations Act provides the exclusive remedy under state law for sex discrimination in employment. Pa. Stat. Ann., tit. 43, §§ 955(a), (e), 962(a); *Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 90-92, 559 A.2d 917, 918-920 (1989). The Act provides for a cause of action against employers for discrimination in the terms and conditions of employment, Pa. Stat. Ann., tit. 43, §955(a); and, it provides for a cause of action against individual supervisors for aiding and abetting discrimination. Pa. Stat. Ann., tit. 43 §955(e); *Dici v. Commonwealth,* 91 F.3d 542, 552-553 (3d Cir. 1996).

In order to assert these claims in court, however, the plaintiff must exhaust her remedies before the Human Relations Commission. *Clay,* 522 Pa. at 95, 559 A.2d at 921; *Woodson v. Scott Paper Co.,* 109 F.3d 913, 925 (3d Cir. 1997). As the Third Circuit explained in *Woodson,* Pennsylvania courts have strictly applied this requirement because the legislature intended that discrimination claims be addressed

-6-

first by an administrative agency with particular expertise in the area. *Woodson,* 109 F.3d at 925.

In this case, while plaintiff filed timely complaints with the PHRC against the State Police, she did not file a complaint against the individual defendants (Wilhelm Dep. 218-219, Wilhelm Ex. 26, 28). The procedure for submitting a complaint to the Commission requires the complainant to file a written complaint that states, in part, the name of the "person, employer, labor organization or employment agency alleged to have committed the unlawful discriminatory practice complained of..." Pa. Stat. Ann., tit. 43, §959(a). The provision goes on to require that the complaint set forth the particulars of the alleged discriminatory practices. *Id.*

The plaintiff's administrative complaints before the PHRC named the State Police as the respondent, not the individuals named as defendants in this case. (Wilhelm Dep. 218-219 , Wilhelm Ex. 26, 28). Moreover, while the administrative complaints refer to individuals in describing the particulars of plaintiff's claims, they do not identify any of the individual defendants as having aided or abetted the alleged discrimination *(Id.)* Indeed, they do not mention Colonel Evanko or Lieutenant Colonel Coury at all *(Id.)*.

By neglecting to file PHRC complaints against the individual defendants, plaintiff has failed to exhaust her administrative remedies on her claims against them. *See Campanaro v. Pennsylvania Electric Company,* 440 Pa. Super. 519, 521, n.1, 656 A.2d 491, 492, n.1 (1995) (noting that the failure to file a PHRC complaint against a union precluded the plaintiff from joining the union in a subsequent discrimination

action even though the plaintiff had exhausted her claims against her employer). Accordingly, the individual defendants are entitled to summary judgment on plaintiff's claims under the PHRA.

## II.    PLAINTIFF'S  WHISTLEBLOWER  CLAIM  IS BARRED BY THE STATUTE OF LIMITATIONS.

Count Seven of the complaint asserts that the employment practices outlined in the complaint constitute violations of Pennsylvania's Whistleblower Law, Pa. Stat. Ann., tit. 43, §1421, *et seq.* (Purdon's 1991).   Defendants are entitled to summary judgment on this claim because it was not brought within the applicable statute of limitations.

The Whistleblower Law prohibits employers from discharging or otherwise discriminating against or retaliating against employees who make good faith reports of wrongdoing or waste.  Pa. Stat. Ann., tit. 43, §1423.  Employees may bring civil actions for violations of the law "within 180 days after the occurrence of the alleged violation."  Pa. Stat. Ann., tit. 43, §1424(a).

In this case the alleged violations of the Whistleblower Act are the various adverse employment actions recounted in the complaint that occurred while the plaintiff was employed in the State Police Office of Legislative Affairs, up to and including her dismissal (Complaint ¶¶97-120, 132-137).  The plaintiff was employed in that Office from January 1998 until her dismissal on May 1, 2000 (Complaint ¶¶15, 97).

At the time of her dismissal plaintiff believed that she was being dismissed in retaliation for her complaints against Captain Simmers (Wilhelm Dep.

-8-

179). Those complaints included that he did not have the knowledge and skills to perform his job, that he misused his state vehicle that he abused work hours and that he was not accountable for his leave usage (Wilhelm Dep. 150-151, 157-159; Wilhelm Exs. 5,6; Plaintiff's Answ. Interrog. 10). Nonetheless, plaintiff did not commence this action until June 14, 2001 (Docket), over a year after her dismissal.

None of the actions which plaintiff claims are retaliation for her Whistleblower complaints occurred within 180 days of the date this action was commenced. Accordingly, her claims are barred by the statute of limitations and defendants are entitled to summary judgment on those claims.

## III.  TITLE VII DOES NOT PROVIDE A CAUSE OF ACTION AGAINST INDIVIDUALS.

Counts three and five of the complaint purport to assert claims under Title VII against the State Police and the individual defendants (Complaint ¶¶40-86,93-125). In *Dici v. Commonwealth,* 91 F.3d 542, 552 (3d Cir. 1996), the Third Circuit specifically held that "individual employees cannot be held liable under Title VII." Accordingly, the individual defendants are entitled to summary judgment on plaintiff's Title VII claims.

## IV.  PLAINTIFF HAS NOT ESTABLISHED A CLAIM UNDER THE EQUAL PAY ACT.

The Equal Pay Act prohibits employers from paying different wages to employees of the opposite sex for equal work on jobs requiring equal skill, effort and responsibility, unless a factor other than sex accounts for the disparity in wages. 29 U.S.C. §206(d). Here plaintiff's claim seems to rest on her assertion that she

performed the same work as the other members of the Office of Legislative Affairs, specifically, Major Richard A. Morris , the Director of the Office, defendant Captain Michael D. Simmers , the Assistant Director, and Ronald Plesco, an executive policy analyst. (Complaint, ¶¶15-28).

Plaintiff's claim fails because her job was not equal in skill, effort and responsibility to the jobs performed by the men in the Office. Defendants first discuss the applicable legal standards after which they compare plaintiff's work with the jobs of Major Morris and Captain Simmers. Finally they compare the plaintiff's work with Ronald Plesco's.

### A.    The Equal Pay Act Requires Substantially Equal Job Content.

To establish a claim under the Equal Pay Act, plaintiff has the initial burden of proving that the State Police paid employees of opposite sexes differently for performing "equal work." *Stanziale v. Jargowsky,* 200 F.3d 101, 107 (3d. Cir. 2000). "Equal work" means work which requires substantially equal skill, effort and responsibility which is performed under similar working conditions. *Id.*

Evaluating "skill" requires an assessment of factors such as the experience, training, education and ability used in each job. 29 C.F.R. §1620.15; *see also Welde v. Tetley, Inc.,*864 F.Supp. 440, 442 (M.D.Pa. 1994). "Effort" refers to the physical or mental exertion involved in performing the jobs. 29 C.F.R. §1620.16; *Welde,* 865 F.Supp. at 442. Responsibility concerns the degree of accountability required in performing a job, with emphasis on the importance of the job obligation. 29 C.F.R. §1620.17; *Welde,* 865 F.Supp. at 442.

Mere comparability of jobs is not sufficient to meet the statutory requirement of equality. *Welde,* 865 F.Supp. at 442. Instead, substantial equality of job content is required. *Id.* at 443. Moreover, jobs are not substantially equal even though they involve most of the same routine tasks, if the more highly paid job involves additional tasks which require extra effort, skill and responsibility. *Best v. Janerich,* 80 F.Supp.2d 234, 336-337 (M.D.Pa. 1999); *Welde,* 865 F.Supp. at 443. Applying these standard to this case, it is clear that plaintiff cannot meet her burden.

**B.     Plaintiff's Job Was Not Substantially Equal to Either Major Morris's Job or Captain Simmers' Job.**

Defendants discuss Major Morris and Captain Simmers together because they are uniformed members of the State Police with responsibilities as law enforcement officers, which plaintiff did not have as a civilian employee (Morris Dep. 40; Evanko Dep. 45-46; Evanko Exs. 6, 7; Wilhelm Dep. 26-29; Wilhelm Ex.1). Those responsibilities alone differentiate their jobs from the plaintiff's.

As uniformed members of the State Police, Major Morris and Captain Simmers were sworn law enforcement officers responsible to take appropriate police action when required, regardless of whether they are on or off duty (Morris Dep. 40; Evanko Dep. 16-19, 45-46; Evanko Ex. 2, pp. 3298, 3301; Evanko Ex. 6, p. 1938; Evanko Ex. 7, p.1942); Pa. Stat. Ann., tit. 71, §252 (Purdon's 1990). Those actions include making arrests, serving warrants and taking whatever other action is appropriate to enforce the laws of the Commonwealth. Pa. Stat. Ann., tit. 71, §252; *see also* Evanko Ex. 2, pp. 3292; Evanko Ex. 6, p. 1938; Evanko Ex.7, p.1942. They

-11-

are also responsible for taking appropriate  action in response to requests for assistance from the public and in response to emergencies, civil disorders and disasters (Evanko Ex. 2, p. 3297; Evanko Ex. 6, p. 1938; Evanko Ex.7, p.1942)[4].

These responsibilities require uniformed members of the State Police to perform their jobs under significantly different working conditions than civilian employees of the State Police.  They must conform their conduct to a code that is not applicable to civilians (Evanko Dep. 16-19, Evanko Ex. 2).  Among other things that Code requires them to reside in the Commonwealth, and maintain a telephone in their homes. (Evanko Ex. 2, p. 3282).  Uniformed members are also required to required to carry an issued pistol and ammunition when on duty and when off duty but in public.  (Evanko 2, p. 3286-3288).  They are required to be physically and mentally fit.  (Evanko 2, p. 3295).

Although, Major Morris' and Captain Simmers' responsibilities as police officers alone render their jobs substantially different from plaintiff's (*compare* Wilhelm Dep. 26-29, Wilhelm Ex. 1), their duties within the Legislative Affairs Office also distinguish their jobs from the plaintiff's.

Major Morris was the Director of the Legislative Affairs Office.  (Morris Dep. 5-6).  He was responsible for and directly supervised the work of the Office. (Morris Dep. 16-22, 38; Evanko Dep. 45, Evanko Ex. 6, pp. 1936-37; *see also*

---

[4]Commissioned officers such as Major Morris and Captain Simmers were also subject officer of the day duties for State Police Headquarters.  Those duties required either reporting to work over the weekend or being on call to handle any matters that arose.  (Morris Dep. 99-101).

Wilhelm Dep. 26-29, 206, Wilhelm Exs. 1, 16). During his tenure he expanded it from a one person operation to an office that employed several people. (Morris Dep. 16-21). He also expanded the functions the Office performed. (*Id.* at 21-22).

In addition, as the Director of the Office he attended legislative meetings on issues that affected the State Police, he provided testimony at hearings, he assisted in preparing testimony for others to give and he represented the State Police and the Commissioner at meetings with the General Assembly. (*Id.*; Evanko Dep. 45, p. 1936). In carrying out these duties, he reported directly to both the Governor's Office and the Commissioner. (Morris Dep. 13).

As the Assistant Director of the Office, Captain Simmers also had supervisory responsibilities. Throughout the time plaintiff worked in the Office, Captain Simmers was responsible for acting as the Director in Major Morris' absence. (Complaint ¶23; Morris Dep. 43, Morris Ex. 2; Evanko Dep. 45-46; Evanko Ex. 7, p. 1940). After Major Morris's retirement, he was the Acting Director of the Office and responsible for its activities for approximately three months until the Major's replacement took over. (Simmers Dep. 52-54). In addition, at the beginning of plaintiff's employment with the Office Captain Simmers was her immediate supervisor. (Complaint ¶ 16; Wilhelm Dep. 194-195, Wilhelm Ex. 13; Morris Dep. 36-37; Evanko Dep. 45-46; Evanko Ex. 7, p. 1940).

In contrast, Ms. Wilhelm was not a uniformed member of the State Police, nor was she responsible for supervising anyone. (Morris Dep. 40; Wilhelm Dep. 26-29, 194-195, 206, Wilhelm Exs. 1, 13, 16). Instead, she was the staff

assistant to the Director for much of her tenure. (Wilhelm Dep. 26-29, Wilhelm Ex. 1). The Major assigned her work and reviewed it before it was presented to the Commissioner and the Governor's Office for further review and approval. (Wilhelm Dep. 29, 60-61, 64-66, 67-68). While plaintiff may have operated with a great deal of independence, she was never ultimately responsible for the operation of the Legislative Affairs Office. (Wilhelm Dep. 26-29, 60-61, 64-66, 67-68, Wilhelm Ex. 1).

### C. Plaintiff's Job Was Not Substantially Equal to Ronald Plesco's Job

Plaintiff is also unable to meet her burden with respect to Mr. Plesco's job. In 1996, the Governor's Office asked Mr. Plesco to take a position with the State Police to perform both legislative and policy functions. (Plesco Dep. 5-6). Initially, his job involved developing information on the State Police position on various issues by meeting with the Commissioner and the various deputies, discussing the relevant issues and reporting back to the Governor's Office with a recommendation as to what position should be taken. (Plesco Dep. 7-8). In developing this information, Mr. Plesco used his education as a lawyer and his experience as a former assistant district attorney in his analysis and discussion of the issues. (Plesco Dep. 29-30).

Although the State Police had a Legislative Liaison at the time, Major David Miller, he did not provide the substantive communication that the Governor's Office desired. (Plesco Dep. 7; Bonney Dep. 58-59, Bonney Ex. 3, 4, 5). Therefore Major Miller performed a public relations function for the State Police to the General Assembly while Mr. Plesco did the substantive work of developing the State Police

-14-

positions on issues and communicating them to the Governor's Office. (Plesco Dep. 7-9). This work included bringing legislative initiatives from the State Police to the attention of the Governor's Office and assisting in getting those initiatives enacted. (Plesco Dep. 37).

During this period and throughout his employment with the State Police, Mr. Plesco reported directly to the Governor's Office. (Plesco Dep. 11-12, 38-39, Morris Dep. 13). He also reported at various times directly to the Commissioner and to the Director of the Office of Legislative Affairs. (*Id.*). He never reported to Major Miller, however. (Plesco Dep. 39, 42-43).

When Major Morris succeeded Major Miller as the State Police Legislative Liaison and Director of the Office of Legislative Affairs, Mr. Plesco continued to gather information to assist the Governor's Office and to ensure that correct information was being disseminated on politically sensitive issues and to ensure that the State Police was taking positions consistent with the administration's policies. (Plesco Dep. 24, 26-27, 38-39; Morris Dep. 23-24, 27-28, Morris Ex. 1). Mr. Plesco also continued to analyze and recommend positions on policy[5] issues that arose. (Plesco Dep. 27-28, 38-39, 54-55; Morris Dep. 23-24).

---

[5]Legislative work and policy work are closely related, however there are differences. (Plesco Dep. 14, 38-39; Morris Dep. 22-23). Policy relates to the view the administration takes on issues regardless of whether they relate to pending legislation. (*See* Plesco Dep. 38-39; Morris Dep. 23-24). Of course when legislation is pending, the administration's policy is critical in determining what position the State Police takes. (Plesco Dep. 38-39; Morris Dep. 23-24; Wilhelm Dep. 61).

As Mr. Plesco's tenure with the State Police continued, he became responsible for handling particular issues to the point that he provided briefings and testimony at legislative hearings in conjunction with uniformed members of the Department. (Morris Dep. 25-26; Plesco Dep. 26, 33-34). He advised Major Morris on legislative strategies, how to approach particular issues and where pitfalls might lie. (Morris Dep. 27).

In addition to these policy and legislative functions, Mr. Plesco had responsibility for developing and publishing State Police regulations, particularly with regard to the Instant Check System[6]. (Morris Dep. 27-28, 156-159, Morris Ex. 1; Plesco Dep. 30-31, 34-35; Bonney Ex. 2)**.**

Plaintiff's job differed from Mr. Plesco's both in the skill required to perform it and in the responsibility it entailed. Plaintiff was a legislative specialist within the Office. (Complaint ¶15). She had no legal training nor had she worked in a district attorney's office. (Wilhelm Dep. 5-6, 7-11, 15-16).

As previously mentioned, plaintiff functioned as the staff assistant to the Director of the Office. (Wilhelm Dep. 26-29, Wilhelm Ex. 1). Her immediate supervisor was always within the Office. First it was Captain Simmers and eventually it was Major Morris. (Complaint ¶16; Wilhelm Dep. 26-29, Wilhelm Ex. 1). She received her assignments from Major Morris and he reviewed her work before it was

---

[6]The Instant Check System relates to provisions of a state statute requiring that certain criminal record checks be done on prospective purchasers of firearms. (18 Pa.C.S. §6111.1; *see also* Morris Dep. 25; Plesco Dep. 54). The State Police is responsible for performing the checks. *Id.*; 18 Pa.C.S. §6111.1.

submitted elsewhere. (*Id.*; Morris Dep. 28-29, 34-36; Wilhelm Dep. 54, 60-61, 64-65, 66-68)

In performing her job, plaintiff spent most of her time responding to requests for information from members of the General Assembly and their staff. (Wilhelm Dep. 26-29, 51-53, 72-74, Wilhelm 1).  Requests for information were made over the telephone or by correspondence and included a wide variety of matters. (Wilhelm Dep. 73-76).  Typical requests involved seeking  information about a criminal history check, asking for copies of reports, inquiring about that status of a driver's license as a form of identification and seeking assistance with personal matters.  (Wilhelm Dep. 74-76; Morris Dep. 32-34).

The most important work plaintiff did was collecting information from units within the State Police regarding proposed legislation and combining that information into a document called an analysis.  (Wilhem Dep. 54-61; Morris Dep. 34).  In preparing an analysis, plaintiff sent a copy of the legislation and a form or template to units within the State Police that might be affected by the proposed legislation.  (Wilhelm Dep. 54-57).  The form contained blanks to be filled in by the units regarding the background of the legislation, the interest groups that might be interested in it, the impact it might have on the unit and whether the unit supported or opposed it.  (*Id.*).  The units then returned the forms to plaintiff who merged the information into a format required by the Governor's Office.  (Wilhelm Dep. 58-59; *see also* Plesco Dep. 29).

The document was then reviewed by Major Morris and the Commissioner who decided in conjunction with the Governor's Office what the State Police position should be on particular legislation. (Wilhelm Dep. 60-61). The plaintiff did not participate in those discussions. (Wilhelm Dep. 84).

Plaintiff also gathered information for use in responding to legislators' requests for the State Police position on particular issues. (Wilhelm Dep. 66-68). When a request came in , she would determine, in conjunction with Major Morris, whether the Office had sufficient information to respond. (*Id.*) If not she might forward the request to other units of the State Police for input. (*Id.*) She would then review the information with Major Morris and prepare a proposed response based on their conversation. (*Id.*) The proposed response would be sent to the Commissioner for final review and approval before it was sent out. (*Id.*)

Plaintiff performed a similar role when the Department was considering seeking an amendment to legislation. (Wilhelm Dep. 64-67). In that situation, plaintiff sought draft language from the affected unit within the State Police and provided it to Major Morris for further review and discussion with the Commissioner. (Wilhelm Dep. 65-66).

The content of plaintiff's job is significantly different from Mr. Plesco's in terms of the both the knowledge and experience required to perform it and the responsibility it entailed.

Mr. Plesco was required to keep up to date on sensitive political issues and to analyze and recommend positions on those issues directly to the

-18-

Commissioner. (Plesco Dep. 7-8, 24, 26-28, 38-39, 54-55; Morris Dep. 23-24, 95, Morris Ex. 1). Ms. Wilhelm was not required to have the same familiarity with policy issues nor did she report directly to the Commissioner. (Wilhelm Dep. 26-29, 54, 60-61, 64-65, 66-68, 84, Wilhelm Ex. 1; Morris Dep. 28-29, 34-36).

Mr. Plesco was also responsible directly to the Governor's Office to ensure that the State Police took positions consistent with the administration's policies. (Plesco Dep. 11-12, 38-39; Morris Dep. 23-24). Again, plaintiff did not have any responsibility for policy issues nor did she report directly to the Governor's Office. (Wilhelm Dep. 26-29, 54, 60-61, 64-65, 66-68, Wilhelm Ex. 1).

Mr. Plesco testified at legislative hearings and presented briefings on particular issues which he was responsible for handling. (Morris Dep. 25-26; Plesco Dep. 26, 33-34). Plaintiff did not testify at legislative hearings nor did she present briefings to legislators. (Wilhelm Dep. 84-85).

Mr. Plesco was also responsible for developing and publishing State Police regulations. (Morris Dep. 27-28, 156-159, Morris Ex. 1; Plesco Dep. 30-31, 34-35; Bonney Ex. 2). Plaintiff had no responsibilities in connection with the development and publication of regulations. (Wilhelm Dep. 26-29, Wilhelm Ex. 1).

As the undisputed facts show, plaintiff cannot establish that her work was substantially equal to the work performed by the other persons in the Legislative Affairs Office. Therefore, defendants are entitled to summary judgment on her claims under the Equal Pay Act.

-19-

## V.    PLAINTIFF CANNOT ESTABLISH A CLAIM OF SEX DISCRIMINATION WITH REGARD TO THE FAILURE TO PROMOTE HER BECAUSE OTHER PERSONS WERE SELECTED FOR LEGITIMATE NONDISCRIMINATORY REASONS

In order to establish a sex discrimination claim under Title VII, plaintiff must first present a prima facie case by showing that (1) she belongs to a protected category, (2) she was qualified for the position in question, (3) she suffered an adverse employment decision, and (4) a member of the opposite sex was selected instead.   *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981); *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 330 (3d. Cir. 1995); *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir. 1994).

If plaintiff successfully establishes a prima facie case, the employer may rebut it by articulating legitimate nondiscriminatory reasons for taking the challenged action. *Brewer,* 72 F.3d at 330; *Fuentes,* 32 F.2d at 763.  At that point,  plaintiff has the burden to demonstrate that the reasons articulated by the employer are pretexts for discrimination. *Id.*

For the purposes of this motion, we assume that plaintiff can establish a prima facie case regarding the positions of Director and Assistant Director of the Office of Legislative Affairs.  Her claim fails however because the State Police has articulated a legitimate nondiscriminatory reason for selecting other persons for those positions.  Defendants begin their argument by outlining the relevant facts.

At the beginning of January 2000, Major Morris retired leaving his position as Director vacant. (Complaint ¶ 71; Answer ¶71). About two weeks after he retired, the plaintiff asked the Personnel Director, Linda Bonney, whether she had any information about how the position would be filled. (Wilhelm Dep. 164-165, Wilhelm Ex. 7). Ms. Bonney responded that anticipated that a Major would be placed in the job and that no bids would be accepted because the job had historically been L-1 bargaining unit work. (Wilhelm Ex. 7). The L-1 bargaining unit consists of the uniformed members of the State Police from the rank of Trooper through the rank of Major and is represented by the Pennsylvania State Troopers Association. (Bonney Dec. ¶10).

Ms. Bonney went on to say that she did not know what the Commissioner intended to do, but she provided the plaintiff with information on how she got her job. (Wilhelm Ex. 7). Ms. Bonney said she submitted her resume to the Deputy Commissioner for Administration along with a letter indicating her interest (*Id.*). Other than her communication with Ms. Bonney, plaintiff did not submit anything indicating her interest in the Director's position. (Wilhelm Dep. 166-169).

In the meantime, the Commissioner, unaware that plaintiff was interested in the Director's position, identified several people that he thought could do the job. (Evanko Dep. 70, 75-76). All the persons he selected were uniformed members of the State Police. (*Id.*). The Commissioner thought the position had to be filled by a uniformed member because of the Department's obligations to the L-1 bargaining unit and because he believed that a uniformed member brought credibility to the

Department's dealings with the legislature and to testimony presented at legislative hearings on the Commissioner's behalf. (Evanko Dep. 110-111; Defendants' Interrog. Resp. 2 and 3). Moreover, he thought that credibility was based in part on uninformed members' knowledge of State Police operations (*Id.*).

The Commissioner then submitted the names of the persons he identified to the Governor's Office which finally selected Captain Jeffrey B. Miller as Major Morris's successor. (*See* Evanko Dep. 70; Miller Dep. 6; Defendants Interrog. Resp. 2 and 3).[7]

When Captain Simmers was transferred out of the Office of Legislative Affairs, a similar process was used to choose his successor, except that the final decision on who to select was made by Captain Miller. (Defendants' Interrog. Resp. 5; Miller Dep. 90, 106-108). Captain Miller and the Commissioner spoke about several people that they identified as possible candidates for the job. (Miller Dep. 106). The Commissioner believed that the Assistant Director should be a uniformed member of the State Police for the same reasons he thought the Director should be. (Evanko Dep. 110-111). At the time, neither Captain Miller nor the Commissioner were aware that the plaintiff was interested in the position. (Evanko Dep. 112-113; Miller Dep. 107-108; Defendants' Interrog. Resp. 5).

One of the people the Commissioner suggested to Captain Miller, was Sergeant William McHale. (Miller Dep. 106). Captain Miller knew the sergeant and

---

[7]The Commissioner followed the same procedure when Major David Miller's vacancy was filled by Major Morris. (Morris Dep. 7-10).

contacted him to assess his interest in the job. (Miller Dep. 106-107). After they talked, Captain Miller concluded that he would be a good choice for the job based on his years of experience with the State Police and his communication skills. (Miller Dep. 107; Defendants' Interrog. Resp. 5 and 6).   Captain Miller informed the Commissioner and he concurred in the selection.

Plaintiff was not considered for the positions of Director and Assistant Director for legitimate nondiscriminatory reasons.   First, the Commissioner understood the positions to be L-1 bargaining unit work.   And second, the Commissioner believed that uniformed members bring credibility to dealings with the legislature and to presenting testimony on behalf of the State Police in part as a result of their experience with the operation of the Department.   Unless plaintiff demonstrates that a jury could find that these reasons are only a pretext for discrimination, defendants are entitled to summary judgment on plaintiff's claims based on the failure to select her for the Director and Assistant Director positions.

## VI.    PLAINTIFF WAS DISMISSED FOR LEGITIMATE NONDISCRIMINATORY REASONS

Plaintiff's claim that she was dismissed based on her gender also fails because she was dismissed for legitimate nondiscriminatory reasons.

After Captain Miller spent approximately two months working in the Legislative Affairs Office, he concluded that he needed clerical help more than he needed a legislative specialist. (Miller Dep. 13-14, 61-62). He also concluded that the plaintiff was not able to meet his expectation that she openly communicate with all members of the executive staff regarding matters of concern to the Office. (Miller

-23-

Dep. 61-62; Defendants' Interrog. Resp. 8).    Based on these conclusions he recommended to the Commissioner that plaintiff be removed from the Office and that a clerical position be added.  (Miller 61-64; Defendants' Interrog. 8; Evanko Dep. 102-103).

The Commissioner concurred in his recommendation.  (Evanko Dep. 102-103, *see also* Miller Dep. 67; Coury Dep. 21).  The Commissioner's decision to reorganize the Office as recommended by Captain Miller was communicated to Lieutenant Colonel Coury, the Deputy Commissioner for Administration who was in charge of the Bureau of Personnel.    (Coury Dep. 5-6, 21-22).    The Deputy Commissioner then instructed the Personnel Director, Linda Bonney to handle the plaintiff's situation according to past practice in the Department, including trying to place her in another position.  (*Id.*; Bonney Dec. ¶¶25-26).  He did not tell Ms. Bonney that the plaintiff was dismissed.  (Coury Dep. 21-22.).

The plaintiff was an at-will employee, meaning that she had no rights under the Civil Service Law or a collective bargaining agreement.  (Bonney Dec. ¶¶27-28).  Ms. Bonney concluded that the elimination of plaintiff's position required her dismissal unless she was qualified to fill another vacancy within the Department. (Bonney Dec. ¶28).    Although Ms. Bonney inquired about other positions, no appropriate positions were available.  (Bonney Dep. 64-65; Bonney Dec. ¶¶29-30). Ms. Bonney then concluded that the only way to effect the reorganization of the Legislative Affairs Office was to terminate the plaintiff's employment.  (Bonney Dec. ¶32).

-24-

Ms. Bonney drafted the letter informing plaintiff of her dismissal. (Bonney Dec. ¶34). Ms. Bonney specifically referred to the reorganization in the letter to clarify that the dismissal was not for cause. (Bonney Dec. ¶34; Wilhelm Dep. 180, Wilhelm Ex. 8). Plaintiff was dismissed on May 1, 2000. (Wilhelm Dep. 187-188, Wilhelm Exs. 8, 11, p. 2411). Subsequently, a clerical employee was hired and began working in the Legislative Affairs Office. (Bonney Dep. 70; Miller Dep. 59, 68, 105, Miller Ex. 6, 7).

Plaintiff was dismissed from the State Police for legitimate nondiscriminatory reasons. Her dismissal was based on Captain Miller's recommendation that the Legislative Affairs Office be reorganized and on the lack of appropriate positions within the State Police to which she could be transferred. The recommendation to reorganize the Office was in turn based on his need for clerical assistance and his conclusion that plaintiff would not be able to communicate openly with members of the executive staff.

Again unless plaintiff demonstrates that a reasonable jury could find that these reasons are only a pretext for discrimination, defendants are entitled to summary judgment on plaintiff's claim of sex discrimination in connection with her dismissal.

## VII. PLAINTIFF'S RETALIATION CLAIMS FAIL BECAUSE SHE CANNOT SHOW THAT HER COMPLAINTS ABOUT DISCRIMINATION CAUSED EITHER THE FAILURE TO PROMOTE HER OR HER DISMISSAL.

To establish a prima facie case of retaliation under Title VII, plaintiff must establish three elements. *Weston v. Commonwealth,* 251 F.3d 420, 430 (3d Cir.

2001); *Farrell v. Planters Lifesavers Co.,* 206 F. 3d 271, 279 (3d Cir. 2000). She must show that (1) she engaged in protected activity under Title VII (i.e. complained about discrimination); (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action. *Weston,* 251 F.3d at 430; *Farrell,* 206 F.3d at 279. Here, plaintiff cannot a establish a causal link between her complaints about discrimination and the failure to promote her or between those complaints and her dismissal.

Plaintiff contends that on July 28, 1998, she made a complaint to Major R. Dane Merryman regarding disparate treatment she experienced while working in the Office of Legislative Affairs. (Complaint ¶52; *see also* Plaintiff's Interrog. Answ. 10; Wilhelm Dep. 187-190, 192, Wilhelm Ex. 9, p.2399). She also contends that in June, 1999 she met with Corporal Garret Rain to discuss disparate treatment. (Complaint ¶55). At the time Corporal Rain was an investigator with the Bureau of Professional Responsibility who was assigned investigate a complaint filed by Major Morris and alleging that Captain Simmers had "harassed" the plaintiff. (Rain Dep. 4, 12, 21-23; Morris Dep. 70-71, 73-75, 79-83, Morris Ex. 3)[8].

Plaintiff also claims that she complained of discrimination in a memorandum to Lieutenant William Horgas which was dated September 13, 1999.

---

[8]The complaint submitted by Major Morris did not refer to or describe harassment based on sex. (Morris Ex. 3). It simply described the complaint as harassment.

-26-

(Complaint ¶51[9], Ex. B).  At the time Lieutenant Horgas was part of the Systems Process Review Division of the Bureau of Professional Responsibility (*Id.*).  He was also conducting a review of the performance of the Legislative Affairs Office for compliance with Department rules and regulations. (McNeal Dep. 4, 6; *see also* Conley Dep. 79-80).  Finally, plaintiff contends she complained about disparate treatment in connection with compensatory leave in a memorandum to Major Morris dated January 3, 2000.  (Complaint ¶51, Ex. G.).

After plaintiff made these complaints, Captain Miller was selected to replace Major Morris as Director of the Legislative Affairs Office. (Complaint ¶71; Miller Dep. 13-14).  Sergeant McHale was selected as the new Assistant Director of the Office.  (Miller Dep. 108; McHale Dep. 4).  And, plaintiff was eventually dismissed.  (Complaint ¶97, Answer ¶97)

In parts V and VI of this memorandum defendants have set forth evidence of legitimate non-retaliatory reasons for the selection of Captain Miller and Sergeant McHale.  They have also set forth undisputed evidence of the legitimate non-retaliatory reasons for plaintiff's dismissal.  In the face of this evidence it is now

---

[9]Although paragraph 51 cites additional exhibits as containing notice of disparate treatment only Exhibits B and G arguably contain such notice.  Exhibit B refers to a "hostile/ harassing work environment" although it does not suggest that the environment was based on sex.  Exhibit G refers to a "discriminatory practice" which provided "preferential treatment" to the male employees of the Legislative Affairs Office regarding compensatory leave.  The other documents contain various complaints about the operation of the Legislative Affairs Office, but they do not refer to disparate treatment based on sex.  *See* Complaint Ex. C, D, E, and F.

-27-

complaints and the employment actions outlined above. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  In the absence of such evidence, defendants are entitled to summary judgment on plaintiff's retaliation claims. *Id.;* Fed.R.Civ.P. 56(c).

## CONCLUSION

For all of the preceding reasons, this Court should grant defendants' motion for partial summary judgment.

Respectfully submitted,

**D. MICHAEL FISHER**
**Attorney General**


BY: _____
**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**I.D. No. 27744**


**Office of Attorney General**
**Litigation Section**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**(717) 787-9831**

**DATED: April 16, 2002**

-29-

## CERTIFICATE OF SERVICE

I, **SUSAN J. FORNEY**, Chief Deputy Attorney General for the Commonwealth of Pennsylvania, hereby certify that on April 16, 2002, I caused to be served a copy of the foregoing document entitled **Defendants' Memorandum in Support of Motion for Partial Summary Judgment,** by depositing same in the Untied States Mail, first class, postage prepaid, in Harrisburg, Pennsylvania upon the following:

**Nathan C. Pringle, Jr., Esquire**
**360l N. Progress Avenue, Suite 200**
**Harrisburg, PA 17110**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**I.D. No.  27744**