ORIGINAL 

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA A. WILHELM, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 1:CV-01-1057 |
| | : | |
| COMMONWEALTH OF PA.; | : | (JUDGE RAMBO) |
| PENNSYLVANIA STATE POLICE; | : | |
| COLONEL PAUL J. EVANKO, | : | |
| COMMISSIONER; LIEUTENANT | : | |
| COLONEL THOMAS K. COURY; and | : | |
| CAPTAIN MICHAEL. D. SIMMERS, | : | |
| Defendants | : | |

FILED
HARRISBURG, PA

APR 3 0 2002

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**Statement of the Case**

This is an employment action alleging sex discrimination and retaliation for various actions taken regarding the plaintiff, including her dismissal from employment.

Plaintiff is Barbara A. Wilhelm (Complaint ¶3, Answer ¶3). She was employed as a legislative specialist with the Office of Legislative Affairs with the Pennsylvania State Police from January, 1998 until her dismissal on May 1, 2000 (Complaint ¶¶ 15, 97; Answer ¶¶15, 97).

Defendants are the Pennsylvania State Police, the Commissioner, Colonel Paul J. Evanko, former Deputy Commissioner and former Lieutenant

Colonel Thomas Coury and Captain Michael D. Simmers (Complaint ¶¶4-7; Answer ¶¶4-7; Coury dep. 4-6 ).

Plaintiff's claims include her assertions that (1) she was subjected to disparate treatment based on her sex because she was asked to perform clerical tasks; (2) she was dismissed based on her sex; and (3) her separation from employment was improperly coded as a dismissal in the Commonwealth's personnel records because of her sex (Complaint ¶¶45, 46, 97, 107, 113, 117-119). Plaintiff contends these actions constitute violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e and the Pennsylvania Human Relations Act, Pa. Stat. Ann., tit. 43, §955 ("PHRA") (Complaint ¶¶82, 88, 123, 127).

Defendants have moved for partial summary judgment on some of plaintiff's claims. Plaintiff has also moved for summary judgment on the claims outlined above. Defendants submit this memorandum in opposition to plaintiff's motion[1].

**Plaintiff's Job**

As the legislative specialist within the Office of Legislative Affairs,

---

[1] Defendants submitted numerous documents in support of their motion for partial summary judgment. The citations to the record in this memorandum refer either to those documents or to the documents submitted by plaintiff in support of her motion.

-2-

plaintiff functioned as the staff assistant to the Director of the Office, Major Richard Morris (Wilhelm dep. 26-29, Wilhelm Ex. 1). Except for a brief period of time during plaintiff's tenure, the Office did not have a clerical employee (Wilhelm dep. 46-49, 97).

In performing her job, plaintiff spent most of her time responding to requests for information from members of the General Assembly and their staff (Wilhelm dep. 26-29, 51-53, 72-74, Wilhelm 1). Requests for information were made over the telephone or by correspondence and included a wide variety of matters (Wilhelm dep. 73-76). In addition, plaintiff collected information from units within the State Police regarding proposed legislation which she then put together into a document called an analysis (Wilhem dep. 54-61; Wilhelm Ex. 1; Morris dep. 34). She also gathered information for use in responding to legislators' requests for the State Police position on particular issues (Wilhelm dep. 66-68).

Plaintiff performed a similar role when the Department was considering seeking an amendment to legislation (Wilhelm dep. 64-67). In that situation, plaintiff sought draft language from the affected unit within the State Police and provided it to Major Morris for further review and discussion with the Commissioner (Wilhelm dep. 65-66).

Plaintiff was also responsible for performing other unspecified duties as assigned (Wilhelm dep. 26-29, Wilhelm Ex. 1, p.245). Occasionally, other members of the staff would ask plaintiff for assistance in completing clerical tasks such as typing, filing and proofreading documents (Morris dep. 146-147; Wilhelm dep. 94-95). Staff members approached plaintiff for assistance because was talented and she had clerical skills (Morris dep. 146-147).

In the absence of a clerical employee, male staff members also prepared documents on their computers and filed documents both as hard copies and electronically (Morris dep. 147; Miller dep. 112-113; Wilhelm dep. 112).

During plaintiff's employment, she was reclassified from a Legislative Specialist 1 to a Legislative Specialist 2, based on the level of work that she did (Burkholder dep. 6, 7, 13; Burkholder Ex. 1). Her salary increased as a result of the reclassification (Burkholder dep. 8, 13; Burkholder Ex. 1, p. 1732).

**Plaintiff's Dismissal**

Major Morris retired in January, 2000 (Complaint ¶71). His successor, Captain Jeffrey Miller began functioning as the Director of the Office in mid-February (Miller dep. 13-14). After approximately two months, Captain Miller concluded that he needed clerical help more than he needed a legislative specialist (Miller dep.13-14, 61-62). He also concluded that the plaintiff was not

able to meet his expectation that she openly communicate with all members of the executive staff regarding matters of concern to the Office (Miller dep. 61-62; Defendants' Interrog. Resp. 8). Based on these conclusions he recommended to the Commissioner that plaintiff be removed from the Office and that a clerical position be added (Miller 61-64; Defendants' Interrog. 8; Evanko dep.102-103).

The Commissioner authorized the reorganization of the Office as recommended by Captain Miller (Evanko dep. 102-103, *see also* Miller dep.67; Coury dep. 21). The decision to reorganize the Office was then communicated to Lieutenant Colonel Coury, the Deputy Commissioner for Administration whose responsibilities included the Bureau of Personnel (Coury dep.5-6, 21-22). Lieutenant Colonel Coury instructed the Personnel Director, Linda Bonney to handle the plaintiff's situation according to past practice in the Department, including trying to place her in another position (Id.; Bonney dec. ¶¶25-26) He did not tell Ms. Bonney that the plaintiff was dismissed (Coury dep. 21-22.).

The plaintiff was an at-will employee, meaning that she had no rights under the Civil Service Law or a collective bargaining agreement (Bonney dec. ¶¶27-28). Ms. Bonney determined that the elimination of plaintiff's position required her dismissal unless she was qualified to fill another vacancy within the Department (Bonney dec. ¶28). Although Ms. Bonney inquired about other

-5-

positions, no appropriate positions were available (Bonney dep. 64-65; Bonney dec. ¶¶29-30).

Ms. Bonney then concluded that the only way to effect the reorganization of the Legislative Affairs Office was to terminate the plaintiff's employment (Bonney dec. ¶32). Ms. Bonney did not characterize plaintiff's separation as a furlough because in her experience with the State Police, furloughs only occurred at the direction of the Governor's Office (Bonney dec. ¶32).

Ms. Bonney drafted the letter informing plaintiff of her dismissal (Bonney dec. ¶34). Ms. Bonney specifically referred to the reorganization in the letter to clarify that the dismissal was not for cause (Bonney dec. ¶34; Wilhelm dep. 180, Wilhelm Ex. 8).

Plaintiff was dismissed on May 1, 2000 (Wilhelm dep.187-188, Wilhelm Exs. 8, 11, p. 2411). Subsequently, a clerical employee was hired and began working in the Legislative Affairs Office (Bonney dep. 70; Miller dep. 59, 68, 105, Miller Ex. 6, 7).

The record does not contain any evidence that the State Police treated a similarly situated man more favorably than plaintiff was treated.

## QUESTIONS PRESENTED

1. Was plaintiff subjected to an adverse employment action, when she was asked to perform some clerical duties in connection with her job?

2. Was plaintiff asked to perform clerical duties for legitimate non-discriminatory reasons?

3. Does plaintiff fail to establish sex discrimination in connection with her dismissal because she has not presented evidence that similarly situated men were treated more favorably and because defendants have articulated legitimate non-discriminatory reasons for her dismissal?

4. Does plaintiff fail to establish sex discrimination in connection with the characterization of her dismissal because she has not presented evidence that similarly situated men were treated more favorably and defendants have articulated legitimate non-discriminatory reasons for the characterization?

## ARGUMENT

I. **REQUIRING PLAINTIFF TO PERFORM SOME CLERICAL DUTIES IN CONNECTION WITH HER JOB DOES NOT CONSTITUTE AN ADVERSE EMPLOYMENT ACTION.**

To establish a prima facie case of discrimination, plaintiff must present evidence on each prong of the familiar *McDonnell Douglas* analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Conners v. Chrysler*

*Financial Corp.,* 160 F.3d 971, 973 (3d Cir. 1998). She must show (1) she belongs to a protected category, (2) she was qualified for the position in question, (3) she suffered an adverse employment decision, and (4) a member of the opposite sex was treated more favorably. *McDonnell Douglas, supra*; *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981); *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 330 (3d. Cir. 1995); *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir. 1994)[2]. In this case plaintiff cannot satisfy the third prong of the analysis because being required to perform some clerical duties does not constitute an adverse employment action.

Title VII prohibits employers from discriminating against employees based on sex in the "terms or conditions" of their employment or by adversely affecting their status as employees. 42 U.S.C. §2000e-2(a). The Supreme Court has described such actions as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment or a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 749 (1998). In other words, and adverse employment action must materially affect the terms and conditions of

---

[2]The analysis of discrimination under the PHRA is the same as under Title VII therefore defendants do not separately discuss plaintiff's state law claims. *See Goosby v. Johnson & Johnson Medical, Inc.,* 228 F.3d 313, 317, n.3 (3d Cir. 1999).

-8-

employment. Mere unpleasantness or conduct to which an employee objects does not rise to the level of an adverse employment action. *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1296-1297 (3d Cir. 1997).

In *Weston v. Commonwealth,* 251 F. 3d 420 (3d Cir. 2001), the Court of Appeals considered whether the placement of written reprimands in an employee's file constituted and adverse employment action. The Court concluded the reprimands did not materially change the terms or conditions of employment. In reaching this decision, the Court noted, "[the employee] was not demoted in title, did not have his hours or work changed or altered in any way, and... he was not denied any pay raise or promotion...." *Id.* at 431.

Likewise in this case assigning plaintiff occasional clerical duties did not materially affect the terms and conditions of her employment. First, her job required that she perform certain unspecified duties as assigned (Wilhelm dep. 26-29; Wilhelm 1, p. 245). Second, she was not demoted or denied a pay raise or promotion as a result of performing clerical duties. To the contrary, her job was reclassified to a higher level and she received a raise (Burkholder dep. 6, 7, 8, 13; Burkholder Ex. 1, p. 1732). Finally, the clerical duties she performed did not overwhelm the rest of her job. By her own testimony she spent most of her time attending to other matters (Wilhelm dep. 26-29, 51-53, 72-74, Wilhelm 1).

Accordingly, assigning plaintiff occasional clerical duties did not rise to the level of an adverse employment action and her motion for summary judgment on that point must be denied.[3]

## II. PLAINTIFF WAS ASSIGNED CLERICAL TASKS FOR LEGITIMATE NONDISCRIMINATORY REASONS.

Assuming for the purposes of argument that plaintiff has established a prima facie case, her claim fails nonetheless because defendants have articulated legitimate nondiscriminatory reasons for assigning her some clerical tasks. *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 330 (3d. Cir. 1995); *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir. 1994).

As Major Morris explained in his deposition, the plaintiff was talented and had clerical skills (Morris dep. 146-147). Therefore staff members did approach her for help when they needed to complete certain tasks (*Id.*). Their actions were not discriminatory. They simply recognized the talents and skills which the plaintiff possessed.

---

[3]Plaintiff also fails to satisfy her burden to show that similarly situated males were treated differently. The record shows that the male employees of the Office also typed and filed documents (Morris dep. 147; Miller dep. 112-113; Wilhelm dep. 112).

-10-

### III. PLAINTIFF POINTS TO NO EVIDENCE THAT HER DISMISSAL WAS BASED ON HER SEX.

Plaintiff argues that her dismissal was discriminatory because no decision was made to reorganize the Legislative Affairs Office and because no male employee was dismissed without a decision to reorganize an office (Pl. Memo, p.5). Plaintiff's argument fails both on the facts and the law.

As the record shows, Captain Miller recommended that the Legislative Affairs Office be reorganized (Miller dep.). The reorganization was then carried out under the authority of the Commissioner (Evanko dep.) The Commissioner did not originate the idea but he did authorize its implementation (*Id.*). Thus, plaintiff's assertion that no decision was made is inaccurate.

Plaintiff's argument also fails because under the law, she must point to something which gives rise to an inference of discrimination such as that similarly situated men were treated differently. *Jones v. School District of Philadelphia,* 198 F.3d 403, 410-411 (3d Cir. 1999). She has not done this.

Although plaintiff asserts that men were treated differently, she fails to point to anything in the record that shows this to be true (*See* Pl. Memo, p.5). On summary judgment, parties may not rely on mere allegations to support or oppose a motion. Instead they must set forth such facts as would be admissible in

evidence to support their positions. Fed.R.Civ.P. 56(e); *see also Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir. 1989)[4].

Accordingly, plaintiff's motion for summary judgment on her claim that her dismissal was discriminatory must be denied.

### IV.    PLAINTIFF POINTS TO NO EVIDENCE THAT THE CODE USED TO DESCRIBE HER SEPARATION FROM EMPLOYMENT WAS DISCRIMINATORY.

Plaintiff argues that her separation from the State Police should have been identified as a furlough instead of a dismissal. She further contends that this incorrect coding constitutes discrimination. Plaintiff again fails to establish a prima facie case because she points to no *evidence* that similarly situated men were treated differently (Pl. Memo, p. 6).

Moreover, the record shows the reasons for identifying plaintiff's separation as a dismissal had nothing to do with her sex. As the Personnel

---

[4]Plaintiff's motion also fails because defendants have articulated legitimate nondiscriminatory reasons for the plaintiff's dismissal---her position was no longer needed by the Legislative Affairs Office and the State Police did not have another vacancy for which she was qualified (Miller dep. 61-64; Defendants' Interrog. Answ. 8; Evanko dep. 102-103; Bonney dep. 64-65; Bonney Dec. ¶¶27-32). In the absence of undisputed evidence that these reasons are pretextual or that plaintiff's sex actually motivated the decision to dismiss, the motion for summary judgment must be denied. Fed.R.Civ.P. 56(c); *Fuentes,* 32 F.3d at 763-764.

Director's declaration demonstrates, Ms. Bonney did not identify the separation as a furlough because in her experience furloughs were always directed by the Governor's Office (Bonney dec. ¶ 32). At most, plaintiff's evidence suggests that Ms. Bonney was mistaken, not that her actions were motivated by plaintiff's sex (*See* Pl. Memo, p.6)

Accordingly, plaintiff's motion for summary judgment must also be denied regarding the designation of her separation from the State Police as a dismissal.

## CONCLUSION

For all of the preceding reasons, plaintiff's motion for summary judgment should be denied.

          Respectfully submitted,

          D. MICHAEL FISHER
          Attorney General


BY:    _____
          SUSAN J. FORNEY
          Chief Deputy Attorney General
          I.D. No. 27744

**Office of Attorney General**
**Litigation Section**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**(717)787-9831**

**DATED: April 30, 2002**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA A. WILHELM, | : |
| Plaintiff | : |
| v. | : NO. 1:CV-01-1057 |
| COMMONWEALTH OF PA.; PENNSYLVANIA STATE POLICE; COLONEL PAUL J. EVANKO, COMMISSIONER; LIEUTENANT COLONEL THOMAS K. COURY; and CAPTAIN MICHAEL. D. SIMMERS, | : (JUDGE RAMBO) |
| Defendants | : |

## CERTIFICATE OF SERVICE

I, **SUSAN J. FORNEY**, Chief Deputy Attorney General for the Commonwealth of Pennsylvania, hereby certify that on April 30, 2002, I caused to be served a copy of the foregoing document entitled **Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment,** by depositing same in the Untied States Mail, first class, postage prepaid, in Harrisburg, Pennsylvania upon the following:

Nathan C. Pringle, Jr., Esquire
3601 N. Progress Avenue, Suite 200
Harrisburg, PA 17110

*Susan J. Forney*
**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**I.D. No. 27744**