IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA A. WILHELM,<br>Plaintiff | : |
| v. | : NO. 1:CV-01-1057 |
| COMMONWEALTH OF PA.;<br>PENNSYLVANIA STATE POLICE;<br>COLONEL PAUL J. EVANKO,<br>COMMISSIONER; LIEUTENANT<br>COLONEL THOMAS K. COURY; and<br>CAPTAIN MICHAEL. D. SIMMERS,<br>Defendants | : (JUDGE RAMBO)<br>FILED<br>HARRISBURG, PA<br>MAY 0 8 2002<br>MARY E. D'ANDREA, CLERK<br>Per _____ Deputy Clerk |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT MATERIAL UNDISPUTED FACTS IN SUPPORT OF SUMMARY JUDGMENT

Plaintiff responds to defendants' statement of facts as set forth their statement of material undisputed in support of summary judgment. Where pertinent, plaintiff set forth additional undisputed facts:

### The Parties

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Undisputed.

5. Undisputed.

## Office of Legislative Affairs

6.  Undisputed.

7.  Undisputed.

8.  Disputed.

   a.  Ronald Plesco performed the duties of the Legislative Liaison and had the same dual reporting responsibilities from July 1996 until sometime after February 1997 when Captain Morris was appointed Legislative Liaison (Plesco Dep. 4-14; Morris Dep. 11)[1].

9.  Disputed.

   a.  Ronald Plesco was acting as Legislative Liaison from January 1997 until February 1997, when Captain Morris was appointed (Plesco Dep. 9, 10; Morris Dep. 11).

10. Disputed.

   a.  Major Miller had Mr. Kiminsky assigned to him. (Plesco Dep. 43).

11. Undisputed.

12. Undisputed.

13. Undisputed.

14. Disputed.

2

    a.    The Commissioner submitted the names of candidates to be interviewed by the Governor's Office (Morris Dep. 9).

15. Undisputed.

16. Undisputed.

17. Undisputed.

18. Undisputed.

20. Undisputed.

21. Undisputed.

22. Disputed.

    a.    Mr. Plesco performed the substantive portion of the Legislative Liaison's job (Plesco Dep. 7).

23. Disputed.

    a.    These functions were performed by Mr. Plesco and Major Miller prior to the appointment of Captain Morris (Plesco Dep. 7-9).

### Major Morris' Job

24. Undisputed.

25. Undisputed.

26. Undisputed.

27. Undisputed.

---

[1] The deposition contains an error. Lines 22 and 23 on page 9 should read: "And Major Miller was retired

3

28. Undisputed.

29. Undisputed.

30. Undisputed.

31. Undisputed.

32. Undisputed.

33. Undisputed.

### Captain Simmers' Job

34. Undisputed.

35. Disputed.

    a. Captain Simmers did not act as Director for approximately three months after Major Morris' retirement.

    b. Captain Miller was Director by mid-February of 2000 (Unsworn declaration of Major Jeffrey B. Miller ¶ 2 ).

36. Undisputed.

37. Disputed.

---

in January ' 97  I believe?"

4

     a.    Captain Simmers was assigned the duties that included legislative analysis and responding to correspondence, but did not perform these duties. He delegated them to Ms. Wilhelm (Morris Dep. 36, 37).

38.    Undisputed.

### Ronald Plesco's Job

39.    Undisputed.

40.    Undisputed.

41.    Undisputed.

42.    Undisputed.

43.    Undisputed.

44.    Undisputed.

45.    Undisputed.

46.    Undisputed.

47.    Undisputed.

48.    Undisputed.

49.    Undisputed.

50.    Undisputed.

51.    Undisputed.

52.    Undisputed.

53.    Dispute.

   a.   There is not a clear definition of policy work as the term applies to the Pennsylvania State Police. (Morris Dep. 11-13).

54. Undisputed.

55. Undisputed.

56. Undisputed.

57. Undisputed.

58. Undisputed.

59. Undisputed.

### Plaintiff's Job

61. Undisputed.

62. Undisputed.

63. Undisputed.

64. Disputed.

   a.   Ms. Wilhelm is familiar with the law to the extent of her police training (Wilhelm Dep. 7).

65. Undisputed.

66. Undisputed.

67. Disputed.

   a.   On occasion, Major Morris would give Ms. Wilhelm the task of responding independently (Morris Dep. 31).

6

68. Disputed.

   a. Ms. Wilhelm's primary responsibility was legislative analysis (Morris Dep. 29, 34).

   b. Responding to request for information was not a primary duty (Morris Dep. 33).

69. Undisputed.

70. Disputed.

   a. Ms. Wilhelm identified examples of the kinds of calls she received, but insisted the calls involved a broad range of subjects (Wilhelm Dep. 76).

71. Disputed.

   a. One of the most important functions Ms. Wilhelm performed was legislative analysis; this included providing an independent research and assessment of the impact of proposed legislation (Wilhelm Dep. 222-224).

   b. She distinguished this function from another highly important function, reviewing proposed legislation and disseminating it to the department bureaus and offices (Wilhelm Dep. 53).

72. Disputed.

73. Disputed.

74. Disputed.

75. Undisputed.

76. Undisputed.

77. Undisputed.

78. Undisputed.

79. Disputed.

    a.    Ms. Wilhelm and Mr. Morris would determine if a legislator's question had been adequately answered before responding. (Wilhelm Dep. 66, 67).

80. Undisputed.

81. Undisputed.

82. Undisputed.

83. Undisputed

84. Undisputed.

85. Undisputed.

86. Disputed.

    a.    The line distinguishing legislative analysis and policy analysis was sometimes blurred; Ms. Wilhelm's analysis sometimes overlapped into policy analysis. (Morris Dep. 11-13, 29, 30)

87. Undisputed.

88. Undisputed.

89. Disputed.

    a. Ms. Wilhelm did legislative analysis which was used for briefings with legislators (*Id*).

90. Disputed.

    a. Ms. Wilhelm drafted department directives and administrative orders (Wilhelm Ex. 1 p. 000244).

### **Plaintiff's Complaints**

91. Undisputed.

92. Undisputed.

93. Undisputed.

94. Undisputed.

95. Disputed.

    a. A complaint may be taken orally; they are eventually reduced to writing (Conley Dep. 80).

96. Undisputed.

97. Undisputed.

98. Undisputed.

99. Disputed.

    a. Ms. Wilhelm submitted a complaint in the form of a memorandum dated September 13, 1999 (Conley Ex. 3).

100. Undisputed.

101. Disputed.

102. Undisputed.

103. Undisputed.

104. Undisputed.

105. Undisputed.

106. Undisputed.

107. Disputed.

    a. Competency may be investigated by the Bureau of Professional Responsibility (Hickes Dep. 8, 9).

108. Undisputed.

109. Disputed.

    a. No documentation was required where Major Morris made it clear to Colonel Evanko that a performance evaluation of his friend, Captain Simmers, would not be favorable (Evanko Dep.78, 90-93; Evanko Ex. 10 pp. 000190, 000191, 000228).

110. Undisputed.

111. Undisputed.

112. Undisputed.

113. Disputed.

     a.    Colonel Evanko admitted knowing of the investigation, reassigning the adjudicator, knowing the findings of the investigation and that Captain Simmers was a friend (Evanko Dep. 78, 95, 96).

114.  Undisputed.

115.  Undisputed.

116.  Undisputed.

117.  Undisputed.

118.  Undisputed.

119.  Undisputed.

120.  Disputed.

     a.    The memorandum constituted a complaint submitted to be investigated by the Internal Affairs Division, and it was received, but not investigated (Conley Dep. 43-65; Conley Ex. 2; Conley Ex. 3).

121.  Undisputed.

122.  Undisputed.

123.  Undisputed.

### The Selection of Major Morris' Successor

124.  Undisputed.

125.  Undisputed.

126.  Undisputed.

11

127. Undisputed.

128. Undisputed.

129. Undisputed.

130. Disputed.

    a. Ms. Wilhelm did not submit a resume to the Deputy Commissioner because she expected Ms. Bonney to get more information. (Wilhelm Dep. 166-168).

    b. Ms. Bonney never provided more information (*Id..*).

    c. Had Ms. Bonney provided more information, it would have been that Ms. Wilhelm would not have been considered (Bonney Dep. 61-63).

131. Disputed.

    a. The Commissioner never stated he was unaware of Ms. Wilhelm's interest.

132. Undisputed.

133. Disputed.

    a. The Commissioner never believed that there was a statutory or regulatory requirement that an enlisted employee be appointed as director (Defendants' Interrog. Resp. 4).

12

    b.    The Commissioner only wanted to consider enlisted men (PHRC Ans. page 5; Evanko Dep 104, 105).

    c.    The neither Commissioner nor Lieutenant Colonel Coury took disciplinary action when a male officer employee committed an overt act of sexual harassment. against a female employee (Balsbaugh Dep. 6-9; Coury Dep. 6-7).

134.    Disputed.

    a.    The Commissioner had no specific knowledge as to why he believed Ms. Wilhelm was less knowledgeable than other department employees (Evanko Dep. 85, 86).

135.    Undisputed.

136.    Undisputed.

## The Selection of the Assistant Director

137.    Disputed.

    a.    The only person interviewed by Captain Miller was one of the two males identified as a candidate by the Commissioner (Miller Dep. 106-109).

138.    Disputed.

a. The Commissioner presented Captain Miller with his candidate, a male, after Captain Miller identified three candidates of his choosing, including a women (*Id*).

139. Disputed.

a. Ms. Wilhelm contacted Ms. Barbara Christie, Counsel for the department, in order to get information to apply for the assistant director position (Defendants' Answer ¶ 78).

b. Ms. Christie failed to offer testimony or statement, sworn or unsworn, that she did not confer with her client regarding her discussion with Ms. Wilhelm suggests the Commissioner was aware.

140. Disputed.

a. The Commissioner never believed that there was a statutory or regulatory requirement that an enlisted employee be appointed as assistant director (Defendants' Interrog. Resp. 7).

141. Disputed.

142. Disputed.

143. Disputed.

a. After talking with the Commissioner Captain Miller ignored his list of candidates selected the only person identified as a candidate by the Commissioner (Miller Dep. 106, 107).

144. Undisputed.

### Plaintiff's Dismissal

145. Disputed.

    a. As early as April 1999, the Legislative Affairs Office planned to hire a clerical person with Ms. Wilhelm acting as supervisor (Complaint ¶¶ 100, 101).

    b. There was no attempt to place a clerical person in the office until after Ms. Wilhelm submitted her September 13, 1999, complaint.

146. Dispute.

    a. If Captain Miller, as Ms. Wilhelm's supervisor, really believed she had performance problems he should have maintained supervisory notes of deficiencies, attempted to correct the deficiencies through instructions, articulated his expectations to her, trained her, counseled her and if necessary disciplined her (Evanko Dep. 113, 114).

    b. Captain Miller did not believe Ms. Wilhelm's behavior or performance warranted any type of disciplinary response (Miller Dep. 78, 79).

147. Dispute.

    a. The Commissioner decided to reorganize the office before Captain Miller was appointed (Miller Dep. 61).

15

148. Dispute.

149. Dispute. The Commissioner denies that he decided to reorganize the office (Evanko Dep. 102, 103).

150. Disputed.

151. Disputed.

152. Undisputed.

153. Disputed.

154. Disputed.

155. Disputed.

156. Undisputed.

157. Disputed.

158. Undisputed.

159. Undisputed.

### Civilianization

160. Undisputed.

161. Disputed.

    a. As the Personnel Director, Ms. Bonney knew that under Pennsylvania law the actual work performed by a bargaining unit, not the title of a position held by a person determines bargaining unit work..

162. Undisputed.

163. Disputed.

164. Undisputed.

165. Undisputed.

166. Undisputed.

167. Undisputed.

### Dismissal of Uniformed Members of the State Police

168. Undisputed.

169. Undisputed.

170. Undisputed.

171. Disputed.

172. Undisputed.

### Barbara Christie's Job

173. Undisputed.

174. Undisputed.

175. Undisputed.

176. Undisputed.

### Plaintiff's Administrative Complaints

177. Undisputed.

178. Undisputed.

179. Undisputed.

    a.    The Pennsylvania Human Relations Commissions requires complaints to complete questionnaires before completing a complaint.

    b.    The complainant's responses to the questionnaires are included as part of the investigative process.

    c.    Ms. Wilhelm identified Captain Simmers in a questionnaire as an abettor of discriminatory practices.(PHRC questionnaire)

180.    Disputed.

    a.    Ms. Wilhelm identified Commissioner Evanko, Colonel Coury and Captain Simmers in a questionnaire as abettors of discriminatory practices (PHRC questionnaire).

181.    Undisputed.

182.    Undisputed.

183.    Disputed.

    a.    Ms. Wilhelm identified Commissioner Evanko, Colonel Coury and Captain Simmers in questionnaires as abettors of discriminatory

practices (PHRC questionnaires).

                                    Respectfully Submitted,

                                    */s/ Nathan C. Pringle, Jr.*
                                    Nathan C. Pringle, Jr.
                                    Attorney I.D. 30142
                                    3601 North Progress Ave.
                                    Suite 200
                                    Harrisburg, PA 17110
                                    (717) 909-8520

Dated: May 8, 2002                    Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I, Nathan C. Pringle, Jr., hereby certify that on May 8, 2002, I caused to be hand-served a copy of the foregoing document entitled Plaintiff's Response to Defendants' Statement of Material Undisputed Facts upon the following:

Susan J. Forney
Chief Deputy Attorney General
Office of Attorney General
Litigation Section
15th Floor, Strawberry Square
Harrisburg, PA 17120

_____
Nathan C. Pringle, Jr.