IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BARBARA WILHELM,                :
      Plaintiff       :
                   :
                   :
      v.              : 01-CV-1057
COMMONWEALTH OF PA, et cal.,    :
      Defendants       :

**FILED**
**HARRISBURG, PA**

JAN 0 8 2003

MARY E. D'ANDREA, CLERK
Per _____
        Deputy Clerk

TRANSCRIPT OF PROCEEDINGS

JURY TRIAL

TESTMONY OF ROSE ANN POLEK

BEFORE:   HON. SYLVIA H. RAMBO, Judge

DATE:     September 9, 2002

PLACE:    Courtroom Number Three
          Federal Building
          Harrisburg, Pennsylvania

COUNSEL PRESENT:
NATHAN C. PRINGLE, JR., Esquire
    For - Plaintiff

SUSAN J. FORNEY, Esquire
    For - Defendants

Vicki L. Fox, RMR
Official Reporter

2

1

I N D E X

|  | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| **Plaintiff's Witnesses** |  |  |  |  |
| 6.   Rose Ann Polek |  |  |  |  |
| By Mr. Pringle | 4 | -- | 25 | -- |
| By Ms. Forney | -- | 22 | -- | -- |

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

E X H I B I T S

| Plaintiff Exhibits | Introduced | Admitted |
|---|---|---|
| 59.  Bonney to Barbara Wilhelm, letter of dismissal. | 13 | -- |
| 61.  Department Directive Personnel Order, Barbara Wilhelm dismissed. | 15 | -- |
| 62.  CMIC Barbara Wilhelm Employment PD. | 16 | -- |
| 63.  CMIC Transaction Codes. | 17 | -- |
| 65.  Department Directive Personnel Rules. | 5 | -- |

4

Polek - Direct

1      MR. PRINGLE:  At this time, I would like to call

2  Mrs. Rose Polek.

3      THE CLERK:  Would you state your name, please?

4  A    Rose Ann Polek.

5              DIRECT EXAMINATION

6  BY MR. PRINGLE:

7  Q    Ms. Polek, are you under subpoena today?

8  A    Yes, I am.

9  Q    Are you currently employed?

10  A    Yes.

11  Q    Where are you employed?

12  A    I am employed by the Bureau of Human Resources,

13  Pennsylvania State Police.

14  Q    What is your position there?

15  A    I am the Director of the Employment Services and

16  Systems Division.

17  Q    How long have you been in that position?

18  A    Since 2000.

19  Q    What are your duties there?

20  A    My Division is responsible for hiring, payroll,

21  Probationary Trooper Program and transactional work.

22  Q    What is transactional work?

23  A    It is when we input information into the system if that

24  is payroll, someone going on leave without pay, new hires,

25  promotions, transfers.

5

Polek - Direct

1    Q      How would that relate to a person's personnel record or

2    personnel history?

3    A      The personnel history can be obtained by any Personnel

4    Department in the Commonwealth.

5    Q      So anything that you input in the system can be

6    accessed by other personnel officers throughout the

7    Commonwealth?

8    A      Yes.

9    Q      Are you familiar with the Commonwealth's -- State of

10   Pennsylvania's Personnel Rules?

11   A      Yes, I am.

12   Q      How are you familiar with that?

13   A      They were written and developed by the Governor's

14   Office of Administration.  And all personnel offices under

15   the Commonwealth must adhere to those policies.

16              MR. PRINGLE:  May I approach, Your Honor?

17              THE COURT:  Yes.

18              (Department Directive Personnel Rules was

19   introduced as Plaintiff Exhibit 65.)

20   BY MR. PRINGLE:

21   Q      I am going to show you Plaintiff Exhibit 65.  Can you

22   identify what has been labeled Plaintiff Exhibit 65?

23   A      It is a management directive governing the Personnel

24   Rules.

25   Q      Is this the Personnel Rules?

6

Polek - Direct

1    A    Yes, it is.

2    Q    And what agencies does this cover?

3    A    All agencies under the Governor's jurisdiction.

4    Q    Including the Pennsylvania State Police?

5    A    Yes.

6    Q    What is the purpose of this document?

7    A    It sets the policies and procedures for all personnel

8    offices to adhere to.

9    Q    Okay.  You said you are a transaction person.  You

10   handle transactions?

11   A    Yes, I do.

12   Q    How important is it to record personnel transactions

13   accurately?

14   A    It is very important.

15   Q    Explain that.

16   A    Well, if you are doing transactions for promotions and

17   transfers, it would affect salary.  You have to have the

18   correction transaction codes to do any type of transaction as

19   it relates to appointments, retirements, resignations,

20   etcetera, etcetera.

21   Q    And how long were you with the Commonwealth handling

22   transactions?

23   A    Since 1978.

24   Q    I stopped you a little earlier when you were talking

25   about transactions.  What was your background before your

7

Polek - Direct

1    current position?

2    A    I was the supervisor of the Placement and Processing

3    Section since 1986.

4    Q    What did that section do?

5    A    We did the hiring and the transactional work.

6    Q    More transactional work?

7    A    Yes.

8    Q    What was your position prior to that?

9    A    I worked in Payroll Department, and that involved

10   transactions as well.

11   Q    How long were you there?

12   A    From 1978 to 1982.

13   Q    And before that, where did you work?

14   A    Department of Public Welfare.

15   Q    What did you do that?

16   A    Accounting.

17   Q    Did that do any personnel transactions?

18   A    No, it did not.

19   Q    Approximately how many years were you at the State

20   Police doing personnel transaction?

21   A    Since 1978.

22   Q    I would like you to turn to -- I am directing you to

23   Plaintiff Exhibit 65, the Personnel Rules.  I would like you

24   to read the definition for a furlough.

25            THE COURT:  For what?

8

Polek - Direct

1   BY MR. PRINGLE:

2   Q      Furlough.

3              THE COURT:  Can you direct her?

4   BY MR. PRINGLE:

5   Q      Yes, on page four.

6   A      The removal of an employe from his or her position due

7   to lack of work or funds or other operational needs.

8   Q      If Ms. Wilhelm was terminated because of a

9   reorganization, would furlough be the accurate way to

10  describe that personnel transaction?

11  A      It depends on the person's position.  She was a

12  noncivil service management employe.  We do not furlough

13  noncivil service management.

14  Q      Do you remember taking your deposition?

15  A      Yes, I do.

16  Q      With me and Ms. Forney there?

17  A      Yes.

18  Q      I asked you a series of questions regarding personnel

19  rules?

20  A      Yes.

21  Q      Do you remember that I asked you whether or not the

22  definition of furlough accurately describes what you claim

23  happened to Ms. Wilhelm?

24  A      It would explain what happened to Ms. Wilhelm, but it

25  also depends on the person's position on whether or not they

9

                         Polek - Direct

1    are actually furloughed or not.

2    Q      Referring to your deposition, page ten, would you read

3    -- on page six, I'm sorry -- the question and your answer?

4    A      At the beginning?

5    Q      Page six.

6    A      I asked you to read the definition for furlough, not

7    furloughee.  And my response was removal of an employe from

8    his or her position due to lack of work or funds or for other

9    operational reasons.

10            You asked is that consistent with your

11   understanding of the definition of a furlough?  My answer

12   was:  Yes, it is.

13   Q      Okay.  That is the same definition I just asked you to

14   read?

15   A      Yes.

16   Q      Page eleven, again, I am referring to page eleven,

17   would you read my question to you?

18            THE COURT:  On what line?

19   BY MR. PRINGLE:

20   Q      On line four, starting on line four.

21   A      Question:  Does that accurately describe what happened

22   to Barbara, the furlough definition?  And my answer was:

23   Yes.

24   Q      Are you now changing your answer?

25   A      I am not changing my answer.  That would define what

10

Polek - Direct

1    would happen to somebody whose work was removed.  I was just

2    further defining that it wouldn't necessarily be Ms. Wilhelm

3    because she was a noncivil service management employe.

4    Q      Would you read this, again?

5    A      No.  I understand what it said.

6    Q      The question was:  Does that accurately describe what

7    happened to Barbara?

8    A      And my answer in my deposition was yes.  And I am just

9    further defining it on what happens between noncivil service

10   management, civil service management.

11   Q      Did you know Barbara was noncivil service at the time

12   you answered my question at the deposition?

13   A      Yes, I did, sir.

14   Q      Did I not at the beginning of the deposition ask you to

15   explain -- tell you you were free to explain anything you

16   wanted to explain?

17   A      Yes.

18   Q      Didn't I give you an opportunity to explain anything

19   you wanted to explain?

20   A      Yes, you did, sir.

21   Q      Did you explain that to me?

22   A      Not at the time, sir, no.

23          MR. PRINGLE:  Your Honor, may I approach regarding

24   her deposition?

25          THE COURT:  Yes.  Is there a question on the

11

Polek - Direct

1    floor?

2                    MR. PRINGLE:  No.  It is the same question.

3                    THE COURT:  All right.

4    BY MR. PRINGLE:

5    Q    I am referring you to page six of the deposition.  I

6    would like you to read line six.

7    A    Is that consistent with your understanding of the

8    definition of furlough?  And my answer is yes, it is.

9    Q    We were referring to the definition that you read of

10   the Personnel Rules?

11   A    Yes, sir.

12   Q    And my next question to you on line nine was?

13   A    And other operational reasons might be reorganization?

14   And my answer is yes.

15   Q    And you understood that I was talking about the phrase

16   in that definition dealing with the phrase operational

17   reasons, other operational reasons.  Did you understand that

18   when I asked you the question?

19   A    Yes, sir.

20   Q    And you were answering affirmative that other

21   operational reasons would be a reorganization?

22   A    Yes.

23   Q    Still referring to Plaintiff Exhibit 65, I would like

24   you to read for me the definition of dismissal.

25                    THE COURT:  Page?

12

Polek - Direct

1   BY MR. PRINGLE:

2   Q    Page three.  I'm sorry.

3   A    The involuntary termination of employment for reasons

4   other than lack of funds or work.

5   Q    Okay.  Was Ms. Wilhelm removed for reasons other than

6   lack of funds or work?

7   A    Not that I am aware of, no.

8   Q    Was Ms. Wilhelm's termination involuntary?

9   A    Yes, it was.

10  Q    What other reasons would there be for removing a person

11  other than lack of funds or work?

12  A    There could be performance or discipline.

13  Q    Was Ms. Wilhelm removed for performance or discipline?

14  A    Not that I am aware of, no.

15  Q    What other reasons can you think of based on your years

16  of experience?

17  A    That would cover it.

18  Q    Are you familiar with the letter of dismissal given to

19  Ms. Wilhelm?

20  A    Yes, I am.

21  Q    How are you familiar with it?

22  A    I received a copy of it.

23  Q    Did you write it?

24  A    No, I did not.

25  Q    Do you know who wrote it?

13

Polek - Direct

1    A    I believe our Personnel Director, but I am not sure.

2    Q    Who is your Personnel Director?

3    A    Mrs. Linda Bonney.

4         MR. PRINGLE:  May I approach the witness?

5         THE COURT:  Yes.

6         (Bonney to Barbara Wilhem letter of dismissal

7    dated April 2, 2000 was introduced as Plaintiff Exhibit 59.)

8    BY MR. PRINGLE:

9    Q    Plaintiff Exhibit 59, have you seen what has been

10   labeled Plaintiff Exhibit 59 before?

11   A    Yes.

12   Q    What is it?

13   A    The dismissal letter that was provided to Ms. Wilhelm.

14   Q    Would you read the first paragraph?

15   A    By the authority of the Commissioner, you are hereby

16   dismissed as a Legislative Specialist Two with the

17   Legislative Affairs Office effective the close of business

18   Monday, May 1st, 2000.

19   Q    Would you read the next line, please?

20   A    This dismissal action is necessitated due to the

21   reorganization of the Legislative Affairs Office.

22   Q    Was this letter written by the time you -- this letter

23   was already written by the time you saw it?  I'm sorry.  This

24   letter was already written by the time you knew she was being

25   dismissed?  Was this letter written by the time you knew she

14

Polek - Direct

1  was being dismissed?

2  A    No.  I knew probably a day before I received the

3  letter.

4  Q    Do you remember when you received the letter?

5  A    No.  But it might have been like a day before or that

6  morning on April 28th when the letter was written.

7  Q    April 27th, April 28th, somewhere around that time?

8  A    Yes.

9  Q    Did you have a discussion with Ms. Bonney regarding the

10  decision to dismiss Ms. Wilhelm?

11  A    She provided me a copy of the letter and told me about

12  the dismissal and reorganization.  But that was the extent of

13  our conversation.

14  Q    What did she tell you about the reorganization?

15  A    She just told me the dismissal was due to the

16  reorganization.

17  Q    Did she say -- did she indicate who made the decision

18  to dismiss Ms. Wilhelm?

19  A    No, she did not.

20  Q    Are you familiar with the process by which information

21  about separations from employment with the State Police are

22  communicated throughout the State Police?

23  A    They are put on personnel orders, and a distribution is

24  made.

25  Q    How are you familiar with that?

15

                            Polek - Direct

1    A    We prepare the personnel orders in our Bureau.

2    Q    Your office is responsible for doing that?

3    A    Yes, sir.

4    Q    Was that the case at the time that Ms. Wilhelm was

5    dismissed?

6    A    That's correct.

7              (Department Directive Personnel Order, Barbara

8    Wilhelm dismissed dated 6/15/2000 was introduced as Plaintiff

9    Exhibit 61.)

10   BY MR. PRINGLE:

11   Q    I would like to refer you to Plaintiff Exhibit 61.  Can

12   you identify the document that has been labeled Plaintiff

13   Exhibit 61?

14   A    It is the separations personnel order for the month of

15   May, 2000.

16   Q    What does separations mean?

17   A    Anyone who retires, resigns or is dismissed from the

18   State Police.

19   Q    Can you identify all the employes who were dismissed?

20   A    Barbara Wilhelm.

21   Q    Who else?

22   A    That is it for this personnel order.

23   Q    If a person is being subjected to -- I'm sorry.  Are

24   you familiar with any situations where a person might be

25   subjected to discipline and possibly removal, but they were

16

Polek - Direct

1    permitted to resign?

2    A     Not that I am fully aware of.  I don't get involved in

3    those decisions.  I'm sure there probably have been some, but

4    I am not fully aware of them.

5    Q     Where is this document distributed?

6    A     This personnel order?

7    Q     To whom is that personnel order distributed?

8    A     It is sent to the Area Troop and Station Commanders and

9    Bureau Directors.

10   Q     Is that just within the Headquarters Building?

11   A     No.  It is throughout all of the State Police stations.

12   Q     In the entire state?

13   A     Yes, sir.

14              MR. PRINGLE:  May I approach, Your Honor?

15              THE COURT:  Yes.

16              (CMIC Barbara Wilhelm Employment PD was introduced

17   as Plaintiff Exhibit 62.)

18   BY MR. PRINGLE:

19   Q     I am going to show you Plaintiff Exhibits 62 and 63.

20   Can you identify the document that is labeled Plaintiff

21   Exhibit 62?

22   A     That is the transactional report on Barbara Wilhelm.

23   Q     Is this the transactional report that would come out of

24   your office?

25   A     Yes, sir.

17

Polek - Direct

1    Q    This is the transactional report that other personnel

2    -- people throughout the Commonwealth would see?

3    A    Yes, sir.

4    Q    Would you identify on the second page of this document

5    the numeric code indicating that she was dismissed?

6    A    It would be the very first code on this sheet with the

7    transaction code 02200.

8         (CMIC Transaction Codes was introduced as

9    Plaintiff Exhibit 63.)

10   BY MR. PRINGLE:

11   Q    I would like you to identify Plaintiff Exhibit 63.

12   A    That is the definition of the transaction codes.

13   Q    This would explain the various numeric and alpha codes

14   on a person's personnel record?

15   A    Correct.

16   Q    Show us using Plaintiff Exhibit 63 where the

17   transaction code for 0220 is explained in Plaintiff Exhibit

18   63?

19   A    It's on page two.

20   Q    What is the caption for that?

21   A    Dismissal, removal.

22   Q    Can you read for me the various reasons -- describe for

23   me -- there are a number of descriptions under that.  What

24   are they?

25   A    That's the various reasons for a dismissal or a

18

Polek - Direct

1    removal.

2    Q    Would you read for me the various reasons?

3    A    Civil Service commission order, during probationary

4    period, abandonment, failure to qualify at Civil Service

5    jobs, failure, loss of job qualifications, default on a PHEAA

6    loan, court-martial, work related injury, cannot return

7    full-time, unsatisfactory performance, unsatisfactory

8    performance attendance, dependability, unspecified, criminal

9    charges conduct, transaction process initiated late.

10   Q    Which one was assigned to the dismissal of Barbara

11   Wilhelm?

12   A    Unspecified.

13   Q    On page three?

14   A    Yes, sir.

15   Q    With alpha code VX?

16   A    Yes.

17   Q    So a personnel manager working in another agency

18   looking at this, what would know they know about the reason

19   for her dismissal or removal?

20   A    They wouldn't know.

21   Q    Is there a code for furloughs?

22   A    Yes.

23   Q    What is that code?

24   A    002300.  That's on page three.

25   Q    And tell me what reasons are indicated there.

19

Polek - Direct

1    A    Lack of work, lack of funds, other operational reasons,

2    transaction process initiated late.

3    Q    The fact that she -- you indicated before that other

4    operational reasons would include reorganization?

5    A    Correct.

6    Q    So the code for a furlough due to reorganization would

7    be 002300 with the alpha code OOR; is that correct?

8    A    Yes.

9    Q    If somebody was not satisfied that it was just other

10   operational reasons, would you count the removal of a

11   position as also lack of work?

12   A    Yes.

13   Q    So what is the alpha code for lack of work under

14   furlough?

15   A    BJ.

16   Q    So the proper code for that would be numeric code

17   002300 for furlough and alpha code BJ for lack of work?

18   A    Yes.

19   Q    Under the Personnel Rules, is there a transaction for

20   let's say a resignation in lieu of being furloughed?

21   A    I believe there is.

22   Q    I refer you to page two.

23   A    Voluntary resignation in lieu of furlough.

24   Q    What is the numeric and alpha code for that?

25   A    002100, BC.

20

Polek - Direct

1    Q    To your knowledge, was Ms. Wilhelm given an opportunity

2    to resign in lieu of furlough?

3    A    Not that I am aware of.

4    Q    Based on your experience in transactions, would you

5    want your personnel record to say that you were furloughed or

6    dismissed?

7    A    Furloughed.

8    Q    Why is that?

9    A    Because naturally, you would be looked unfavorably upon

10   if you were dismissed.

11   Q    And that is how other personnel managers hiring

12   managers within the State of Pennsylvania would regard that?

13   A    Probably, yes.

14   Q    At the time that you -- excuse me.  At the time that

15   you completed the transaction codes for Ms. Wilhelm's

16   personnel record, you knew that other personnel managers

17   throughout the Commonwealth would not regard dismissal

18   favorably?

19   A    Correct.

20   Q    And you knew that they would regard furlough favorably?

21   A    Correct.

22   Q    Or at least neutral?

23   A    Yes.

24   Q    If I were looking at -- I'm not an expert in

25   transaction codes.  Would the average person who looks at a

21

Polek - Direct

1    transaction code know what the transaction codes mean?

2              MS. FORNEY:  I object, Your Honor.

3              THE COURT:  I don't know how she would have the

4    expertise to know that.  Sustain the objection.

5    BY MR. PRINGLE:

6    Q    How would someone know what the meaning of the

7    transaction codes are?

8    A    If they were a transactional person, they would have

9    copies of the definition.

10   Q    How would someone know how other personnel managers

11   would regard those transaction codes?

12             THE COURT:  You are asking her to get into the

13   minds of other people.

14             MR. PRINGLE:  No, Your Honor.  I am asking her on

15   what basis would anyone know the meaning of the various

16   transaction codes.  I am asking how would you acquire

17   expertise in the area of transaction codes.

18             THE COURT:  I think she just said they would have

19   a copy of the transaction codes.

20   BY MR. PRINGLE:

21   Q    What I am asking her is whether or not merely looking

22   at the definition in a transaction codes would give her

23   information -- would give the average person information as

24   to how other personnel managers regard those transaction

25   codes?

Polek - Cross

1    THE COURT:  I'm sorry.  You are asking how

2    somebody else is going to understand how somebody else is

3    going to look at them; is that what you are asking?

4    MR. PRINGLE:  No, Your Honor.

5    THE COURT:  It certainly sounds like it.

6    MR. PRINGLE:  I am asking her how someone who is

7    unfamiliar with transaction codes would know whether or

8    not -- whether someone who is unfamiliar with transaction

9    codes would be in a position to know whether or not another

10   personnel manager within the Pennsylvania system would know

11   how they would regard that transaction code.

12   THE COURT:  Sustain your objection.

13   MR. PRINGLE:  No further questions.

14   THE COURT:  Cross.

15                    CROSS EXAMINATION

16   BY MS. FORNEY:

17   Q    Ms. Polek, as part of your responsibilities for

18   transactions within the Human Resources Bureau of the State

19   Police, are you responsible for ensuring that appropriate

20   transaction coding is used to describe separations from the

21   State Police?

22   A    Yes, that's correct.

23   Q    In the particular instance of Ms. Wilhelm's dismissal,

24   did you advise anyone that the coding was inappropriate?

25   A    For dismissal code?

23

Polek - Cross

1   Q    That the use of the dismissal code was inappropriate?

2   A    No, I did not.

3   Q    Why is that?

4   A    Because the letter I was provided was for a dismissal

5   due to the reorganization.

6   Q    You did not advise the Personnel Director that perhaps

7   it should have been a furlough?

8   A    It would not be a furlough under the situation.

9   Q    Again, why is that?

10  A    Because Ms. Wilhelm is a noncivil service manager.

11  They are considered at will employes.  They do not have

12  placement furlough process rights.  Therefore, they cannot be

13  furloughed.

14  Q    In your experience with the State Police -- and you

15  outlined it as quite extensive -- have you ever been involved

16  in the furlough of an at will employe?

17  A    The first and only time we ever did a furlough was back

18  in 1991.  We did have one noncivil service management employe

19  that we did furlough, but the rules changed after the 1991

20  furlough process.

21  Q    In what way did they change?

22  A    Management employes could not bump back into union

23  level positions.  Therefore, they were at will employes and

24  were terminated because they do not have placement rights.

25  Q    Now Mr. Pringle referred you to your deposition.  I

24

Polek - Cross

1    will refer you to the page so you can have a look at it.  He

2    asked you the question whether or not the definition -- the

3    definition of furlough in the book was accurate.

4           And then he asked you does that accurately

5    describe what happened to Barbara, the furlough definition?

6    And your answer was yes.

7           Why did you not go on to explain the difference

8    between at will employes, union employes and civil servants?

9    A    I didn't think of it at the time of the deposition.

10   Q    You were shown Plaintiff Exhibit 61, which I believe

11   you identified as a personnel order describing separations

12   from the State Police.  Is that document in front of you?

13   A    Yes, that's correct.

14   Q    How frequently are personnel orders issued?

15   A    Monthly.

16   Q    Every month?

17   A    Yes.

18   Q    And over the course of the year, are there dismissals

19   from the State Police?

20   A    Yes, there are.

21   Q    They are reflected in personnel orders?

22   A    Yes, they are.

23           MS. FORNEY:  No other questions, Your Honor.

24           THE COURT:  Redirect?

25           MR. PRINGLE:  Yes, Your Honor.

25

Polek - Redirect

REDIRECT EXAMINATION

1

BY MR. PRINGLE:

2

Q    Ms. Polek, when we did the deposition, did I make it

3

clear to you that you could at any time clarify any --

4

THE COURT:  It was asked and answered.

5

BY MR. PRINGLE:

6

Q    I would like you to refer to Plaintiff Exhibit 65.  On

7

page four, again, I am referring to the definition of

8

furlough.  Is there anywhere in that definition where it says

9

that this does not apply to noncivil service employes?

10

A    Noncivil service management?

11

Q    Yes.

12

A    No, it does not.

13

Q    Is there anywhere in this entire document where it says

14

that definition does not apply to noncivil service management

15

employes?

16

A    No, it does not.

17

MR. PRINGLE:  No further questions.

18

THE COURT:  Recross?

19

MS. FORNEY:  No other questions, Your Honor.

20

THE COURT:  You may step down.

21

(Whereupon, the testimony of Ms. Polek was

22

concluded.)

23

24

25

26

1          I hereby certify that the proceedings and evidence

2    are contained fully and accurately in the notes taken by me

3    on the trial of the above cause, and that this copy is a

4    correct transcript of the same.

5

6                                    _____

7                                    Vicki L. Fox, RMR

8                                    Official Reporter

9

10         The foregoing certification of this transcript

11   does not apply to any reproduction by any means unless under

12   the direct control and/or supervision of the certifying

13   reporter.

14

15

16

17

18

19

20

21

22

23

24

25