IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
BARBARA WILHELM,              :
          Plaintiff           :
                              :
               v.             :  01-CV-1057
COMMONWEALTH OF PA, et al.,   :
          Defendants          :
```

**FILED**
**HARRISBURG, PA**

JAN 0 8 2003

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

TRANSCRIPT OF PROCEEDINGS

JURY TRIAL

TESTIMONY OF LINDA BONNEY

BEFORE:   HON. SYLVIA H. RAMBO, Judge

DATE:     September 10, 2002

PLACE:    Courtroom Number Three
          Federal Building
          Harrisburg, Pennsylvania

COUNSEL PRESENT:
NATHAN C. PRINGLE, JR., Esquire
     For - Plaintiff

SUSAN J. FORNEY, Esquire
     For - Defendants

Vicki L. Fox, RMR
Official Reporter

2

I N D E X

|   | Direct | Cross | Redirect | Recross |
|---|--------|-------|----------|---------|
| **Defendant's Witnesses** | | | | |
| 3.  Linda Bonney | | | | |
| By Ms. Forney | 4 | -- | -- | -- |
| By Mr. Pringle | -- | 15 | -- | -- |

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

E X H I B I T S

| Plaintiff Exhibit | Introduced | Admitted |
|---|---|---|
| 60.  Headquarter Vacancies. | 20 | -- |

4

Bonney - Direct

1        MS. FORNEY:  The defendants call Linda Bonney,

2    Your Honor.

3

4        LINDA BONNEY, called as a witness, being duly

5    sworn, testified as follows:

6

7        THE CLERK:  Would you state your name for the

8    record?

9    A    Linda M. Bonney.

10       THE CLERK:  Thank you.

11                    DIRECT EXAMINATION

12   BY MS. FORNEY:

13   Q    Ms. Bonney, are you currently employed?

14   A    Yes, I am.

15   Q    What is your job?

16   A    I am the Director of the Bureau of Human Resources for

17   the Pennsylvania State Police.

18   Q    How long have you been in that position?

19   A    I have been the Director since October of 1998.

20   Q    Before you became Director, were you employed within

21   the Bureau of Human Resources?

22   A    Yes.  I was Acting Director from July until October.

23   And prior to that, I was a Director of the Personnel

24   Management Division for the Pennsylvania State Police and

25   held that position since 1987.

5

Bonney - Direct

1  Q      And before that, were you also employed in the Bureau

2  of Human Resources?

3  A      Yes.

4  Q      What job did you have then?

5  A      I started as a Personnel Analyst 2 and then was

6  reclassified to a Personnel Analyst 3.  And I was hired by

7  the Pennsylvania State Police in January of 1986.

8  Q      What are your responsibilities as the Director of the

9  Bureau of Human Resources?

10  A      I oversee the personnel functions for the State Police

11  which includes implementation of policy, hiring,

12  classifications, labor relations, everything to do with human

13  resources and personnel.

14  Q      Would that include ensuring that employment actions are

15  properly carried out?

16  A      Yes.

17  Q      I direct your attention to the spring of the year

18  2000.  At that time, did you become aware that the

19  Legislative Affairs Office was to be reorganized?

20  A      Yes.  My supervisor, who was then Lieutenant Colonel

21  Coury, called me into his office and let me know that the

22  office was being reorganized, and that Ms. Wilhelm's position

23  was being abolished.

24  Q      Did he provide you with any instructions when he

25  informed you of the reorganization?

6

Bonney - Direct

1    A    I remember there was some discussion about the process

2    for effecting this.  And one of the things that was discussed

3    was to review current vacant positions to see if anything was

4    appropriate to offer Ms. Wilhelm.

5    Q    And what did you do after your conversation with

6    Lieutenant Colonel Coury?

7    A    When I returned to my office, I spoke to Rose Polek,

8    who is in charge of the division that does the hiring and

9    complement control, etcetera and had her review the current

10   vacant positions.

11   Q    What positions were you reviewing?

12   A    Ms. Wilhelm's current pay range was a pay range eight.

13   She was non Civil Service.  And so we needed to review

14   appropriate positions for her skills, pay range, and they had

15   to be non Civil Service positions because at the time she was

16   not Civil Service classified.

17   Q    Now are you familiar with the term employe at will?

18   A    Yes.

19   Q    What does that mean?

20   A    Employe at will means that the employe has -- is not

21   contract covered, does not have Civil Service coverage and

22   basically serves at the will of the agency head.

23   Q    Was Ms. Wilhelm an employe at will?

24   A    Yes.

25   Q    Why was it then that you were reviewing possible

7

Bonney - Direct

1  vacancies for her?

2  A    Since her position -- her responsibilities were being

3  abolished or absorbed by other positions, we -- the only

4  option would be either to find her another appropriate

5  position or dismiss her.  And so the first thing to do would

6  be to find if there was another position that she could be

7  offered.

8  Q    And did you find another position that she could be

9  offered?

10  A    No, we did not.  Most of the positions that were

11  available were clerical or dispatcher positions.  We call

12  them Police communications operator or Civil Service

13  positions.  The pay range seven, eight, nine positions that

14  were available were all Civil Service.

15  Q    What did you do after you discovered there were no

16  available vacancies?

17  A    Proceeded to effect the dismissal, which meant that we

18  got an effective date, prepared the letter and then presented

19  Ms. Wilhelm with the letter.

20  Q    Who prepared the letter?

21  A    My staff with my authoring the letter.

22  Q    I believe there is a document identified as Plaintiff

23  Exhibit 59 on the desk.  Could you locate that, please?

24  A    (Witness complies.)  Yes, I have it.

25  Q    Is this the letter that you authored?

8

Bonney - Direct

1   A     It is.

2   Q     Now I notice that the second paragraph states this

3   dismissal action is necessitated due to the reorganization of

4   the Legislative Affairs Office.

5         Why did you characterize this separation as a

6   dismissal rather than as a furlough?

7   A     I wanted to make it clear in the dismissal letter that

8   this was not a for cause dismissal, but due to

9   reorganization.  Since the term dismissal was used, I wanted

10  to make that clear.

11  Q     I think my question was probably not clear.  Why did

12  you call it a dismissal instead of a furlough under those

13  circumstances?

14  A     Furlough in my experience --

15        MR. PRINGLE:  Objection, Your Honor.  She hasn't

16  established she has any expertise in this area.

17        THE COURT:  She was the Director of Personnel at

18  one point in time.

19        MR. PRINGLE:  Your Honor, may we approach the

20  bench at sidebar?

21        (The following discussion was had at sidebar:)

22        MR. PRINGLE:  Your Honor, during the deposition

23  she specifically said she had no expertise in this area.  Her

24  expert was Rose Polek.  She deferred to Rose Polek.

25        MS. FORNEY:  Your Honor, she is the Personnel

9

Bonney - Direct

1    Director.  She said she was responsible for ensuring that

2    these matters were properly carried out.  She is the person

3    who wrote the letter.  So I am asking her why she chose this

4    language as opposed to other language.

5            MR. PRINGLE:  She is describing -- her testimony

6    is beginning to describe furlough versus dismissal.  She

7    specifically testified during the deposition that she does

8    not have knowledge in this area, that she is not a

9    transaction person, that she defers to the expert of 30 years

10   Rose Polek.

11           THE COURT:  How do you handle that?

12           MS. FORNEY:  I think that it is grounds for

13   cross-examination.

14           THE COURT:  If she is being asked to state her

15   expertise on the difference between furlough and dismissal,

16   and she said that she is not --

17           MS. FORNEY:  But my -- excuse me.

18           THE COURT:  She can certainly without -- I don't

19   know how you can do this.  She used the word -- her staff

20   used the word that she only presented the letter.  That is

21   the problem.  She didn't even use the word her staff did.

22   She said her staff prepared the letter.

23           MS. FORNEY:  She said she authored the letter.

24           THE COURT:  She signed it and gave it to her, but

25   she said her staff prepared it.

10

Bonney - Direct

1    MS. FORNEY:  My recollection is a little

2  different.  She said she did it with her staff with her

3  authoring it.

4    THE COURT:  Let's make it clear.  If in fact she

5  composed the letter, I will permit her to state why she used

6  that.  But if she is going to start telling what the policy

7  is, I don't know.  I am a little concerned with her absolute

8  declaration that she is not an expert in this area.  It

9  bothers me a little bit.

10    Let's get it clarified as to who wrote the

11  letter.

12    (End of discussion at sidebar.)

13  BY MS. FORNEY:

14  Q    Ms. Bonney, did you write Plaintiff Exhibit 59?

15  A    Yes.

16  Q    Why did you use the term dismissal as opposed to the

17  term furlough in this letter?

18  A    Furlough --

19    MR. PRINGLE:  Objection, Your Honor.

20    THE COURT:  Have her say why she used it.  She

21  certainly can explain why she used that as opposed to any

22  other.  Why did you use that word?

23  A    In my experience, furlough is used for a contract

24  covered or Civil Service employe who has return rights to a

25  position.  I'm only aware of one furlough that happened that

11

Bonney - Direct

1    happened through the Office of Administration, and complement

2    was reduced.  And that was back in 1991.

3            Also when I went back to talk to my transactions

4    in employment person Rose Polek --

5            THE COURT:  Just a moment now.  She is getting

6    hearsay?

7    A    Okay.

8            THE COURT:  She said when she went back to talk to

9    Rose Polek.  I don't want her to testify to what Polek told

10   her?

11   A    Okay.

12   BY MS. FORNEY:

13   Q    When you spoke with the Lieutenant Colonel Coury --

14   strike that.  Why did you describe the reason for dismissal

15   as reorganization of the Legislative Affairs Office?

16   A    When I met with Colonel Coury, he told me --

17           MR. PRINGLE:  Objection, Your Honor.

18           THE COURT:  It goes to her mental state as to why

19   she used that word, whether it is true or not.  Overrule the

20   objection.

21   A    I was told that the office was being reorganized and

22   that Ms. Wilhelm's position was being abolished.  And that is

23   what I put in the letter reorganization as opposed to for

24   cause dismissal.

25

12

Bonney - Direct

BY MS. FORNEY:

Q     How was the dismissal carried out, Ms. Bonney?

A     Ms. Wilhelm reported to my office, and I served her with the dismissal letter.

Q     Is it the practice of the State Police to give employes advance notice of dismissals?

A     No.

Q     Why is that?

A     It is not a comfortable situation when someone is dismissed.  And our practice is to let them know that they are being dismissed at the close of business of the day that they are served with the dismissal letter.  And for the most part, people leave immediately.

Q     Did you offer -- at the time you provided her with the dismissal letter, did you offer her the opportunity to resign instead of being dismissed?

A     No.

Q     Why is that?

A     I can't answer that beyond saying that it didn't come up.  And I don't remember Ms. Wilhelm asking if she could resign.  Beyond that, I can't answer.

Q     Would you locate in the exhibits before you Plaintiff Exhibit 15, please?

A     Yes, I have it.

Q     This is a memorandum dated April 7, 1999?

13

Bonney - Direct

1    A    Yes.

2    Q    To you from Major Richard D. A. Morris?

3    A    Correct.

4    Q    And attached to this memorandum is a job description

5    for a Clerk Typist 2?

6    A    Correct.

7    Q    Now are you aware of this position being approved for

8    the Legislative Affairs Office at this time?

9    A    Not in 1999, no.

10   Q    When was a clerical position approved for the

11   Legislative Affairs Office?

12   A    That was part of the reorganization.  The position

13   occupied by Ms. Wilhelm was reallocated to a clerical

14   position.

15   Q    Are you familiar with the term complement?

16           THE COURT:  I'm sorry.  I can't hear you.

17           MS. FORNEY:  I asked is she familiar with the term

18   complement?

19   A    Yes.

20   BY MS. FORNEY:

21   Q    Can you briefly tell me what is complement?

22   A    Complement in the Commonwealth is the number of

23   employes that you are permitted to have by the Governor's

24   jurisdiction.  Every agency under the Governor's jurisdiction

25   has a maximum complement which they can fill.

14

Bonney - Direct

1      In the State Police, currently it is 4545 Troopers

2  and it is I believe 1624 civilians.

3  Q      How does complement affect the State Police's ability

4  to add positions to a particular work unit within the

5  Department?

6  A      If a work unit is going to have a position added to

7  them, the only way to do that is to borrow or take a position

8  from another unit in the agency.

9  Q      What happened when the Legislative Affairs Office was

10  reorganized?

11  A      The position that was occupied by Ms. Wilhelm was

12  reallocated to a clerical position.  That clerical position

13  was posted and filled with a Clerk Typist 2.

14  Q      Now in the course of your employment with the Human

15  Resources Bureau, have you had occasion to hire people?

16  A      Yes.

17  Q      And have you had occasion to hire people who have been

18  dismissed from other jobs?

19  A      Yes.

20  Q      And I take it then that the fact the individual had

21  been dismissed did not automatically disqualify them in your

22  mind from being hired?

23  A      No.  When we hire civilians or enlisted, a background

24  is always done on those individuals.  That includes their

25  employment history among other things.  The last step of the

15

Bonney - Cross

1    background review for civilians is my review.

2            I can specifically recall people who have been

3    dismissed at various points in their career for cause who

4    have subsequently been approved for hire by us and hired.

5    Some people have lost jobs due to their positions being done

6    away with it because the company was in trouble, or they went

7    out of business, or they have been fired.

8            It depends on the circumstances of that dismissal,

9    how long it was and a number of things.  But per se, the fact

10   that someone has been dismissed is not an automatic

11   disqualifier for employment.

12   Q    How do you find out about the circumstances surrounding

13   their dismissal?

14   A    In the background investigation, the investigator will

15   go out and talk to or telephone the supervisors or the

16   company that the person worked for and inquire as to the

17   circumstances.

18            MS. FORNEY:  No further questions, Your Honor.

19            THE COURT:  Cross-examine.

20                      CROSS EXAMINATION

21   BY MR. PRINGLE:

22   Q    Isn't it true that your totally dependent on Ms. Polek

23   to make recommendations regarding transactions and

24   transaction codes?

25   A    As far as transaction codes, that is correct.  She is

16

Bonney - Cross

1    the specialist.

2    Q    Isn't she the specialist on transactions?

3    A    Yes.

4    Q    Period?

5    A    Yes.

6    Q    And isn't it true that you haven't done any work on

7    transactions?

8    A    That's correct.  My experience in transactions is

9    basically what I have learned through my current job.

10   Q    So if there is a question about transactions or

11   transactions codes, the person to talk to is Rose Polek?

12   A    That's correct.

13   Q    When did Colonel Coury talk to you?

14   A    I really don't remember what the date was.  I can't

15   even put it in perspective.  It wasn't very long before the

16   dismissal, but I can't remember when.

17   Q    You don't know whether it was March or April?

18   A    No, I do not.

19   Q    Could it have been in March?

20   A    I really don't remember.  It could have been.  I do not

21   remember.

22   Q    If I wanted to find out what the current complement is

23   within the State Police, who would I go to?

24   A    Rose Polek.

25   Q    When Colonel Coury came to you, to your knowledge had

17

Bonney - Cross

1   he gone to Rose Polek before he talked to you?

2   A      I don't know.

3   Q      What was Rose Polek informed at the time Ms. Wilhelm

4   was being dismissed?

5            THE COURT:  How would she know what Rose was

6   told?

7            MR. PRINGLE:  Rose works for her.

8            THE COURT:  That would be from hearsay unless she

9   was present at the time.

10  BY MR. PRINGLE:

11  Q      Did you tell Rose Polek that Ms. Wilhelm was being

12  dismissed?

13  A      Yes, I did.

14  Q      When did you tell her?

15  A      The same day that I talked to Lieutenant Colonel

16  Coury.  It would have been right after that meeting, but I

17  don't remember what day that was.

18  Q      He tells you that the position is being abolished, and

19  then you went to Rose Polek to inform her that the position

20  was being abolished.  And what did you ask her to do?

21  A      I asked her to take a look and see what the vacancies

22  were.

23  Q      What did she report to you regarding vacancies?

24  A      One of the positions I asked, first of all, was there

25  an intelligence analyst position because that was the

18

Bonney - Cross

1    position that Ms. Wilhelm transferred from when she went into

2    the Legislative Affairs Office.  There were no vacancies at

3    that time.

4              And so then I had her pull up a list of vacancies

5    for all the civilian vacancies.

6    Q     How many vacancies were there?

7    A     I don't remember.  I saw an exhibit.  I think there

8    were -- for management type positions, there might have been

9    six or seven.

10   Q     So she reported back to you what about the vacancies?

11   What did she report to you?

12   A     She reported the specific vacancies, whether they were

13   Civil Service or not Civil Service and what the pay range

14   was.

15   Q     Harmony Ranck was the clerk who was hired for the

16   Legislative Affairs Office?

17   A     That's correct.

18   Q     That is Civil Service or non Civil Service?

19   A     Non Civil Service.

20   Q     Can you make a Civil Service position non Civil Service

21   within your complement?

22   A     You would have to change the classification.  Certain

23   positions -- they are pretty well designed Civil Service or

24   non Civil Service by classification and by whether the agency

25   is a Civil Service agency or non Civil Service agency.

19

Bonney - Cross

1      We are a non Civil Service agency.  However, there

2  are certain positions which are Civil Service regardless of

3  whether you are a non Civil Service or a Civil Service

4  agency.  For example, Human Resources analysts, management

5  analysts, all of the technology positions, the IT positions,

6  they are all Civil Service.  The forensic scientist positions

7  are all Civil Service.

8  Q    If you have, for example, a Civil Service position in

9  technology and you wanted to -- you needed a clerical person,

10  could you convert that Civil Service position in the

11  Technology Department into a non Civil Service position in

12  another department?

13  A    You can reallocate a vacancy, yes, to another position,

14  that's correct.

15  Q    When Ms. Polek came back to you and reported as to how

16  many vacancies there were, Civil Service and non Civil

17  Service, what did you do with that information?

18  A    I reviewed it.  I don't remember specifically whether

19  at that point I went back to Lieutenant Colonel Coury and let

20  him know.  I am sure at some point I let him know there were

21  no appropriate vacancies.

22          MR. PRINGLE:  May I approach the witness, Your

23  Honor?

24          THE COURT:  Yes.

25

20

Bonney - Cross

(Headquarter Vacancies was introduced as Plaintiff

Exhibit 60.)

BY MR. PRINGLE:

Q    I am showing you Plaintiff Exhibit 60.  Can you

identify what has been labeled Plaintiff Exhibit 60?

A    Yes.  This is a list of headquarters vacancies for

April and May of 2000.

Q    Do you know where that list came from?

A    That would have been provided to me by Rose Polek since

she is responsible for complement control and vacancies.

Q    So these would have been vacancies available during the

time that Ms. Wilhelm was dismissed?

A    Correct.

Q    You mentioned intelligence analyst.  Is that the title

of the class?

A    Yes.

Q    Were there any intelligence analyst positions available

around the time that Ms. Wilhelm was dismissed?

A    No.

Q    Were there intelligence analyst positions available

within six months after her dismissal?

A    I don't know that.  I know there have been intelligence

analysts hired since Ms. Wilhelm was dismissed.  I can't put

it in the time frame.

Q    Do you remember that Captain Simmers' daughter was

21

Bonney - Cross

1   hired as an intelligence analyst?

2   A    Yes, I do.

3   Q    Do you remember that Captain Simmers' daughter was

4   hired as an intelligence analyst within six months of Ms.

5   Wilhelm's dismissal?

6   A    I don't remember the time frame that she was hired so I

7   can't answer that.  It is possible.

8            MR. PRINGLE:  May I approach the witness, Your

9   Honor?

10           THE COURT:  Yes.

11  BY MR. PRINGLE:

12  Q    Do you remember being deposed with me taking your

13  deposition?

14  A    Yes, I do.

15  Q    Do you remember when we took deposition?

16  A    The date?

17  Q    Yes.

18  A    No.

19  Q    If I showed you a transcript, would that refresh your

20  recollection?

21  A    Yes, it would.

22  Q    I am showing you a transcript.

23  A    Yes.

24  Q    Does that refresh your recollection?

25  A    Of the date?

22

Bonney - Cross

1   Q     Of the deposition.

2   A     Yes.

3   Q     When was that?

4   A     According to that, January 30, 2002.

5   Q     January 30, 2002?

6   A     Correct.

7   Q     Do you remember -- do you remember me asking you

8   questions about the hiring of Captain Simmers' daughter?

9   A     Yes.

10          THE COURT:  May we have the page?

11          MR. PRINGLE:  I am sorry, page 66.

12  BY MR. PRINGLE:

13  Q     Do you remember telling me that it was probably a year?

14          THE COURT:  Wait.  The proper way is to read the

15  question and then read the answer.  You can read the question

16  and have her read the answer.

17  BY MR. PRINGLE:

18  Q     Do you remember me asking you when the vacancy was

19  available for filled?

20          THE COURT:  Read the precise question.

21          MS. FORNEY:  Counsel, what page are you on?

22          MR. PRINGLE:  Page 66.

23  BY MR. PRINGLE:

24  Q     (reading):

25          QUESTION:  When was the vacancy available or

23

Bonney - Cross

1    filled; when was it?

2            ANSWER:  There had been a few filled.  I know

3    we -- I'm pretty sure we filled just one not too long ago,

4    but there have been several as we have expanded that unit.

5            QUESTION:  Can you tell me who got that position

6     -- those positions?

7            ANSWER:  There was -- I don't know the name --

8    there was guy who came over from -- who had been an

9    intelligence specialist with the service who work at the Gap

10   who took a position and worked with us.  I know that Captain

11   Simmers' daughter -- and I can't remember her first name --

12   took a position as an intelligence analyst.  She worked an

13   internship.  And upon finishing her master's, I guess she is

14   working part-time on a Ph.D. and was interested and was hired

15   for a position.

16           QUESTION:  When was that?

17           ANSWER:  I'm not sure.  I can find out for you,

18   but I don't have the date.  It's been probably a year, maybe

19   even a year and a half. (end of reading)

20           Do you remember that?

21   A     Yes.

22   Q     Would you say that that is still accurate?

23   A     Yeah, as I presented it.  It wasn't -- I wasn't exactly

24   sure then, and I am not sure now exactly when it was that she

25   was hired.  I am guessing a year, a year and a half.  I'm not

24

Bonney - Cross

1   sure.

2   Q      From the date of the deposition?

3   A      Yes.

4   Q      Thank you.  When was the position for Harmony Ranck

5   posted?

6   A      I would have to look at the posting.  I don't remember

7   the date.  It was posted shortly after Ms. Wilhelm.

8   Q      Do you remember how long it took to fill that position?

9   A      No, I do not.  It wasn't a very long period of time.

10  It was posted, and people -- a number of people were

11  interviewed, and she was hired.  But I don't remember exactly

12  how long.

13  Q      Possibly mid June?

14  A      That's possible.

15  Q      Does that sound right to you?

16  A      Yes.

17              MR. PRINGLE:  No further questions.

18              THE COURT:  Redirect?

19              MS. FORNEY:  No, Your Honor.

20              THE COURT:  You may step down.  Thank you.

21              (Whereupon, the testimony of Linda Bonney was

22  concluded.)

23

24

25

25

1          I hereby certify that the proceedings and evidence

2     are contained fully and accurately in the notes taken by me

3     on the trial of the above cause, and that this copy is a

4     correct transcript of the same.

5

6                                    _____

7                                    Vicki L. Fox, RMR

8                                    Official Reporter

9

10         The foregoing certification of this transcript

11    does not apply to any reproduction by any means unless under

12    the direct control and/or supervision of the certifying

13    reporter.

14

15

16

17

18

19

20

21

22

23

24

25