# NATHAN C. PRINGLE, JR.

### ATTORNEY AT LAW

1936 LAUREL GLEN DRIVE
HARRISBURG, PENNSYLVANIA  17110
(717) 671-6920

Mobile (717) 579-2433
Fax (717) 541-0621
E-mail: npringle@ezonline.com

June 30, 2003

Sylvia H Rambo
U.S. District Court Judge
Middle District of Pennsylvania
228 Walnut Street
P.O. Box 983
Harrisburg, PA 17108

**FILED**
**HARRISBURG, PA**

JUN 3 0 2003

MARY E. D'ANDREA, CLERK
Per_____

Re: *Wilhelm v. Pennsylvania State Police*,
     No.: 1: CV-01-1057

Dear Judge Rambo:

Enclosed is another copy of the Reply Memorandum in Support of Plaintiff's Petition for Attorneys Fees and Costs filed on June 27, 2003. My assistant was not available to me when I was completing the memorandum that was filed on June 27, 2003. After further review, I discovered it was difficult to read. Please accept the enclosed memorandum. A table of contents was added, a statement of conclusion was added, captions were aligned differently, and an "s" was added to the word "cost" in the last caption. There are no substantive differences between the two documents.

Sincerely,

Nathan C. Pringle, Jr.

Enclosure
cc: Susan J. Forney, Esquire

2 TO G

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BARBARA A. WILHELM,                  :
      **Plaintiff**                     :
                                  :
      **v.**                             :     NO. 1:CV-01-1057
                                    :
**COMMONWEALTH OF PA.;**             :     **(JUDGE RAMBO)**
**PENNSYLVANIA STATE POLICE;**       :
**COLONEL PAUL J. EVANKO,**          :
**COMMISSIONER; LIEUTENANT**         :
**COLONEL THOMAS K. COURY; and**     :
**CAPTAIN MICHAEL. D. SIMMERS,**     :
      **Defendants**                    :

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S PETITION FOR ATTORNEY'S FEES AND COSTS

FILED
HARRISBURG, PA

JUN 3 0 2003

MARY E. D'ANDREA, CLERK
Per _____

Respectfully submitted

Nathan C. Pringle, Jr.
Attorney I.D. No. 30142
3601 N. Progress Avenue
Suite 200
Harrisburg, Pennsylvania 17110
Counsel for Plaintiff

# ARGUMENT

In a statutory fee case, the party opposing the fee award has the burden to challenge, with sufficient specificity to give the fee applicants notice, the reasonableness of the requested fee. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3rd Cir. 1990). The district court may not decrease a fee based on factors not raised at all by the adverse party. *Rode*, 892 F.2d at 1183. Accordingly, plaintiff will address defendants challenges as specified the defendants' memorandum.

## I. THE DEFENDANTS CHALLENGE ENTRIES FOR 6/5/01-6/9/01, 6/11/01-6/13/01, AND 12/21/00 RELATED TO RESEARCHING AND DRAFTING THE COMPLAINT.

The plaintiff does contend that this case presented any novel or complex legal issues. Nevertheless the case was complex because of its factual elements. At the outset, the plaintiff presented counsel with allegations of discrimination and retaliation, among other claims, involving events stretching over a two year span. She alleged she complained about a series of discriminatory acts which occurred from mid 1998 through May 2000. With only the plaintiff as a witness, who would be seen as self-serving by a jury, in order to draft a complaint with a credible, provable cause of action counsel needed corroborating evidence sufficient to persuade a jury that she was injured. The major problem is that a jury would hear her

# **TABLE OF CONTENTS**

PAGE

TABLE OF CITATIONS                                                    iii

ARGUMENT

    I.    THE DEFENDANTS CHALLENGE ENTRIES    1
    FOR 6/5/01- 6/9/01, 6/11/01-6/13/01, AND
    12/21/00 RELATED TO RESEARCHING AND
    DRAFTING THE COMPLAINT.

    II.    THE DEFENDANTS CHALLENGE ENTRIES    3
    FOR 4/6/02, 4/10/02, 4/11/02, 4/18/02, 4/19/02,
    5/6/02, 5/11/02, 6/7/02, 6/15/02, 7/1/02, 7/17/02,
    8/28/02, 10/04/02, 10/30/02, AND 11/14/02
    RELATED TO RESEARCH.

    III.    THE DEFENDANTS CHALLENGE ENTRIES    5
    FOR THE DEPOSITIONS OF PLAINTIFF,
    MAJOR MORRIS, COLONEL EVANKO
    CAPATIN SIMMERS AND ROSE POLEK.

    IV.    THE DEFENDANTS CHALLENGE ENTRIES FOR    10
    TRIAL PREPARATION.

    V.    THE DEFENDANTS CHALLENGE ENTRIES FOR    11
    9/5/01, 2/2/02, 2/13/02, 2/16/02, 2/20/02, 3/10/02,
    4/5/02, 4/7/02, 4/8/02, 4/9/02, 4/12/02, 5/3/02, 11/26/02,
    11/27/02, 11/29/02, 11/30/02, 1/10/03, 1/24/03, 1/25/03
    RELATING TO REVIEWING TRANSCRIPTS AND
    DOCUMENTS.

    VI.    THE DEFENDANTS CHALLENGE ENTRIES FOR    12
    JANUARY HEARING PREPARATION.

VII.    THE DEFENDANTS CHALLENGE COUNSEL'S          13
        HOURLY RATE.

VIII.   THE LODESTAR SHOULD NOT BE REDUCED.         16

XI.     PLAINTIFF SEEKS REIMBURSEMENT OF COSTS      20
        PURSUANT TO 42 U.S.C. §2000E-5(k).

CONCLUSION                                          21

ii

# TABLE OF CITATIONS

                                                              PAGE

## CASES

*Blum v. Stenson,*                                              13
465 U.S. 866, 895 (1984)

*Hensley v. Eckerthart,*                                      17, 18
461 U.S. 424 (1983)

*Lindy Bros. Builders, Inc. of Phila. v. American Radiator*    3
*& Stanatory Corp.,*
487 F.2d 161, 167 (3d Cir. 1973)

*Rode v. Dellarciprete,*                                      1, 3, 4
892 F.2d 1177, 1183 (3rd Cir. 1990)

## STATUTE

**42 U.S.C. §2000e-5(k)**                                        20

iii

testimony countered by the State Police Commissioner, a former Deputy Commissioner, Bureau Directors and assorted officers. Therefore, research was less about novel legal issues as it was about strengthening her credibility. In support of her claim, the plaintiff only had her word, her conviction, and several boxes full of documents. In addition to reviewing her documentation detailing each action or event she believed was relevant, all of the policies, rules and regulations governing employee relations for employees of Commonwealth of Pennsylvania agencies had to be reviewed and analyzed to determine which of her claims was valid, and supportable by evidence. Likewise the policies, field regulations and administrative regulations of the State Police related to employee relations had to be reviewed and analyzed to determine their applicability and relevance to the case. This involved reading and analyzing over a thousand of pages of documents. After reviewing the documents, an analysis had to be made as to which of plaintiff's claims could be proved to a jury. It took a little over three days[1] to review the documentation provided by plaintiff, research all the relevant state-wide policies, rules and regulations, research all relevant State Police policies, rules and regulations, and research the applicable law.

---

[1] Plaintiff's counsel did not have he luxury of working eight hours days and going home. Most days were 12-hour days. Throughout this memorandum references to work days means 12-hour days.

It took less than two days to draft the complaint such that it incorporated all the information researched, and set forth a viable cause of action. Contrary to defendants' claim, the product does not always reflect the degree of preparation. In this case the degree of preparation was extensive and detailed because Ms. Wilhelm's career, reputation, and credibility were at stake, and at the start she was her sole supporter.

## II. THE DEFENDANTS CHALLENGE ENTRIES FOR 4/6/02, 4/10/02, 4/11/02, 4/18/02, 4/19/02, 5/6/02, 5/11/02, 6/7/02, 6/15/02, 7/1/02, 7/17/02, 8/28/02, 10/04/02, 10/30/02, AND 11/14/02 RELATED TO RESEARCH.

It is odd that the defendants claim the term "research" is insufficient when defendants did the very same thing when they petitioned for attorney's fees. This description on activity was accepted by the court on the defendants' petition and should be accepted for the plaintiff. Moreover, citing *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Stanatory Corp.*, 487 F.2d 161, 167 (3d Cir. 1973), in *Rode,* the court reiterated that a fee petition should include fairly definite information as to hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys; but noted that it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of the attorney.

*Rode*, 892 F.2d at 1190. The further held that the reports submitted by counsel were sufficient where "miscellaneous research" was one of the descriptions used. *Rode*, 892 F.2d 1191 n.13.

As for the jury research, poor jury selection will nullify all pretrial. Unfortunately, Ms. Wilhelm did not have the money to hire an expert in jury selection. Counsel had to be her expert. Accordingly twelve hours were spent reviewing books and articles on the latest research on jury selection. This amounted to one day on the complex subject. Defendants agree three of those hours were well spent. Plaintiff's counsel needed the additional nine hours to thoroughly review, understand and utilize the latest research. Plaintiff believes the verdict justifies the time spent.

While more detail is not required, plaintiff will provide more detail here: Research for plaintiff's motion and brief for summary judgment-4/6/02, 4/10/02, 4/11/02; 4/18/02, 4/19/02; Research for plaintiff's brief in opposition to plaintiff's motion and brief for summary judgment-5/6/02, 5/11/02;Research for brief in opposition to defendants motion in limine-6/7/02, 6/17/02; Research on court order, and pretrial memorandum-7/1/02, 7/17/02; Research on jury selection-8/28/02; Research for equity hearing-10/04/02; Research on defendants' motion for reconsideration-10/30/02;

Research for plaintiff's brief in opposition to defendants' motion for reconsideration-11/14/02.

## III. THE DEFENDANTS CHALLENGE ENTRIES FOR THE DEPOSITIONS OF PLAINTIFF, MAJOR MORRIS, COLONEL EVANKO CAPATIN SIMMERS AND ROSE POLEK.

Defendants are only specific about preparation time for five depositions.[2] Without more specificity as to why each of the five was excessive, it is difficult to respond. They are addressed here because they were at least identified as challenges with some specificity. The sweeping challenges to all depositions does meet the standard articulated in *Rode*, and plaintiff can only respond in general terms.

Generally, in order to properly assess the reasonableness of the hours spent on depositions, it is important to note that plaintiff had only one attorney working on this case. Given the volume of material, counsel had to ensure that every pertinent detail was found and scrutinized. By necessity the review was slow. In addition, defendants responded to requests for the production of documents over a period of time. See Exhibit A attached hereto. Therefore, as new documents were supplied, they had to be assessed and compared with documents received earlier. Repeated reviews of the

---

[2] The 60.7 hours claimed by plaintiff for the actual 49.1 of deposition testimony includes an average of one half hour before or after the deposition reviewing events with plaintiff. On January 7, 2003, plaintiff's counsel deposed Gary Barach, defendants' expert on lost future earnings. The differences between the defendants' experts and plaintiff's expert were significant. Plaintiff's counsel spent all time before and after the deposition discussing his report with plaintiff.

same documents in the light of new information often disclosed critical evidence. As the theory of defendants' case became more apparent during discovery, documents had to be reassessed. Whatever redundancy resulted from this process was necessary to ensure no detail was overlooked. This process proved crucial to presenting evidence that the State Police intentionally delayed the investigation resulting from major Morris' complaint. Defendants contend 4.5 hours was enough to prepare for each of the twenty two depositions. This arbitrary claim has no basis in reality. It is not possible to adequately review the investigative report, the associated tapes and documents in 4.5hours. It is not possible to review the Commonwealth's personnel rules in 4.5 hours. It is not possible to review all of the records related to Captain Simmers' leave in 4.5 hours. It is not possible to review the State Police regulations in 4.5 hours. Even if copious detailed notes are taken for each document, it is not possible to catch every critical detail in one pass. Proper preparation demands the tedious task of repetitive review. Four hours may be enough when you have the resources of the Office of Attorney General and Pennsylvania State Police. The plaintiff did not.

One of the major disadvantages of preparing for a deposition taken by the defendants is that plaintiff's counsel has only a vague notion of what will

be explored. A poorly answered question would have caused collateral damage on summary judgment and trial. Thus, the only time saved in preparing for a deposition taken by opposing counsel is that not as many questions need be prepared in advance. In order to understand the impact of every question, a thorough knowledge of the facts and the documents is necessary. Major Morris and Ms. Wilhelm were first the people deposed. A misstep on the part of plaintiff's counsel during either deposition would prove fatal to the case.

Major Morris' involvement covered a period of January 1998 through January 2000. His testimony was key to substantiating Ms. Wilhelm's claims of discrimination and retaliation for the entire period. Counsel had to prepare for questions on Morris' relationship with Evanko and Simmers, his role in the process and review evaluation, the content of the process and review evaluation, and nature and scope of Ms. Wilhelm's duties. This required advance meetings with Major Morris and a review of the information learned from these meetings. It also required a review of the available documentation on policies and regulations to assess whether plaintiff's counsel's theories of the case held up against the facts as presented by Morris.   The investigation conducted in response to the complaint filed by Major Morris on behalf of Ms. Wilhelm included over

1500 pages of documents. That investigative report had to be examined thoroughly for consistency, or lack thereof, among the four people interviewed and the plaintiff's theory of the case. The report contained several statements regarding timeframes that were key to establishing a conspiracy. To assess the strength of the evidence against the State Police, an examination of the regulations and collective bargaining agreement was necessary to determine impact of delays on disciplinary actions. What was crucial was ensuring Morris was not confused about timeframes or events occurring two years prior to the deposition. Plaintiff's counsel had review over 500 pages of documents.

The plaintiff's deposition was taken second. The focus of defendants' counsel's approach was unknown. Therefore the complaint, each of Ms. Wilhelm's recollections of events covering 1998, 1999 and 2000, her personnel record, plaintiff's response to defendants interrogatories and request for documents and Morris' testimony had to be studied; all of which had to be assessed in the context of applicable State Police regulations and administrative orders.

Evanko's deposition was focused on his relationship with Simmers, his knowledge of the investigation and the applicability of the department's rules. It was reasonable to expect that the State Police Commission, a

defendant, was intelligent, an experienced witness, and hostile. Adequate preparation was critical. Counsel reviewed the department's rules on conduct for civilians, the rules for troopers, the collective bargaining agreement, the sexual harassment investigation report on Simmers, the process and review report, Morris' testimony, the investigation resulting from Morris' complaint, and the Commonwealth's personnel rules.

Preparing for Simmers' deposition was difficult. Among other things, there was a question as to whether Simmers had fraudulently received out of class pay on some days. Pages of leave records had to be compared with out of class pay records and other records of attendance. In addition the rules governing the proper recording of attendance and the collection of out of class pay had to be reviewed and analyzed. Also there was a question as to whether when Simmers and Jeffrey Miller served as Director of the Legislative Affairs Office. Also Simmers' was the lynchpin for plaintiff's claim that management resented her complaints of discrimination related to Simmers. Establishing his relationship with Evanko and Colonel Coury was imperative. These puzzles had to be solved before the deposition because Simmers, a defendant and the focus of the trial, was certain to be hostile. It took approximately four days to complete this preparation.

Hours of preparation for Linda Bonney's deposition proved fruitless because, ultimately, she claimed she was not familiar with any of the key personnel actions surrounding Ms. Wilhelm's termination. She said Rose Polek was her expert. Therefore, if Polek did not admit that the employment actions taken were adverse and that there were alternatives to the actions taken, the plaintiff's case may have been lost. To ensure Polek made the proper admissions, hours were spent talking to people familiar with Commonwealth and State Police personnel practices. In addition the Commonwealth's personnel rules had to be studied. At the deposition Polek proved to be one of the most straightforward witnesses deposed. Based on previous depositions, this was not anticipated. The preparation time had to be invested.

## IV.   THE DEFENDANTS CHALLENGE ENTRIES FOR TRIAL PREPARATION.

Defendants assert was sufficient to prepare for trial. For this case, ten workdays might have been reasonable if plaintiff's counsel had the resources of a firm, or the Office of Attorney General to assist counsel. Plaintiff did not have that luxury. Likewise, Plaintiff had the burden of proof and only one witness she knew was completely cooperative, herself.[3] To construct a

---

[3] Major Morris was not hostile, but counsel was never certain of how he would testify.

case based entirely on hostile witnesses is extremely difficult. To prepare for trial, each of the 2000 pages of documents had to be reviewed. While not all of the documents were selected as exhibits by plaintiff's counsel, he had to familiar with each page in preparation for defendants' tactics. This was especially so since not all of the witnesses presented at trial had been deposed. For example, Richard Clites, who was not deposed, had an alternate interpretation of the Commonwealth's rules regarding furloughs. Had counsel not spent the time memorizing most Commonwealth's personnel rules, he would not have found the section that contradicted Cites. In fact, during trial the court admonished plaintiff's counsel for taking as long as he did to find the pertinent section.  In sum, the time taken was necessary to have a working knowledge of approximately 2000 pages of documents and approximately 1500  pages of deposition testimony, and construct plaintiff's case.

## V.     THE DEFENDANTS CHALLENGE ENTRIES FOR 9/5/01, 2/2/02, 2/13/02, 2/16/02, 2/20/02, 3/10/02, 4/5/02, 4/7/02, 4/8/02, 4/9/02, 4/12/02, 5/3/02, 11/26/02, 11/27/02, 11/29/02, 11/30/02, 1/10/03, 1/24/03, 1/25/03 RELATING TO REVIEWING TRANSCRIPTS AND DOCUMENTS.

Reviewing transcripts and documents submitted by defendants' counsel involves more than just reading. Review entails analysis and comparison. The dates for transcript review are related to dates the

transcripts were received by counsel. On: 2/13/02-Morris; 2/16/02-Wilhelm;

2/20/02-Wilhelm and Morris; 3/10/02-Evanko; 4/5/02, 4/7/02, 4/8/02,

4/9/02, 4/12/02-Miller, McHale, McNeal, Conley, Plesco, Burholder,

Polek,Simmers, Spigelmeyer, Balsbaugh and Hickes 360 pages of transcripts

plus exhibits were reviewed. Reviewing the answer involved comparing

documents in plaintiff's counsel's possession with the defendants'

responses. The same is true for the review of defendants' response to

interrogatories. Reviewing defendants' brief in opposition to plaintiff's

motion for summary judgment required checking numerous references to

documents and transcripts, regarding assertions of material undisputed facts.

Ovetta Johnston's expert report was over 50 pages, including

attachments. Defendants acknowledge the attachments were substantial. The

attachment described over numerous an varied types of positions for which

defendants claimed plaintiff qualified. Ms. Johnston claimed these positions

would be available. Ms. Johnston's claims as to qualifications and

availability had to be verified and assessed.

## VI.   THE DEFENDANTS CHALLENGE ENTRIES FOR JANUARY HEARING PREPARATION.

Remarkably the defendants dismiss preparation for the equity hearing to

a simple task. It was not. Most of the time was spent preparing for the

testimony of defendants expert witness on future loss earnings, Barach.

Plaintiff's counsel had no way of knowing that Barach would not be called.

The fact that defendants elected not to present him does not justify negating

time spent preparing for him. Preparation involved reviewing and comparing

the opposing expert reports, their respective depositions and all supporting

documentation, including the collective bargaining agreement. Preparation

for expert Johnston required reviewing her lengthy report, as amended, and

her deposition testimony. Plaintiff's testimony had to be prepared in light of

the fact that both parties had changed positions on the issue of relief. Also,

counsel had to prepare for several other witnesses who had not been

deposed. Under the circumstances, time spent preparing for the equity

hearing was more than reasonable.[4]

## VII.  THE DEFENDANTS CHALLENGE COUNSEL'S HOURLY RATE.

The rate requested by defendants' counsel does provide the starting

point in determining a reasonable hourly rate here. The plaintiff agrees that

the rate requested by defendants for attorney's fees was not unreasonable,

but the rate requested was not the prevailing rate in the community. A

reasonable rate is the prevailing rate in the community. *Blum v. Stenson*, 465

---

[4] Defendants claim that time spent in preparation for the October hearing should have reduced preparation time for the January hearing. When both parties changed positions regarding the appropriate equitable relief, plaintiff was starting from ground zero.

U.S. 866, 895 (1984) Instead of focusing evidence of the prevailing rate in the community, defendants simply argue that defendants' counsel's federal litigation experience is somehow superior to state litigation experience. This approach is flawed for several reasons. First, defendants have assumed that defendants' counsel has tried more cases without information to draw such a conclusion. More to the point, as counsel for the Governor's Office, plaintiff's counsel was lead counsel in numerous state court cases and appellate arguments. Ignoring plaintiff's counsel's state court litigation experience, and focusing his extensive labor related experience, the defendants have failed to present any logical, authoritative, or compelling basis for claiming federal litigation experience is, *per se*, superior to state litigation experience. To the contrary, more litigation experience in federal courts does not ensure success in federal court litigation. Representing a client in court requires experience in trial technique. It requires that the advocate know the subtleties and peculiarities of the facts and law. It requires adequate preparation. Ultimately, the only important difference in federal and state claims knows the differences in the applicable law and the rules. There is no basis for claiming plaintiff's counsel court experience is inferior.

In addition to his court experience, plaintiff's counsel had seventeen years of experience in analyzing the Commonwealth of Pennsylvania's unique human resource processes and policies. As Deputy Chief Counsel within the Legal Office for the Governor's Office of Administration, Plaintiff's counsel specialized in analyzing the numerous rules and regulations of the Commonwealth of Pennsylvania in general, and the State Police in particular. Knowing where the look for crucial information and being able to analyze that information, proved invaluable to plaintiff.

Defendants offer no explanation as to why $160 per hour is reasonable. It appears to simply be less that the rate requested and awarded defendants for counsel fees. In fact, defendants do not bother to argue that $160 is the prevailing rate within the community. Instead defendants attempt to negate the experience of Mr. Hicks as relevant. While Mr. Hicks' affidavit is adequate evidence of the prevailing community rate for litigation, the affidavit of Anthony Busillo is here submitted here for the courts' review. Mr. Busillo, who had practiced in Harrisburg all of his over twenty-four years career as an attorney, has specialized in employment matters for all of that time and his affidavit confirms $200 per hour for is reasonable. See Exhibit B attached.

This court approved $175 per hour for the defendants' counsel. There is only a difference of 14.28 per cent between the hourly rates of $175 and $200. This difference is well within the range of prevailing rates within the community, and should be approved for the plaintiff's counsel.

## VIII. THE LODESTAR SHOULD NOT BE REDUCED.

On the issue of unsuccessful claims defendants challenge claims for hours spent prior to Ms. Wilhelm's May 1, 2000, dismissal. These hours were spent during the timeframe included in her successful retaliation claim. These hours were spent preparing the complaint that was submitted to the Pennsylvania Human Relations Commission (PHRC). The delay in filing the PHRC complaint was a direct result of the subsequent and continuous acts of retaliation cited at trial. Since these hours were spent working on the PHRC complaint, the court may compensate plaintiff.

With respect to the October 23, 2002, equitable hearing, plaintiff is entitled to fees for the time counsel spent reviewing the memorandum submitted by defendants. What is significant here is that defendants were adamant that reinstatement was not possible. In the January hearing defendants made it clear to the court that reinstatement only became a viable alternative after the Governor Rendell's administration reviewed the matter.

Accordingly, plaintiff's counsel needed to review the memorandum when it was delivered in October to determine how to respond to defendants.

Defendants' claim that the lodestar should be reduced because of the plaintiff's limited success. To support this claim the defendants have presented the court with a mathematical formula for determining how the lodestar should be adjusted based on the ratio comparing the total number of issues in the case with those actually prevailed upon. In *Hensley v. Eckerthart*, 461 U.S. 424 (1983), the Supreme Court rejected such an approach. The Court held:

> Such a ratio provides little aid in determining what is a reasonable fee in light of all relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested....

*Hensley*, 461 U.S. at 435, 436 n. 11.

The Supreme Court held:

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours expended on the litigation.

> Where the plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will

17

encompass al hours reasonably expended on the litigation,
and indeed in some cases of exceptional success an enhanced
award may be justified. In these circumstances the fee award
should not be reduced simply because the plaintiff failed to
prevail on every contention raised in the lawsuit. See Davis v.
County of Los Angeles, supra, at 5049. Litigants in good faith
may raise alternative legal grounds for a desired outcome, and
the court's rejection of or failure to reach certain grounds is
not sufficient reason for reducing a fee. The result is what matters.
(Footnote omitted)

*Hensley*, 461 U.S. at 435.

In the instant case Ms. Wilhelm was dismissed. She filed state and

federal claims alleging the termination was discriminatory and, in the

alternative retaliatory. She also filed a claim in the state Whistleblower's

Act. As relief she sought backpay, front pay or reinstatement, compensatory

damages, and punitive damages. Ms. Wilhelm could not receive punitive

damages because it is not available against the Commonwealth under federal

law and it is not available against any defendant under state law. However,

she obtained an excellent result otherwise. She won a verdict of $250, 000 in

backpay and compensatory damages. Considering an amount of

approximately $128,000 covered actual loss of pay. The maximum she could

have received, under federal law, was $300,000 for punitive and

compensatory damages. Using $122,000 as the award for compensatory

damages, Ms. Wilhelm received forty per cent of the maximum allowed by

federal law. This result was exceptional. Furthermore, she received front pay

and reinstatement and interest on her monetary awards. The elements for proving a Whistleblower's claim is similar to, but less stringent than the retaliation claim. The remedy for violation of the Whistleblowers Act is reinstatement and backpay. The remedy under the state's discrimination law is the same as the federal statute. Thus, she obtained relief she sought.

While Ms. Wilhelm did not prevail on her Equal Protection and discriminatory promotion claims, hours devoted to these claims were indistinguishable from her prevailing claims. To the extent that plaintiff's counsel spent hours preparing for these claims they are integrated into the time spent preparing the successful claims. For example, time spent on addressing the issue of whether Ms. Wilhelm was denied pay and promotional opportunities were integral to the addressing issues of credibility, and retaliation. Having obtained the desired outcome, failing to prevail on these claims does not justify reducing plaintiff's claim for fees.

Oddly, defendants seem to claim victory on the equable relief. Front pay, if properly calculated, is equal to reinstatement, provided the reinstatement is to a comparable position. If done properly, a plaintiff is made whole. Therefore, characterizing reinstatement as somehow, *per se*, a remedy inferior to front pay is at odds with the spirit of federal and state anti-discrimination statutes, and no basis for reducing the lodestar.

## IX. PLAINTIFF SEEKS REIMBURSEMENT OF COSTS PURSUANT TO 42 U.S.C. §2000e-5(k).

Plaintiff here seeks reimbursement of costs pursuant to 42 U.S.C. §2000e-5(k). As per the agreement between plaintiff and plaintiff's counsel, plaintiff paid postage, that counsel would have otherwise paid and for which he would have been reimbursed, where it was more expedient and practical for her to do so. The postage claimed was incurred to filed documents in this case. The same is true for plaintiff's claim for filing fees, copying, process service, transcripts, medical record, charts and supplies. All of these costs were in incurred by counsel and related to this case. Plaintiff simply paid the bill. Had plaintiff's counsel gone through the trouble of paying the costs and invoicing the plaintiff, there would be no dispute. To do otherwise, will only encourage sham, though technically correct, transactions. Plaintiff should be reimbursed.

## **CONCLUSION**

For the reasons set forth above, this Honorable Court should grant the

Plaintiff's petition for attorneys fees.

Respectfully submitted,

Nathan C. Pringle, Jr.
Attorney I. D. Number 30142
3601 North Progress Avenue
Suite 200
Harrisburg, PA 17110
(717) 909-8520
Attorney for Plaintiff

June 30, 2003

# CERTIFICATE OF SERVICE

I, Nathan C. Pringle, Jr., hereby certify that on June 30, 2003, I

caused to be served by hand delivery a copy of the foregoing document

entitled Reply Memorandum in Support of Plaintiff's Petition for Attorney's

Fees and Costs upon the following:


Susan J. Forney
Chief Deputy Attorney General
Office of Attorney General
Litigation Section
15th Floor, Strawberry Square
Harrisburg, PA 17120

_____
Nathan C. Pringle, Jr.

# EXHIBIT A



COMMONWEALTH OF PENNSYLVANIA
## OFFICE OF ATTORNEY GENERAL

December 12, 2002

MIKE FISHER
ATTORNEY GENERAL

15th Fl., Strawberry Square
**Litigation Section**
**Harrisburg, PA 17120**
**(717) 787-9831 - DIRECT**
**(717) 772-4526 - FAX**

**Nathan C. Pringle, Jr., Esquire**
**3601 North Progress Ave., Suite 200**
**Harrisburg, PA 17110**

RE:   *Wilhelm v. Comm. of Pa., PSP, et al.*
       **No. 1:CV-01-1057 (M.D.Pa.)**

**Dear Nate:**

I am enclosing defendants' second expert report in this matter. I am also enclosing the PET 112 and 112 that you requested.

I understand that a telephone conference has been scheduled with the Court for Tuesday at 10:30 a.m. to discuss whether defendants are permitted to present more than one expert.

**Very truly yours,**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**

**SJF/lls**
**Enclosures**



COMMONWEALTH OF PENNSYLVANIA
## OFFICE OF ATTORNEY GENERAL

**February 5, 2002**

MIKE FISHER
ATTORNEY GENERAL

15th Fl., Strawberry Square
Litigation Section
Harrisburg, PA 17120
(717) 787-9831 - DIRECT
(717) 772-4526 - FAX

Nathan C. Pringle, Jr., Esquire
3601 North Progress Av., Suite 200
Harrisburg, PA 17110

RE:    *Wilhelm v. Comm. of Pa., PSP, et al.*
       No. 1:CV-01-1057 (M.D.Pa.)

Dear Nate:

I am writing to confirm your requests for information and dates for depositions. According to my notes, you have made the following requests:

1.    A list of all telephone numbers that made calls to two extensions in the Legislative Affairs Office on May 1, 2000.

2.    The Executive Summary of the Systems and Process Review and any other report of that review.

3.    Any general code of conduct that applies to enlisted members of the State Police, the field regulation that deals with the use of state cars and the field regulation that deals with the competency of members.

4.    The date of Major Miller's retirement and the date of Major Morris's appointment to the Legislative Affairs position.

5.    A list of non-civil service vacancies filled by the State Police at pay range 8 or above and any intelligence analyst vacancies filled from May 1, 2000 to the present.

**Letter to Nathan C. Pringle, Jr., Esquire**
**February 5, 2002**

**PAGE TWO**


I am also confirming that the following depositions have been scheduled:

February 14, 2002 at 9:00 a.m.  —  Major Jeffrey Miller, Lieutenant William McHale
and Stanley Burkholder

February 15, 2002 at 9:00 a.m. —  Captain Michael D. Simmers

February 15, 2002 at 1:00 p.m.  —  Lieutenant Colonel (ret.) Thomas K. Coury

These depositions will take place at State Police Headquarters in the conference room within the Chief Counsel's Office.

We have also tentatively scheduled Ron Plesco's deposition for February 13th at 9:00 a.m. at the same location. I am waiting for a call from Mr. Plesco to confirm that date. I will let you know as soon as I receive it.

I believe I have accurately summarized your requests and the status of the deposition schedule. If I have missed anything or gotten something wrong, please let me know.

Very truly yours,

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**

SJF/lls



COMMONWEALTH OF PENNSYLVANIA
## OFFICE OF ATTORNEY GENERAL

### February 8, 2002

MIKE FISHER
ATTORNEY GENERAL

15ᵗʰ Fl., Strawberry Square
**Litigation Section**
**Harrisburg, PA 17120**
**(717) 787-9831 - DIRECT**
**(717) 772-4526 - FAX**

**Nathan C. Pringle, Jr., Esquire**
**3601 North Progress Av., Suite 200**
**Harrisburg, PA 17110**

> **RE:** *Wilhelm v. Comm. of Pa., PSP, et al.*
> **No. 1:CV-01-1057 (M.D.Pa.)**

**Dear Nate:**

I am writing to provide you with some of the information and some of the documents you requested during recent depositions. I am also enclosing some documents that you have not requested that may be relevant to defendants' case.

Turning first to the information you requested. Major David Miller retired effective January 1, 1997. Major Richard D.A. Morris transferred into the Legislative Affairs Office as a Captain effective February 1, 1997. You also requested a list of vacancies at pay range 8 or above that have been filled by the State Police since May 1, 2000. We also agreed to provide a list of the intelligence analyst vacancies filled during the same period. They are as follows:

| Position | Bureau | Date Filled |
|---|---|---|
| Intelligence Analyst | BCI | 11/25/00 |
| Attorney 1 | Legal | 11/27/00 |
| Intelligence Analyst | Forensic Serv. | 2/5/01 |
| Attorney 2 | Legal | 1/20/01 |
| Intelligence Analyst | Forensic Serv. | 7/9/01 |
| Attorney 3 | Legal | 9/8/01 |
| Administrative Officer 3 | MPOETC | 9/29/01 |
| Intelligence Analyst | BCI | 10/16/01 |
| Intelligence Analyst | BCI | 12/10/01 |

With regard to the documents you requested, I am enclosing a copy of the SPR Executive Summary (doc. # 6-21). I understand that the "whole report" consists of the summary and the attached Comment Summary Report. The report was provided to Major Morris who responded with an Inspection Correction Report noting the changes made in response to the Comment Summary. A copy of the memo transmitting the report to Major Morris (doc. #22) and Major Morris's response (doc. #23 and #24) are also enclosed.

The other documents you requested, the Code of Conduct applicable to enlisted members including rules addressing the use of state vehicles and competency, has been requested from the State Police and will be sent to you under separate cover.

You also requested arbitration awards dealing with the use of assigned vehicles and competency or work performance. I am willing to permit you to search the O.A. data base for this material. I understand that following your search you will identify the arbitrations you want us to obtain and we will obtain them and provide you with copies.

We are also seeking the information you requested on incoming calls to extensions (717) 783-5566 and (717) 705-2901 on May 1, 2001. When we obtain the information, we will provide it.

Finally, I am enclosing additional documents which you did not request but which may be relevant to defendants' case. They are as follows:

Memo from Colonel Paul J. Evanko to Acting, Director, Legislative Affairs Office, Re: Systems and Process Review Division Report, dated January 7, 2000 (doc. # 71-73)

Memo from Major Hawthorne N. Conley to Deputy Commissioner of Administration, Re: Review of Legislative Liaison Office, dated November 3, 1999 (doc. # 1596-1597)

AR 4-11 Temporary Assignment to Higher Rank or Classification, dated August 20, 1997 (doc. # 1869-1877)

**Letter to Nathan C. Pringle, Jr., Esquire**
**February 8, 2002**

**PAGE THREE**


      I believe that this letter and the enclosed materials either respond to your requests or address their status.  If I have overlooked anything, please let me know.

            **Very truly yours,**

            **SUSAN J. FORNEY**
            **Chief Deputy Attorney General**

**SJF/lls**
**Enclosures**



COMMONWEALTH OF PENNSYLVANIA
## OFFICE OF ATTORNEY GENERAL
### February 13, 2002

MIKE FISHER
ATTORNEY GENERAL

15th Fl., Strawberry Square
Litigation Section
Harrisburg, PA 17120
(717) 787-9831 - DIRECT
(717) 772-4526 - FAX

Nathan C. Pringle, Jr., Esquire
3601 North Progress Av., Suite 200
Harrisburg, PA 17110

RE: *Wilhelm v. Comm. of Pa., PSP, et al.*
No. 1:CV-01-1057 (M.D.Pa.)

Dear Nate:

This confirms our telephone conversation earlier this week concerning discovery. I am also providing you with the documents you requested regarding the use of vehicles assigned to defendant Simmers, Ronald Plesco and William McHale. I am also enclosing documents you requested during depositions and additional documents consistent with defendants' continuing obligation under Fed.R.Civ.P. 26.

You called me on Monday to request the postponement of the depositions we had scheduled later in the week for Ronald Plesco, Major Jeffrey Miller, Lieutenant William McHale, Stanley Burkholder, Thomas Coury and Michael Simmer. You explained that you did not believe you had received all of the documents to which you were entitled in discovery. You also told me that you would contact me in the near future to identify the documents you want in advance of the depositions. Finally, you indicated that you want to ask the court to extend the discovery deadline by a month.

I agreed to postpone the depositions and said I would not object to the extension of discovery that you propose. I also said that I am willing to meet with you to discuss the documents that you wish to obtain. Please let me know when you would like to meet.

**Letter to Nathan C. Pringle, Jr., Esquire**
**February 13, 2002**

**PAGE TWO**

In the meantime, I am enclosing the documents you requested regarding the use of certain vehicles. Travel vouchers for Ronald Plesco, Jeffrey Miller and Michael Simmers were located and are enclosed (doc. #3157-3266). No travel vouchers were located for Lieutenant McHale. The only other information available regarding the use of assigned vehicles is the monthly mileage recorded. The State Police does not maintain information on the use of assigned vehicles after a new vehicle has been assigned to an individual. Captain Simmers was assigned vehicle # 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 in January, 2000. Lieutenant McHale was assigned vehicle #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 in May 2001. Major Miller was assigned vehicle # 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 in March, 2000. The mileage recorded for these vehicles is summarized in the enclosed chart (doc. #3312).

Ronald Plesco's vehicle is leased from the Department of General Services, which maintains the records on it. We have requested the information and will provide it to you when we receive it.

During the course of depositions you asked that we produce a Code of Conduct applicable to enlisted members of the State Police, or in lieu of such a code the rules that apply to the competence of members and their use of vehicles. I am enclosing FR 1 (doc. #3268-3311)which is the Code of Conduct for members. It includes rules on competency, the use of state vehicles and discrimination.

During the course of depositions you also asked that we obtain a list of telephone numbers that placed calls to two extensions located in the Legislative Affairs Office on May 1, 2000. We requested the information from the Office of Administration and were informed that records are kept only for outgoing long distance calls.

Finally I am enclosing the following documents which may be relevant to the defense of this case:

Supervisory notes maintained by Jeffrey Miller regarding Barbara Wilhelm (doc. #506)

Desk memorandum dated 9/23/ 99, from Director, Bureau of Professional Responsibility to Director, Legislative Liaison Office, Subject: Personnel Investigation - IAD-1999-663 (doc. #3149)

Handwritten note dated 12/23/99 (doc. #3151)

Memorandum dated December 23, 1999, from Director, Bureau of Professional Responsibility to Deputy Commissioner of Administration (doc. #3152)

**Letter to Nathan C. Pringle, Jr., Esquire**
**February 13, 2002**

**PAGE THREE**

Memorandum dated January 4, 2000, from Major Richard D.A. Morris, Director Legislative Affairs Office to Director, Bureau of Professional Responsibility (doc. #3153)

E-mail message dated January 14, 2000 from John R. Brown to Lisa S. Christie (doc. #3154-3155)

Very truly yours,

SUSAN J. FORNEY
Chief Deputy Attorney General

SJF/lls
Enclosures



COMMONWEALTH OF PENNSYLVANIA
## OFFICE OF ATTORNEY GENERAL
**March 6, 2002**
**(VIA FAX & FIRST-CLASS MAIL)**

MIKE FISHER
ATTORNEY GENERAL

15th Fl., **Strawberry Square**
**Litigation Section**
**Harrisburg, PA  17120**
**(717) 787-9831 - DIRECT**
**(717) 772-4526 - FAX**

**Nathan C. Pringle, Jr., Esquire**
**3601 North Progress Av., Suite 200**
**Harrisburg, PA 17110**

RE:  *Wilhelm v. Comm. of Pa., PSP, et al.*
**No. 1:CV-01-1057 (M.D.Pa.)**

**Dear Nate:**

I am writing to confirm our recent conversations regarding discovery as well as to respond to your letters of February 26 and March 4.

Your letter of February made 40 additional requests for documents and information in connection with this case. On March 1 we met to discuss your requests. At that meeting, some of your requests were clarified while others were modified to some extent. My notes reflect the following clarifications and/or modifications,

9. I objected to the provision of medical records. You explained that you were looking for internal memoranda reflecting the dates Captain Simmers was on restricted duty based on his hearing. I agreed to provided such memoranda to the extent they exist.

13. I objected to providing documentation from the Governor's Office because that Office is not a party to this action and because such information is not relevant to your client's claims because defendants admit that Ms. Wilhelm's name was not submitted to the Governor's Office. We agreed that I would provide any documents the State Police has that lists the candidates submitted to the Governor's Office.

14. I explained that a list of candidates for the Assistant Director position was not sent to the Governor's Office. To the extent the State Police has documents related to the selection process, they will be produced.

**Letter to Nathan C. Pringle, Jr., Esquire**
**March 6, 2002**

**PAGE TWO**

15. I objected to providing this information for the last 10 years. We will assemble the information for 1995 to the present.

25. I cannot identify the meeting referred to. You said that you thought you had a memo referring to it and indicated you would provide me with the memo.

27. I told you that I requested the information sought, but that I would not attempt to obtain Mr. Moriarty's course material. Neither he nor the State System of Higher Education are defendants in this action. You may of course subpoena the information if you wish.

29. I objected to this request again because the State System of Higher Education is not a party and because the information does not appear to be relevant to your client's claim.

35. After discussing this request, you modified it to seek sex discrimination charges filed with the PHRC or the EEOC and sex discrimination complaints filed with the courts during Colonel Evanko's tenure as Commissioner.

37. I objected to providing the reports held by the Governor's Office because the Governor's Office is not a party to this action. I will request copies of the reports from the Legislative Affairs Office.

40. You modified this request to seek a list of civilian vacancies located at Department Headquarters in April and May 2000.

I will do my best to obtain the documents you have requested quickly, but I cannot promise that you will have them before the depositions you seek to take. If you need particular documents for certain deponents, please identify them and I will try to prioritize their retrieval. Even then I cannot promise that you will have them before the end of March.

Turning to the depositions you have requested, we need to reschedule the six depositions that were scheduled for February and postponed at your request. Major Miller and Lieutenant McHale are available on the morning of March 14. Captain Simmers is available the afternoon of the 14th.

Ron Plesco is starting a new job on March 25. His schedule is filled for the next couple of weeks. He can be subpoenaed for deposition on March 27, 28 or 29. He will accept service of the subpoena by mail at his home address which is: 4033 Picket Lane, Harrisburg, PA 17110. I suggest that you subpoena his resume at the same time. Stanley Burkholder is available on March 18, 19 or 22. I have a conflict at 1:00 p.m. on both the 18th and the 22nd, otherwise I can work with those days.

I am waiting to hear back from Lieutenant Colonel Coury. I will let you know when I have some dates from him.

Your letter of March 4 indicates that you now want to depose an additional six people, Sandra K. Speigelmeyer, Rebecca Ballsbaugh, Sergeant Janet A. McNeal, Rose Polek, Lieutenant Colonel Conely and Lieutenant Colonel Hickes. I seriously doubt that we will be able to schedule and complete these depositions before the discovery deadline on March 30. I will attempt to schedule them, but I need to know approximately how long you expect to be with each person. In the meantime, I will contact them to determine their availability. I assume that we can hold these depositions at State Police Headquarters. If that is not the case, please let me know right away. In addition, you will need to provide subpoenas for Ms. Speigelmeyer, Ms. Ballsbaugh, Sergeant McNeal and Ms. Polek.

If you have any questions or concerns please contact me as soon as possible. Otherwise, I will proceed as I have indicated.

Very truly yours,

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**

SJF/lls



COMMONWEALTH OF PENNSYLVANIA
## OFFICE OF ATTORNEY GENERAL
### March 25, 2002

MIKE FISHER
ATTORNEY GENERAL

15th Fl., Strawberry Square
**Litigation Section**
**Harrisburg, PA  17120**
**(717) 787-9831 - DIRECT**
**(717) 772-4526 - FAX**

Nathan C. Pringle, Jr., Esquire
3601 North Progress Av., Suite 200
Harrisburg, PA  17110

RE:  *Wilhelm v. Comm. of Pa., PSP, et al.*
No. 1:CV-01-1057 (M.D.Pa.)

Dear Nate:

I am writing to confirm that on March 20 and March 21 I provided you with the following documents:

| | |
|---|---|
| 1731-1749 | documents related to Ms. Wilhelm's reclassification request |
| 4521-4526 | Ron Plesco's PET 110 from 1997 to the present *→ We want his entire employment ? from 1995- Present* |
| 4320-4520 | Legislative Weekly Reports for 2000 |
| 4609-4674 | potentially the supervisory file for Captain Simmers |
| 2168-2256 | Captain Simmers' personnel file |
| 4062 | Barbara Wilhelm's PET 112- *OK NOT Received ( Full Employm History )* |
| 3391-3392 | 1999 Record of Absence for Captain Simmers |
| 4527-4607 | Time and attendance records for Captain Simmers |

With regard to documents 4609-4674, I explained that we could not find a file labeled as Captain Simmers' supervisory file. We discovered these documents in an unmarked file in the office of the Deputy Commissioner for Administration. We are producing these documents because they appear to contain documents from the time period relevant to this case, that might be kept in a supervisory file.

**Letter to Nathan C. Pringle, Esquire**
**March 25, 2002**

**PAGE TWO**

       I am also enclosing document 2257-2258.  I discovered this document in one of my folders after the depositions.  It was part of Captain Simmers' personnel file.  I must have missed seeing it in the folder when I provided you with the rest of the file.

       Our last deposition is this Wednesday, March 27th at 1:00 with Lieutenant Colonel Hickes.  I will see you then.

                    **Very truly yours,**

                    **SUSAN J. FORNEY**
                    **Chief Deputy Attorney General**

**SJF/lls**
**Enclosure**



COMMONWEALTH OF PENNSYLVANIA
## OFFICE OF ATTORNEY GENERAL

**April 30, 2002**

MIKE FISHER
ATTORNEY GENERAL

15th Fl., Strawberry Square
**Litigation Section**
**Harrisburg, PA 17120**
**(717) 787-9831 - DIRECT**
**(717) 772-4526 - FAX**

**Nathan C. Pringle, Jr., Esquire**
**3601 North Progress Ave., Suite 200**
**Harrisburg, PA 17110**

  RE:  ***Wilhelm v. Comm. of Pa., PSP, et al.***
    **No. 1:CV-01-1057 (M.D.Pa.)**

**Dear Nate:**

  I am enclosing materials which you have requested in discovery and materials which are otherwise relevant to the case. They are:

1.  Documents relevant to the Conflict Resolution Session (4932-4996);

2.  The blank record of absence form from your client's supervisory file (4930-4931);

3.  Copies of the taped interviews conducted during the Internal Affairs investigation; and,

4.  Documents from the file of the Deputy Commissioner for Administration concerning the Systems Process Review Report and the Conflict Resolution session (4951-4926).

  I believe that defendants have now provided you with all of the materials you have requested. If I am mistaken, please let me know as soon as possible.

  **Very truly yours,**

  **SUSAN J. FORNEY**
  **Chief Deputy Attorney General**

SJF/lls
Enclosures



COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL

**April 4, 2002**

MIKE FISHER
ATTORNEY GENERAL

15th Fl., **Strawberry Square**
**Litigation Section**
**Harrisburg, PA 17120**
**(717) 787-9831 - DIRECT**
**(717) 772-4526 - FAX**

**Nathan C. Pringle, Jr., Esquire**
**3601 North Progress Av., Suite 200**
**Harrisburg, PA 17110**

      RE:    *Wilhelm v. Comm. of Pa., PSP, et al.*
              **No. 1:CV-01-1057 (M.D.Pa.)**

**Dear Nate:**

      This responds to your letter of February 26, 2002 which requested numerous documents in connection with this case. The following responses correspond with the numbered requests in your letter.

1.     This document was produced at the depositions held on March 21, 2002.

2.     Tapes of the interviews with Major Morris, Captain Simmers and Ron Plesco have been duplicated and will be sent to you under separate cover tomorrow. There is no tape of the interview with Sandra Spiegelmeyer nor is there a transcript of Ron Plesco's interview.

3.     Ms Wilhelm's supervisory file is enclosed (documents 21-42, 66-97, 132-135 and 506). An additional document contained in Ms Wilhelm's file will be forwarded to you under separate cover. It is a blank record of attendance for 1999. I did not bother to have it copied when I first obtained the documents. I believe that document also responds to your request #24. Finally, please note that although document 506 contains supervisory notes that were a part of Ms. Wilhelm's file, those notes were maintained electronically and were not printed and physically added to the file until after Ms. Wilhelm was dismissed.

      Ms. Wilhelm's personnel file is enclosed (documents 345A-505).

**Letter to Nathan C. Pringle, Jr., Esquire**
**April 4, 2002**

**PAGE TWO**

4.　　These documents were produced at the depositions held on March 20, 2002.

5.　　No documents were found.

6.　　These documents are enclosed (documents 3322-3326).

7.　　These documents were produced at the depositions held on March 21, 2002.

8.　　The policy is enclosed (documents 3491-3499).

9.　　These documents were produced at the depositions held on March 21, 2002.

10.　　These documents are enclosed (documents 2263-3441).

11.　　These documents are enclosed (documents 3442-3443).

12.　　These documents are enclosed (documents 3444-3445).

13.　　No documents other than a letter announcing Major Miller's, selection and the Personnel Order previously provided were found.  The letter will be sent under separate cover as soon as it is numbered.

14.　　No documents other than the Personnel Order previously provided were found.

15.　　The information requested is enclosed (document 3321).

16.　　The distribution is reflected on the Personnel Order as Rose Polek explained in her deposition.

17.　　This document is enclosed (documents 3446-3454).

18.　　The document is enclosed (documents 3318).

19.　　The document is enclosed (document 3319-3320).

20.　　Since 1995 no employees other than Ms. Wilhelm were dismissed due to reorganization.

**Letter to Nathan C. Pringle, Jr., Esquire**
**April 4, 2002**

## PAGE THREE

21.  A list of employees terminated since 1995 is enclosed (documents 4064-4071) along with the associated personnel orders (documents 4122-4266).

22.  *See* response to 20 above.

23.  The notes are enclosed (documents 2028-2130).  The persons contacted are reflected in the notes.

24.  The document was part of Ms. Wilhelm's supervisory file and will be forwarded when received.  *See* response to 3 above.

25.  We could not identify the meeting.  Therefore no documents were found.

26.  The document is enclosed (documents 507-512).

27.  We are still attempting to obtain this information.

28.  To date we have not located such documents provided to Colonel Evanko or Lieutenant Colonel Coury.  If we discover such documents we will provide them.

29.  We agreed that you would subpoena these documents from the State System of Higher Education.

30.  The correspondence has been requested but has not yet been received.  It will be provided when it is received.

31.  No such e-mail has been discovered.

32.  The documents are enclosed (documents 3327-3334).

33. and 34.  The documents are enclosed (documents 3500-3504).

35.  The documents are enclosed (documents 3873-4061).

36.  No minutes or records of attendance were kept.

(

**Letter to Nathan C. Pringle, Jr., Esquire**
**April 4, 2002**

**PAGE FOUR**

37.     These documents were provided at the depositions held on March 21, 2002.

38.     These documents are enclosed (documents 3463-3468).

39.     These documents are enclosed (documents 3469-3471).

40.     A list of vacancies at Headquarters in April and May of 2000 is enclosed (document 3472).


With a very few exceptions, I believe this responds to your requests.  Please let me know if you have any questions or concerns.

Very truly yours,

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**


SJF/lls
Enclosures



COMMONWEALTH OF PENNSYLVANIA
## OFFICE OF ATTORNEY GENERAL

**June 13, 2002**

MIKE FISHER
ATTORNEY GENERAL

15th Fl., Strawberry Square
**Litigation Section**
**Harrisburg, PA  17120**
**(717) 787-9831 - DIRECT**
**(717) 772-4526 - FAX**

**Nathan C. Pringle, Jr., Esquire**
**3601 North Progress Ave., Suite 200**
**Harrisburg, PA  17110**

      RE:    *Wilhelm v. Comm. of Pa., PSP, et al.*
              **No. 1:CV-01-1057 (M.D.Pa.)**

Dear Nate:

       I am writing to provide you with some documents that were recently discovered in connection with this case and to disclose the identity of three potential witnesses.  I believe that the witnesses were mentioned during the course of discovery, but I thought it prudent to identify them to you formally as well.

       The enclosed documents are miscellaneous notes and materials that Garret Rain discovered in cleaning out his office after transferring from the Bureau of Professional Responsibility to the crime unit of Troop H.  The documents are numbered 4997 through 5050.

       The potential witnesses are:

**Lieutenant Colonel (ret.) George March:**  He is familiar with the resolution of the investigation of the incident involving Rebecca Balsbaugh and Major Paul Woodring.

**Barbara Christie:**  She is familiar with her duties and responsibilities.  She is also familiar with her conversation with Barbara Wilhelm regarding the Assistant Legislative Liaison position.  She is also familiar with the meeting which occurred with the Major Conley and Major Smith-Elliot to discuss various documents relating to the Legislative Affairs Office and Ms. Wilhelm's complaints.

**Captain John R. Brown:**  Captain Brown is in charge of the Internal Affairs Division of the Bureau of Professional Responsibility.  He is familiar with the how the 1999 BPR investigation of Captain Simmers was handled and he is familiar with the BPR process and the rules, regulations and policies which govern it.

Letter to Nathan C. Pringle, Jr., Esquire
June 13, 2002

PAGE TWO

If you have any questions or concerns about these disclosures, please do not hesitate to call.

Very truly yours,

SUSAN J. FORNEY
Chief Deputy Attorney General

SJF/lls
Enclosures



COMMONWEALTH OF PENNSYLVANIA
## OFFICE OF ATTORNEY GENERAL

**January 17, 2003**

MIKE FISHER
ATTORNEY GENERAL

15th Fl., Strawberry Square
Litigation Section
Harrisburg, PA 17120
(717) 787-9831 - DIRECT
(717) 772-4526 - FAX

Nathan C. Pringle, Jr., Esquire
3601 North Progress Ave., Suite 200
Harrisburg, PA 17110

      RE:   *Wilhelm v. Comm. of Pa., PSP, et al.*
           No. 1:CV-01-1057 (M.D.Pa.)

Dear Nate:

        I am enclosing a supplemental report prepared by Ovetta Johnston of the Civil Service Commission. I expect to provide with a supplemental report by Gary Barach as well. I will drop that report at your office on Tuesday morning. I assume that is not a problem, particularly since if it was mailed on the 18th, it would not arrive at your office until Tuesday anyway.

        Regarding your phone message, I will look for the PET 116 and send it to you again. On the jury issue, the Judge never granted me permission to speak with the jurors. Otherwise, I would have shared their comments as we discussed.

                Very truly yours,

                SUSAN J. FORNEY
                Chief Deputy Attorney General

SJF/lls
Enclosure

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BARBARA A. WILHELM, | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | NO. 1:CV-01-1057 |
| | : | |
| COMMONWEALTH OF PA.; | : | (JUDGE RAMBO) |
| PENNSYLVANIA STATE POLICE; | : | |
| COLONEL PAUL J. EVANKO, | : | |
| COMMISSIONER; LIEUTENANT | : | |
| COLONEL THOMAS K. COURY; and | : | |
| CAPTAIN MICHAEL. D. SIMMERS, | : | |
| **Defendants** | : | |

## ATTORNEY AFFIDAVIT IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY'S AND COSTS

I, Anthony C. Busillo II, under oath do hereby state the following under pains and penalties of perjury:

1.     I am an attorney duly licensed to practice before the courts of this state, and have been engaged in the active practice of law for 24 years, specializing in the litigation of labor and employment cases. I am a partner in the law firm of Markowitz & Richman, and over the course of the past 21 years I have represented plaintiffs and defendants in hundreds of cases arising out of labor and employment issues.

2.     I am familiar with plaintiff's attorney, having worked as opposing counsel on several cases, and have reviewed his resume that has been submitted as an exhibit in connection with plaintiff's application for attorneys' fees.

3.     I also have personal knowledge of the billing rates charged by other attorneys in the City of Harrisburg for similar types of litigation, including the rates charged by other attorneys in my firm. The rates charged by law firm partners in the City of Harrisburg, as well as members of my firm, for similar litigation ranges from $200 to $275 per hour, and plaintiff's attorney's normal billing rate of $200 per hour as set forth in his affidavit is a reasonable hourly rate for an attorney of his skill and experience.

Signed under pains and penalties of perjury.

_____   6-27-03
Anthony C. Busillo II          Dated