IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA A. WILHELM, <br>     Plaintiff | : <br> : <br> : |
| v. | :     NO. 1:CV-01-1057 <br> : |
| COMMONWEALTH OF PA.; <br> PENNSYLVANIA STATE POLICE; <br> COLONEL PAUL J. EVANKO, <br> COMMISSIONER; LIEUTENANT <br> COLONEL THOMAS K. COURY; and <br> CAPTAIN MICHAEL. D. SIMMERS, <br>     Defendants | :     (JUDGE RAMBO) <br> : <br> : <br> : <br> : <br> : |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR RECONSIDERATION
OF ORDER OF FEBRUARY 5, 2003**

I.            **PROCEDURAL HISTORY**

The plaintiff, Barbara A. Wilhelm, was employed by the Pennsylvania State Police as a Legislative Specialist within the Office of Legislative Affairs. She filed a complaint containing seven counts against the defendants alleging she was discriminated on the basis of her sex, and alleging she was subjected to retaliation for complaining about the discrimination. This Court granted, in part, defendants' motion for partial summary judgment. All counts except Count V, relating to her Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, claim of retaliation, were dismissed.

On September 11, 2002, a jury returned a verdict for Ms. Wilhelm, awarding her $250,000. On January 31, 2003, an equitable relief hearing was held before this Court. On February 5, this Court reinstated Ms. Wilhelm to a position as Deputy Press Secretary with the Commonwealth of Pennsylvania's Department of Corrections at her the applicable pay rate, denied plaintiff's motion to exclude Commissioner Miller's testimony regarding the position, awarded $27,148.05 in front pay, and instructed the Clerk of Court to defer entry of the order until directed. On August 15, 2003, this Court closed the case, but did not direct the Clerk of Court to enter orders to reinstate Ms. Wilhelm, deny the motion to exclude Commissioner Miller's testimony, or close the case. The Clerk of Court never entered those orders.

Plaintiff now seeks this Court's reconsideration of the order of reinstatement and the order denying the exclusion of Commissioner Miller's testimony.

II.        STATEMENT OF THE FACTS

On January 31, 2003, a hearing was held to determine the appropriate equitable relief for Ms. Wilhelm's future earnings. Ms. Wilhelm argued that reinstatement is not feasible and presented evidence of future lost earnings to assist in the Court's calculation of front pay. The defendants presented no evidence to counter Ms. Wilhelm's calculations of front pay, and presented a proposal for reinstatement to a position with the Department of Corrections as a Deputy Press Secretary. At that hearing the defendants presented Exhibit 94, a job description for the position as Deputy Press Secretary for the Department of Corrections. The defendants presented Exhibit 94 as evidence and represented that the exhibit had been provided to Ms.

Wilhelm's counsel by fax the day before. (Wilhelm - Equity Hearing 72-73) At the time of hearing, counsel for Ms. Wilhelm could not refute defendants' assertion that the exhibit had been faxed to him, and therefore could not object to its admission. It was not until after the conclusion of the equity hearing that counsel for Ms. Wilhelm discovered that the fax was sent to him after normal business hours the day before.

III.     STATEMENT OF THE QUESTIONS INVOLVED

**Whether Defendant's exhibit 94 should have been admitted?**

**Whether the testimony of Commissioner Miller should have been excluded?**

IV.     **ARGUMENT**

A.     The Instant Motion Is Timely

On February 5, 2003, this Court ordered Ms. Wilhelm's reinstatement and denied her motion to exclude Commissioner Miller testimony, but directed the clerk to defer entry of the order until directed to do so. On August 15, 2003, the Court ordered the case closed, but did not direct the clerk to enter the order reinstating Ms. Wilhelm, denying her motion to exclude Commissioner Miller's testimony, or closing the case. As a result, the clerk never entered an order reinstating Ms. Wilhelm, denying Commissioner Miller's testimony or closing the case.

Pursuant to Fed. R. Civ. P. 58(a)(1) those orders should have been entered by the clerk on separate documents. Those orders were entered by operation of Fed. R. Civ. P.

3

58(b)(2)(B). Fed. R. Civ. P. 58(b)(2)(B) provides that those orders were entered 150 days after the date they were docketed. Since the entry for Ms. Wilhelm's reinstatement and the denial of her motion to exclude Commissioner Miller's testimony were deferred until the clerk was so directed, and the case was closed without such direction, the 150 days starts on the date the case was closed, August 15, 2003. Thus, the orders reinstating Ms. Wilhelm, denying Commissioner Miller's testimony and closing the case were not entered until January 12, 2004.

Local Rule 7.10 for the U.S. Middle District permits the filing of a motion for reconsideration within 10 days after entry of an order. Accordingly, Ms. Wilhelm had until January 26, 2004, to her request reconsideration of the order reinstating her and denying her motion to exclude Commissioner Miller's testimony.

B.   Exhibit 94 Should Be Excluded

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). The Pennsylvania State Police presented Exhibit 94 at the equity hearing for the first time during re-cross-examination of Ms. Wilhelm. (Wilhelm – Equity Hearing 72). Counsel for Ms. Wilhelm objected asserting he had not received a copy. (Wilhelm – Equity Hearing 72). In response, counsel for Pennsylvania State Police told the Court and counsel that she faxed a copy the day before. (Wilhelm – Equity Hearing 72-73). Ms. Wilhelm's counsel explained that faxes do not go directly to him; a fax is

sent to a server and forwarded to counsel via email. In explaining this counsel also objected to the method of delivery as being less than reliable. (Wilhelm – Equity Hearing 72-73). In response, Pennsylvania State Police's counsel reminded Ms. Wilhelm's counsel, and informed the Court, that she informed him that a fax would be coming that day. (Wilhelm – Equity Hearing 73). This Court sustained the objection on the grounds that Ms. Wilhelm had not seen document. (Wilhelm – Equity Hearing 73). When Exhibit 94 was again presented during direct examination of Pennsylvania State Police Commissioner Jeffrey Miller, counsel for Ms. Wilhelm reiterated his objection that had he had not received a copy. (Miller – Equity Hearing 130) When counsel for the Pennsylvania State Police represented that the exhibit had been provided to counsel in a packet of materials (Miller – Equity Hearing 130), counsel for Ms. Wilhelm was forced to rely on the representations made by counsel for the Pennsylvania State Police because he could not represent to the Court that his office had not received a copy when it may have been sent, but inadvertently overlooked.[1] On this same basis, counsel for Ms. Wilhelm could not contest the admission of Exhibit 94 on the basis he had not received it because he was not in a position to contradict the representations of Defendants' counsel that he had.

    The problem is that the Defendants intentionally kept counsel in the dark. After the equity hearing counsel for Ms. Wilhelm checked all correspondence related to Exhibit 94.

---

[1] Counsel could not contest the Pennsylvania State Police assertion that it was properly delivered, but did question it. When counsel for the Pennsylvania State Police insisted that it was sent with the packet of information, Counsel asked, "I did?" The record incorrectly reflects this as an acknowledgment of receipt.

5

(Exhibit A, Pringle Unsworn Declaration, attached hereto and made a part of this brief). The only communication regarding Exhibit 94 was a fax time-stamped 17:14 hours and dated January 30, 2003. (Exhibit B, faxed copy of Exhibit 94 with cover sheet sent January 30, 2003, attached hereto and made a part of this brief)[2] By sending the fax with Exhibit 94 attached after working hours, without any advance notification, and knowing the equity hearing had an early morning start time, Pennsylvania State Police knew that it was improbable that Ms. Wilhelm's counsel would see the document before the hearing. More importantly, Pennsylvania State Police knew with certainty that by sending the fax describing the proposed position with the Department of Corrections after normal business hours, even if by some chance Ms. Wilhelm's counsel discovered the fax after working hours, there was no time to gather research from any source before the start of the hearing. (Exhibit A). By representing that the exhibit was properly sent, Pennsylvania State Police completed the deception and further advanced a very effective scheme designed to ambush Ms. Wilhelm and deceive the Court. The significance of Exhibit 94 is that Commissioner Miller, in furtherance of the scheme, exploited Ms. Wilhelm's disadvantage by testifying regarding the position at the Department of Corrections. By conceiving and exploiting a scheme designed prevent Ms. Wilhelm from knowing about the new position or preparing for testimony on the position, Pennsylvania State Police acted in bad faith.

---

[2] The cover sheet for the fax erroneously indicated it was sent at 4:15 p.m. The actual fax time-stamp shows otherwise. Even if the fax had been sent at 4:15 p.m., the Pennsylvania State Police gave counsel virtually no opportunity to research the proposed position with the Department of Corrections.

6

Bad faith involves an intent to play fast and loose with the court. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361(3d Cir. 1996) Had the notice of the availability of the position with the Department of Corrections been sent with adequate time to respond Ms. Wilhelm would have been able to explain to the Court that Commissioner Miller's testimony was intentionally misleading and presented evidence to impeach him. Had counsel for the Pennsylvania State Police bothered to take the extra step of notifying counsel for Ms. Wilhelm of the position with the Department of Corrections when she notified him that she was sending a fax, counsel may have had an opportunity to prepare. Consistent with the bad acts found by the jury, blindsiding Ms. Wilhelm was the Pennsylvania State Police's preferred strategy and another example of its retaliatory pattern.

Ms. Wilhelm's counsel did not discover this deception until late on Friday, January 31, 2003, hours after the equity hearing. This Court indicated that there was a need for argument (Polek – Equity Hearing    158), but ruled without giving the parties an opportunity to present arguments. Three business days later this Court denied Ms. Wilhelm's motion to excluded Commissioner Miller's testimony and ordered the reinstatement of Ms. Wilhelm.

The Pennsylvania State Police conceived and exploited an effective deception. In deceiving Ms. Wilhelm's counsel and this Court, Pennsylvania State Police's failed to disclose information required by Fed. Civ. P. 26(a) and Fed. Civ. P. 26(e)(1), concealed

7

the deception, and denied Ms. Wilhelm's counsel the opportunity to make a timely objection. Had the Pennsylvania State Police given Ms. Wilhelm's counsel notice of the position, and not mislead him into believing it was sent in a timely manner, he could have made a Fed. R. Civ. P. 37(c)(1) objection. That objection should have been sustained and Commissioner Miller's testimony would have been excluded, or Ms. Wilhelm would have been given an opportunity to conduct research regarding the position.

C.   Commissioner Miller's Testimony Should Have Been Excluded

The Pennsylvania State Police presented the testimony of Commissioner Miller who testified that Ms. Wilhelm was qualified for the proposed position as Deputy Press Secretary for the Department of Corrections and that it was commensurate with her former duties as Legislative Specialist. (Miller – Equity Hearing 124-143)  With no other evidence, this Court relied solely on the representations of Commissioner Miller, concluded that the responsibilities of the proposed Deputy Press Secretary position with the Department of Corrections were "as substantial as those of Plaintiff's former position", and were "sufficiently similar to Plaintiff's previous position so as to restore 'the conditions and relationships that would have been had there been no' unlawful discharge. *Franks*, 424 U.S. at 769 (internal quotation omitted)." Memorandum and Order of February 5, 2003, page 7).

The problem with the Court's reliance on Commissioner Miller's testimony is that his testimony was based entirely on Exhibit 94, and he lacked personal knowledge of the

8

position. Rule 602 of the Federal Rules of Evidence provides in pertinent part: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." When Commissioner Miller began expressing an opinion as to the similarities between Ms. Wilhelm's former position as Legislative Specialist and the Deputy Press Secretary at Corrections, counsel for Ms. Wilhelm objected on the grounds that Pennsylvania State Police had not established his personal knowledge of the duties and responsibilities of the Deputy Press Secretary position and Pennsylvania State Police failed to establish he was qualified to analyze Ms. Wilhelm's qualifications for the proposed position. (Miller – Equity Hearing 131). When Commissioner Miller was asked whether he had any familiarity with the position, he responded, "I do from the sense that I have a Press Secretary within the Pennsylvania State Police who reports directly to me. I have been familiar with working with Press Secretaries within the Governor's Office over the last several years." (Miller – Equity Hearing 132) He did not say he had ever worked in the Press Secretary's Office within the Department of Corrections. He did not say he had ever worked with, or as, a Deputy Press Secretary in any agency. He did not say he had consulted with the Department of Corrections to determine the specific duties of the Deputy Press Secretary. He did not say that he had consulted the Department of Corrections to determine if the job description he used to testify was accurate. In short, Pennsylvania State Police did not establish Commissioner Miller had personal knowledge of the position.

Commissioner Miller testified that as a Deputy Press Secretary for the Department of Corrections Ms. Wilhelm would analyze information, make content changes to the agency web site, write press releases, set up press conferences and releases, assist the Secretary of Corrections in defining issues and press strategies, and stand in for the Press Secretary, among others duties. (Miller – Equity Hearing 133). His testimony was a wholesale misrepresentation of the actual duties of the Deputy Press Secretary for the Department of Corrections. As set forth in Ms. Wilhelm's affidavit (Exhibit C, Wilhelm Unsworn Declaration, attached hereto and made a part of this brief), from her first day through her last day as Deputy Press Secretary, Ms. Wilhelm was a glorified clerical employee. Ms. Wilhelm, who filed her complaint because she was wrongfully assigned clerical duties, was performing duties that had formerly been assigned to the office clerk typist.  Ms. Wilhelm did no analysis of press related information. She cut and pasted news articles from the internet, but made no content changes to the agency web site; she cut and pasted approximately two press releases, and she was never asked to assist the Secretary of Corrections in defining press strategies. Her immediate supervisor, a previous clerical employee in the Press Office, was classified as pay range (7); Ms. Wilhelm earned more as a  pay range (8) employee.  During Ms. Wilhelm's six-month tenure with the Department of Corrections', its Press Office focused on organizing fundraisers and coordinating employee entertainment, in the nature of Pierogi sales, flower sales, recipe sales, ham and cheese sandwich day, pretzel day, Easter egg hunt,

clothing clearance sale, and a memorial service with the collection of related monies. Ms. Wilhelm's duties as Deputy Press Secretary were not in any way similar to Plaintiff's previous position so as to restore the conditions and relationships that would have been had there been no unlawful discharge. Ms. Wilhelm performed complex analysis research, and position papers in her position as Legislative Specialist 1. By proposing the placement of Ms. Wilhelm as Deputy Press Secretary with the Department of Corrections, the Defendants knowingly reinstated the humiliating and retaliatory conditions prompting her federal complaint.

The Defendants' deceptions did not end there. Part of the proposal for reinstatement presented by Commissioner Miller included the restoration of Ms. Wilhelm's health and retirement credits, and all references to termination would be purged. In Commissioner Miller's words, "It would as if she never separated from Commonwealth service for any length of time." (Miller – Equity Hearing 129). To the contrary, Ms. Wilhelm's personnel records had already been changed to reflect that she resigned. (Polek – Equity Hearing 157-159)

As Commissioner Miller proposed, this Court ordered Ms. Wilhelm to take the position as Deputy Press Secretary for six months. As a direct result she suffered the indignities of having to perform duties that were not commensurate with the duties she performed in her former position as Legislative Specialist. (Exhibit C). As a direct result she lost six additional months of employment in

11

position which could enhance her skills, experience and career opportunities. Her resume, and her career, is now further permanently marred by additional incongruities in her career path. What is worse is the fact that the Pennsylvania State Police's scheme ensured that it would fund the position at the Department of Corrections. As long as the Pennsylvania State Police funds Ms. Wilhelm's employment, it controls her future. This Court ordered the Commonwealth of Pennsylvania, to find another position for Ms. Wilhelm after her six month stay with the Department of Corrections. The Commonwealth of Pennsylvania found another position, but the funding used to pay her salary came from the Pennsylvania State Police. (Exhibit C). The specific circumstances surrounding her current placement are illustrative of the adverse impact the Pennsylvania State Police is still having on her career. In August of 2003, Ms. Wilhelm was told that there were two vacancies as Executive Policy Specialist 2 within the Executive Offices under the Office of Administration, Governor's Office. Both positions were pay range 9 classifications. (Exhibit D, vacancy listing, attached hereto and made a part of this agreement). She accepted one of the positions to comply the Court's order, and to escape her position at the Department of Corrections. After she accepted she was told the position was a pay range 8, with a lesser salary, but a pay range equal to her former position. (Exhibit C). Ms. Wilhelm asserts that the reason she was denied the higher pay was because the Pennsylvania State Police

was only willing to fund her salary at pay range 8. Admittedly, the Pennsylvania State Police was not obligated to pay more, but Ms. Wilhelm was denied an opportunity available to any other candidate merely because the Pennsylvania State Police is footing the bill for her continued employment. Necessarily, Ms. Wilhelm is doomed to stay a pay range 8 employee because the Pennsylvania State Police continues to hold the purse strings. Beyond being condemned to the same pay range for the remainder of her career, the Pennsylvania State Police is in the perfect position to repeat its retaliatory scheme by declaring budgetary difficulties, at some later date, and refusing to fund her position. Under the proposal presented by Commissioner Miller and accepted by this Court, Ms. Wilhelm's continued employment is still subject to the very people who wrongfully terminated her. The Pennsylvania State Police should not remain the guardian of Ms. Wilhelm's career.

V. **CONCLUSION**

For all of the reasons stated above the Honorable Court is urged to award Ms. Wilhelm front pay based on the evidence presented at the equity hearing, and order her entire personnel record be adjusted to make her whole.

                                      Respectfully Submitted,

                                      /s Nathan C. Pringle, Jr.  
                                      NATHAN C. PRINGLE, JR.  
                                      Attorney I. D. Number PA 30142  
                                      3601 North Progress Avenue  
                                      Suite 200  
                                      Harrisburg, PA 17110  
                                      Phone: (717) 909-8520  
                                      Fax:   (717) 909-8550  
January 27, 2004                  Attorney for Plaintiff

## CERTIFICATE OF SERVICE

     I, Nathan C. Pringle, Jr., hereby certify that on January 27, 2004, I caused to be filed electronically the foregoing document, Memorandum in Support of Plaintiff's Motion for Reconsideration of the Order of February 5, 2003.

14

/s Nathan C. Pringle, Jr.