# Excerpts from the Hearing on Equitable Relief of 1/31/03

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BARBARA WILHELM,  :
    Plaintiff  :
               :
    v.  : 01-CV-1057
COMMONWEALTH OF PA, et al.,  :
    Defendants  :

TRANSCRIPT OF PROCEEDINGS

HEARING ON EQUITABLE RELIEF

BEFORE: HON. SYLVIA H. RAMBO, Chief Judge

DATE: January 31, 2003

PLACE: Courtroom Number Three
Federal Building
Harrisburg, Pennsylvania

COUNSEL PRESENT:

NATHAN C. PRINGLE, JR., Esquire
    For - Plaintiff

SUSAN J. FORNEY, Esquire
    For - Defendants

Vicki L. Fox, RMR
Official Reporter

Wilhelm - Recross

72

BY MS. FORNEY:

Q    Ms. Wilhelm, I am handing you a document which has been marked Defendant Exhibit 94. Have you ever seen that before?

MR. PRINGLE: Excuse me, Your Honor. Just for the record, I have never seen that document before today.

MS. FORNEY: Your Honor, I faxed this document to Mr. Pringle.

MR. PRINGLE: When did you fax it to me?

MS. FORNEY: When I said I was going to. I told you I had another exhibit, and it was faxed when we talked yesterday.

MR. PRINGLE: Your Honor, the problem with faxing a document, we had the same problem before. It is an uncertain method of communicating with me. What I did -- the way it works in my office --

THE COURT: It's a lot faster than mail.

MR. PRINGLE: At least, she could have told me what the position was.

MS. FORNEY: Mr. Pringle, I told you I was going to fax you the document. You were expecting a document from me.

MR. PRINGLE: The problem with sending it -- you sent it to me what day? Was it yesterday?

Wilhelm - Redirect

73

1  MS. FORNEY: Whenever we discussed exhibits, and
2  you told me about some exhibits that you were going to be
3  presenting.
4  MR. PRINGLE: Then that was yesterday. Yesterday
5  afternoon, she said she was going to fax additional
6  documents. Unfortunately, the way faxes are received in my
7  office, they go to a server. Once the server receives the
8  documents, they then mail it to me specifically to my
9  desktop.
10  In this case, I notified the secretary that
11  e-mails would be -- faxes would be coming in. I never got
12  this document.
13  My point is that Ms. Wilhelm cannot testify about
14  a document that I haven't seen and she --
15  THE COURT: Sustain the objection.
16  MS. FORNEY: Your Honor, my only question was had
17  she seen it before. No other questions, Your Honor.
18  THE COURT: I will permit you to question only
19  about the last offer of reinstatement.
20  REDIRECT EXAMINATION
21  BY MR. PRINGLE:
22  Q    Ms. Wilhelm, with respect to the offer of reinstatement
23  described in the letter from Ms. Forney, did you read that
24  letter?
25  A    I did refresh myself on it briefly, yes.

                                                                    124
                            Miller - Direct

1        FORNEY: Nothing, Your Honor.

2        THE COURT: You may step down.

3        MR. PRINGLE: At this time, Your Honor, plaintiff
4   has no further witnesses.

5        THE COURT: Does the Commonwealth have any
6   witnesses?

7        MS. FORNEY: Yes, Your Honor, we do. I would like
8   to call Jeffrey Miller.

9

10       JEFFREY MILLER, called as a witness, being duly
11  sworn, testified as follows:

12

13       THE CLERK: Would you state your name, please?
14  A    Jeffrey B. Miller.

15       THE CLERK: Thank you.

16                      DIRECT EXAMINATION
17  BY MS. FORNEY:

18  Q    Sir, are you currently employed?

19  A    Yes, I am.

20  Q    What is your job?

21  A    I am a Lieutenant Colonel with the Pennsylvania State
22  Police serving as the Acting Commissioner.

23  Q    And when did you -- when did you begin in that
24  employment?

25  A    I began my employment in 1984, but my current position

125

Miller - Direct

1    on January 21st of this year.
2    Q    And how did you obtain that position?
3    A    I was nominated by Governor Edward Rendell.
4    Q    Is your position considered cabinet level?
5    A    Yes.
6    Q    Have you been nominated to be the Commissioner of the
7    State Police?
8    A    Yes.
9    Q    And you are presently awaiting confirmation of that
10   nomination?
11   A    That's correct.
12   Q    As Acting Commissioner of the State Police, have you
13   made any appointments of Deputy Commissioners?
14   A    Yes, I have.
15   Q    And who have you appointed as Deputy Commissioners?
16   A    I have appointed Major Ralph M. Periandi as a Deputy
17   Commissioner of Operations, Major Henry D. Oleyniczak as the
18   Deputy Commissioner of Staff and Major Cynthia L. Transue as
19   the Deputy Commissioner of Administration.
20   Q    Prior to becoming the Acting Commissioner of the
21   Pennsylvania State Police, were you the Director of the
22   Office of Legislative Affairs for the State Police?
23   A    Yes, I was.
24   Q    And were you the Director at the time that Ms. Wilhelm
25   was dismissed from her position as Legislative Specialist?

126

Miller - Direct

1   A    Yes.

2   Q    Did you recommend her dismissal?

3   A    No.

4   Q    From the time she left employment until the time you

5 assumed your current position as Acting Commissioner, was

6 there a Legislative Specialist in the Office of Legislative

7 Affairs?

8   A    No.

9   Q    Are you aware of any current plans to recreate that

10 position?

11   A    No, there are none.

12   Q    Do you know whether there is presently any other

13 positions for Legislative Specialists within the State

14 Police?

15   A    There are none.

16   Q    Sir, as you know we are here to determine what, if any,

17 equitable relief should be afforded the plaintiff in this

18 case. What is the Commonwealth's position regarding

19 reinstatement of Ms. Wilhelm to employment?

20   A    The Commonwealth is prepared to offer reinstatement of

21 Ms. Wilhelm to Commonwealth employment.

22   Q    And when will that reinstatement be effective?

23   A    The reinstatement would be effective May 1st of 2000

24 which was the date of her separation from the Department.

25   Q    Now do you understand that there -- strike that. So

BY MS. FORNEY:

Q     Let me ask you to talk about the retroactive component of reinstatement. I believe you said it would -- you talked about how it would affect her back pay.

Is it your understanding that her retirement credits would be restored?

A     Yes. It is my understanding that her retirement credits would be restored. It would be as if she never separated from Commonwealth service for any length of time.

Q     What is your understanding about how it would affect your employment records?

A     Her employment records would be purged to the degree that there would be no coding or any other information that would indicate she separated from Commonwealth service at any time.

Q     What is the Commonwealth prepared to do prospectively with regard to Ms. Wilhelm's reinstatement?

A     The Commonwealth is willing to offer a position as a Deputy Press Secretary within the Department of Corrections. During the first six months of that employment, as I stated earlier, the State Police would pay the costs of salary, benefits, etcetera; however, the State Police would have no role whatsoever in the supervision, direction or in any other capacity manage the day-to-day employment operations of Ms. Wilhelm in any way, shape or form.

                                                                    130
                           Miller - Direct

1        At the end of that six month period, it is
2   extremely likely that that would be the position that Ms.
3   Wilhelm would hold going forth into the future.  However, if
4   that wouldn't happen for whatever reason, the Commonwealth
5   then is prepared to make a guarantee of finding comparable
6   state employment for her immediately.
7            (Job Description for DOC's Information Specialist
8   was introduced as Defendant Exhibit 94.)
9   BY MS. FORNEY:
10  Q    Now you mentioned a job as a Deputy Press Secretary
11  with the Department of Corrections.  I am handing you a
12  document which has been marked Defendant Exhibit 94.
13           MR. PRINGLE:  I don't have a copy of that.
14           MS. FORNEY: It is among your documents.
15           MR. PRINGLE:  It is.  I am sorry.  I apologize.
16  BY MS. FORNEY:
17  Q    Could you identify this document for me?
18  A    Yes.  It is a job description for the office -- or
19  excuse me -- the position of Deputy Press Secretary within
20  the Press Office in the Department of Corrections.
21  Q    And is this the position that you were referring to
22  that the Commonwealth would be willing to reinstate Ms.
23  Wilhelm to prospectively?
24  A    Yes, it is.
25  Q    And at what salary would she be restored?

1  A    She would be restored at the same salary with the same
2  benefits that she had on May 1st, 2000.
3  Q    And would that salary reflect any increases that she
4  would have received had she remained employed?
5  A    Yes, it would.  It would take her from where she was on
6  May 1st, 2000 and bring her up-to-date from a salary basis.
7  Q    You were Ms. Wilhelm's supervisor for several months;
8  were you not?
9  A    Yes, I was.
10 Q    You have been in attendance at the trials and hearings
11 held in this case and have heard Ms. Wilhelm testify
12 regarding her prior job experience and her skills; have you
13 not?
14 A    Yes, I have.
15 Q    Would you tell me why you think this job would be
16 appropriate to Ms. Wilhelm?
17         MR. PRINGLE:  Objection.  He has not been
18 established as an expert on resource matters or able to
19 analyze job descriptions or analyze Ms. Wilhelm's resume.
20         THE COURT:  It doesn't require an expert.  He is
21 asked with his knowledge, his experience and supervision over
22 the plaintiff as to why he thinks her skills that he has
23 observed would fit within this job description.
24         MR. PRINGLE:  Your Honor, he hasn't testified that
25 he is familiar with the job itself.

```
                                                                    132
                        Miller - Direct
```

1   THE COURT: Can you establish whether he knows
2   anything about the job description or is family with that
3   job?
4   BY MS. FORNEY:
5   Q    Sir, have you reviewed this job description?
6   A    Yes, I have.
7            THE COURT: I think he needs a little more than
8   just reviewing it. Is he familiar with any facet of the
9   position?
10  BY MS. FORNEY:
11  Q    Do you have any familiarity with the position?
12  A    I do from the sense that I have a Press Secretary
13  within the Pennsylvania State Police who reports directly to
14  me. I have been familiar with working with Press Secretaries
15  within the Governor's Office over the last several years.
16  Q    In reviewing this job description, does it appear to
17  correspond with the sort of duties that you have experienced
18  Deputy Press Secretaries performing?
19  A    It does.
20           THE COURT: Go ahead.
21  BY MS. FORNEY:
22  Q    If you recall my question, you may answer.
23  A    I think I do. Basically in reviewing the job
24  description for the Deputy Press Secretary, in my opinion, I
25  think it is a position that does suit Ms. Wilhelm's skills.

Miller - Direct

In my observation of her employment with the Department, she is extremely good at expressing things verbally. She works well in analyzing information. This job requires those two things.

She is also very skilled with computer technology. She enjoys that part of the work as she has relayed to me in the past. I have seen her put on training seminars using computer equipment and Power Point presentations. She is very good at that. She seems to enjoy doing that.

And much of what the job would entail would be collating information, looking at the website within the Department of Corrections and making content changes and suggestions for improvements, writing news releases, preparing informational packages for distribution to the press, setting up press conferences and releases, working in support of the Secretary of Corrections in defining issues and press strategies for dealing with issues and topics that would come to light, and standing in for the Press Secretary in meetings with executives within the Department of Corrections.

All of these things I believe in my observations of Ms. Wilhelm are things that she would do well.

Q    Now you mentioned in your testimony that while she worked -- if she chose to work in this job at the Department

Miller - Cross

141

1  A    No, sir.
2  Q    Why is that?
3  A    Because she would be working for the Department of
4  Corrections.
5  Q    But you would be paying her salary?
6  A    For a period of six months. That is only a clerical
7  function if you will. We have no oversight, and there would
8  be no change in her employment status because of that fact.
9  Q    And why is it that you are limiting this to six months?
10 A    Why is it that we are limiting our particular portion
11 of this part to six months, is that what you are asking me?
12 Q    Yes.
13 A    Because initially, we had made numerous attempts with
14 the Office of Administration previously to try to find a
15 comparable job that would fit Ms. Wilhelm's skills. We did
16 not have the level of cooperation that I hoped we would have
17 at the end of the previous administration.
18      I think because people did not want to make
19 commitments for positions at the end of an administration.
20 That somewhat hampered our ability to proceed.
21      The new administration just took over. I think
22 the record reflects the fact that we have moved very quickly
23 with the new administration. But one of the things we wanted
24 to do before we identified the appropriate position was make
25 an offer that the State Police would pay the salary and

                                                                142
                        Miller - Cross

benefits for the first six months, thereby relieving the
agency that would be the agency where Ms. Wilhelm would be
placed from that responsibility up front. We just put that
out on the table before we actually found the right position,
and this position specifically.

Once we found this position, we didn't want to
renege on anything we put out on table. But it is my
understanding that the Department of Corrections, should that
be the place where she ultimately is placed and stays, would
pick that -- they have a vacancy that they would be paying
for anyway. It just so happens that the first six months of
the compensation would come out of the State Police budget in
the overall Commonwealth scheme rather than the Department of
Corrections budget.

It would be as if she worked for the Department of
Corrections and was being paid and compensated by the
Department of Corrections for all intent and purpose.

Q    Why doesn't the Department of Corrections want to pay
for the first six months?
A    I'm sorry?
Q    Why doesn't the Department of Corrections want to pay
for the first six months?
A    I am not sure that they don't want to pay for the first
six months. I am just saying to you, sir, when we approached
the new administration, we made an offer kind of as a way to

143
Miller - Cross

143

Miller - Cross

1  say hey, we want you to take a look at what we're trying to
2  do here. If you have a comparable position that we believe
3  is and our human resources folks on all ends of the spectrum
4  think is comparable, then we would be happy to pay that for
5  the first six months.
6        We just made that as an offer before we had the
7  appropriate position. It is not to me -- to my knowledge, it
8  is not that the Department of Corrections doesn't want to pay
9  it. In fact, they may very well want to pay it.
10       I think they were going to fill this position one
11 way or another and would have been paying for it anyway. It
12 is not really that it is a huge difference for them. But she
13 would be working for that first six months just on the
14 clerical bookkeeping side of it, we would be paying the
15 salary. But we wouldn't have any supervisory authority or
16 her position wouldn't change in any way because of that.
17 Q    Isn't the Deputy Press Secretary a very sensitive
18 position for an agency?
19 A    What do you mean by sensitive?
20 Q    Wouldn't the agency want to know who is coming in
21 there, know more, have information about that person, have a
22 chance to interview before they commit to accepting an
23 employe as a Deputy Press Secretary?
24 A    Well, Ms. Wilhelm's resume and background is extremely
25 good. When they looked at it, they were comfortable that she

1        THE COURT: Okay. You have one more or you have
2   no more?
3        MS. FORNEY: No more, Your Honor.
4        THE COURT: Okay. Since you have no more
5   witnesses, are you going to have any rebuttal witnesses?
6        MR. PRINGLE: Just one, Your Honor.
7        THE COURT: Who?
8        MR. PRINGLE: Ms. Wilhelm.
9        THE COURT: The lady in the back of the courtroom
10  that was requested to stay may leave.
11       THE COURT: Is there any reason why you can't put
12  her on rebuttal while you are looking over your exhibits? I
13  won't preclude you from --
14       MS. FORNEY: Actually, I think I am prepared to
15  move them, Your Honor.
16       THE COURT: Okay.
17       MS. FORNEY: Defendant Exhibit 45.
18       THE COURT: Didn't you just use that for
19  impeachment purposes, or you used it in an argument
20  concerning the need to supplement? I am not too sure it is
21  necessary; is it?
22       MS. FORNEY: It really was used for impeachment to
23  and to support the objection. You are right, Your Honor.
24  Exhibits 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58,
25  59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73,

1   74, 75, 76, 77, 79, 80, 81, 82, and 94, Your Honor.

2              THE COURT: Any objection?

3              MR. PRINGLE: Yes, Your Honor. We object to -- if
4   I refer to Defendant Exhibit 82 which Ms. Johnston used for
5   her testimony, she identified the four classifications at the
6   bottom of the exhibit as positions that she projected might
7   be available for future examination. And there are
8   corresponding I guess classification descriptions which are
9   Defendant Exhibits 74, 75, 76, 77, 79, 80 which we object to
10  on the basis that it was beyond her area of expertise. And
11  her testimony regarding the possibility of these positions
12  being open for examination is speculative and irrelevant.

13             THE COURT: With regard to Exhibit 82, I will
14  admit that except delete the four positions that are
15  scheduled for examination 2003-2004 and any related exhibits
16  that go to those positions. All other exhibits you have
17  objected to is overruled.

18             Exhibit 82, the positions with the double asterisk
19  and any relating job descriptions will not be admitted.
20  Anything else?

21             MR. PRINGLE: I would like to move for the
22  admission of Defendant Exhibit 53.

23             THE COURT: 53, what is that?

24             MR. PRINGLE: It is a Bureau of Labor Statistics
25  publication.